**KEVIN T. MULHEARN, P.C.**
60 DUTCH HILL ROAD, SUITE 6B

ORANGEBURG, NEW YORK 10962
(845) 613-7059
KMULHEARN@KTMLAW.NET

KEVIN T. MULHEARN, ESQ.
DIRECT LINE: (845) 222-8092
OF COUNSEL:
DARREN J. EPSTEIN, ESQ.
MICHAEL KALMUS, ESQ.*
*ADMITTED IN NY & NJ

**VIA ECF**

September 21, 2022

Hon. Kevin P. Castel
United States District Judge
U.S. District Court, Southern District of New York
500 Pearl Street, Courtroom 110
New York, New York 10007

Re:   **Plaintiff's Response to Defendants' Pre-Motion Letters
to Dismiss the Amended Complaint**

       *Jane Doe v. Yeshiva University, Andrew "Avi" Lauer, Esq., Chaim Nissel, Seyfarth Shaw, LLP, Dov Kesselman, Esq., and Emily Miller, Esq.*
       Case No. 1:22-cv-05405-PKC-KHP

Dear Judge Castel:

In accordance with Your Honor's Individual Practice Rules, I hereby respectfully submit this letter in response to the pre-motion letters of Danielle C. Lesser, Esq. on behalf of Defendants Yeshiva University ("YU"), Andrew "Avi" Lauer, Esq. ("Lauer"), and Chaim Nissel ("Nissel"), dated September 15, 2022 ("YU Defendants' Pre-Motion Letter" or "Doc. 29"), and Howard I. Elman, Esq., on behalf of Defendants Seyfarth Shaw, LLP, Dov Kesselman, Esq. ("Kesselman"), and Emily Miller, Esq. ("Miller"), dated September 15, 2022 ("Seyfarth Defendants' Pre-Motion Letter" or "Doc. 30"). As there is considerable overlap in the respective Defendants' arguments, to avoid redundancy and duplication, Plaintiff hereby submits this omnibus letter in response to the Defendants' two pre-motion letters.

## This Court Has Subject Matter Jurisdiction Over Plaintiff's Title IX Claims, Pursuant to 28 U.S.C. § 1331

The YU Defendants argue that this Court lacks subject matter jurisdiction over Plaintiff's Title IX claims because Plaintiff's exclusive remedy against YU was an Article 78 proceeding, which is subject to a four-month statute of limitations. (Doc. 29 at 1-2). Defendants' argument is baseless, as this precise issue was recently resolved in Plaintiff's favor by the Second Circuit Court of Appeals in *Purcell v. New York Inst. of Technology*, 931 F.3d. 59, 63-65 (2d Cir. 2019).

In *Purcell*, the Second Circuit reversed a decision by the Eastern District of New York Court, which held that the exclusive remedy for plaintiff's challenge to a university's administrative decision was an Article 78 Proceeding brought in New York State court. *Id.* at 63-64.

The *Purcell* Court held that:

> "Absent a 'plain indication to the contrary' we presume that the application of [a] federal act [is not] dependent on state law." Aside from the statute of limitations issue we have just canvassed, there is no plain indication in … Title IX that either federal jurisdiction or the scope of a claim under [that statute] is dependent on state law. To the contrary, [Title IX] clearly lay[s] out the standards for asserting a claim, and … clearly appl[ies] to a private college[.]

*Id.* at 64 (*quoting, Bakoss v. Certain Underwriters at Lloyds of London Issuing Certificate No. 0510135*, 707 F.3d 140, 143 (2d Cir. 2013)).

The Second Circuit further explained in *Purcell* that the rule that the YU Defendants now propose "—that federal antidiscrimination claims involving academic and disciplinary decisions by private New York universities must be brought in Article 78 proceedings— … would contradict decisions of this Court, many of which have adjudicated ADA and Title IX claims in those precise circumstances." *Id.* (holding that three-year statute of limitations (CPLR § 214(5)) applied to Plaintiff's Title IX claims) (*citing, inter alia, Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 663 F.3d 81 (2d Cir. 2011). *See also, Furfero v. St. John's Univ.*, 2021 U.S. Dist. LEXIS 124458, *26 (EDNY 2021) (*citing Purcell*, court rejected defendant's argument that plaintiff was required to bring Article 78 Proceeding before filing federal discrimination claims under Title VII in federal court).

As this Court clearly has subject matter jurisdiction over Plaintiff's Title IX claims against YU (which include both pre-assault and post-assault allegations) pursuant to 28 U.S.C. § 1331, Plaintiff's alternative allegations regarding the existence of diversity jurisdiction pursuant to 28 U.S.C. § 1332 are moot.

**In the Wake of the DOE's 2022 Title IX Regulations, Title IX Does Not Automatically Exclude Rape Incidents Which Occur in "Off-Campus" Apartments**

Plaintiff alleges that on January 24, 2021, "PERRY DOE," a fellow YU student, raped her in his apartment just beyond YU's Wilf Campus. (Am Compl. ¶¶ 77-85). The YU Defendants argue that "courts have, in cases with facts similar to those here, found that Title IX does not impose liability on schools for off-campus incidents between students." (Doc. 29 at 3). The YU Defendants, which cite only cases in which sexual assault incidents occurred *prior to 2020*, ignore that in August, 2020 the United States Department of Education ("DOE") adopted a number of new regulations which substantially changed the Title IX landscape for colleges and universities.[1]

These 2020 Title IX regulations departed from previous DOE Guidance, including by clarifying whether certain conduct occurs within an educational institution's "program or activity," and thus subjects the educational institution to Title IX. *See New York v. United States Dep't of Educ.*, 477 F. Supp. 3d 279, 295 & 299 (SDNY 2020) (holding in part that "the DOE did not redefine program or activity in a manner in excess of its statutory authority.").

While noting that for Title IX to be applicable the sexual harassment or sexual abuse must occur within a school's "education program or activity," the 2020 Title IX regulations defined that term in the context of both on-campus *and off-campus* conduct:

> The [DOE] reiterates that "off-campus" does not automatically mean that the incident occurred outside the [school's] education program or activity.

(85 Fed. Reg. at 30198).

> The [DOE] reiterates that the final regulations do not impose a geographic test or draw a distinction between on-campus misconduct and off-campus misconduct.

(*Id.*)

> [E]ven if a situation arises off campus it may still be part of the [school's] education program or activity if the [school] exercised substantial control over the context and the alleged harasser.

(*Id.* at 30199 n. 875).

Contrary to the YU Defendants' argument, the 2020 Title IX regulations specifically provide that Title IX may be applicable when—as here—a sexual assault occurred in a student's off-campus residential apartment:

---

[1] These regulations were effective as of August 14, 2020, and were memorialized in Volume 85 of the Federal Register, No. 97, May 19, 2020, "Non-Discrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance." ("85 Fed. Reg.") at pp. 30026 to 30579 (and codified at 34 C.F.R. pt. 106).

> While such situations may be fact specific, [schools] must consider whether, for example, a sexual harassment incident that occurs between two students that occurs in an off-campus apartment ... is a situation over which the [school] exercised substantial control; *if so, the [school] must respond when it has actual knowledge of sexual harassment or allegations of sexual harassment that occurred there.*

(*Id.*) (emphasis added).

In the context of sexual assault incidents that occur in a student's off-campus apartment, the DOE now mandates that a court's determination as to whether the school exercised the requisite "substantial control" to trigger Title IX must be "fact specific" (*Id.*) and that *"no single factor is determinative* [as to] whether a [school] exercised substantial control over the ... accused harasser ... and the context in which the harassment occurred." (*Id.* at 30197) (emphasis added). This fact-sensitive issue is thus now extraordinarily ill-suited for summary disposition.

Here, Plaintiff pleads at length that numerous factors demonstrate that YU exercised substantial control over PERRY DOE, Plaintiff, and the context in which PERRY DOE's rape of Plaintiff in his apartment occurred. These factors include YU's publication of various policies and procedures which specifically provide that YU maintains disciplinary and remedial control over all sexual assault student-perpetrators whether the assaults occur on-campus or off-campus *and* that YU will not tolerate the sexual abuse of its student-athletes (such as Plaintiff) whether they are harmed on-campus or off-campus. (*See* Am. Compl. ¶¶ 163-168).

Other factors which demonstrate YU's "substantial control" include that PERRY DOE was a foreign resident in the United States on an F-1 Student Visa (Am. Compl. ¶¶ 68-69), that YU paid some or all of the rent for his apartment (Am. Compl. ¶¶ 71-72), and that because of his young age and status as a foreign resident, PERRY DOE would not have been permitted to rent his apartment in Washington Heights but for his status as a YU student. (Am. Compl. ¶¶ 72-76).

In view of the foregoing, and pursuant to the 2020 Title IX regulations (which were in effect at the time Plaintiff alleges she was raped), it would be grossly improper for this Court to conclude as a matter of law that the rape incident at issue occurred outside the scope of YU's educational program and activity—and is thus beyond the purview of Title IX. The complex, fact-specific, and recently "clarified" issue of "substantial control," at minimum, requires discovery.

### Plaintiff Has Sufficiently Pleaded That All the Individual Defendants Have "Aided and Abetted" YU's Violations of the NYSHRL and NYCHRL

The YU Defendants argue without much explication that the Amended Complaint lacks sufficient facts to hold that Defendants Lauer (YU's General Counsel) and Nissel (YU's Title IX Coordinator) are individually liable to Plaintiff. (Doc. 29 at 5). The Seyfarth Defendants, Kesselman and Miller, advance a more developed argument: "[t]o be liable for aiding and abetting a violation of the NYSHRL or NYCHRL, the aider and abettor must have "actually participate[d] in the conduct giving rise to the discrimination claim" and "share the intent or purpose of the principal actor" and thus have a "community of purpose" with the principal actor." (Doc. 30 at 3).

The Defendants' arguments on this issue are specious because the Amended Complaint is replete with detailed allegations as to the individual Defendants' *direct participation* in YU's discriminatory conduct at issue.

Under the New York State Human Rights Law (N.Y. Exec. Law § 296(6) ("NYSHRL")) it is "an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article [including discriminating against another person on the basis of sex] or to attempt to do so." The New York City Human Rights Law ("NYCHRL"), N.Y. City Admin. Code § 8-107(6), uses virtually identical language and is subject to the same analysis as the NYSHRL. *See McCoy v. City of New York*, 131 F. Supp. 2d 363, 375 (EDNY 2001); *Mohamed v. Marriott Int'l, Inc.*, 905 F. Supp. 141, 157 (SDNY 1995) (noting that identical wording of the NYSHRL and NYCHRL evidences "clear intent" for parallel interpretation).

Although to establish aiding and abetting liability under NYSHRL and/or NYCHRL a plaintiff must establish that the aider and abettor "share[d] the intent or purpose of the principal actor," this "community of purpose" element may be established if a plaintiff merely proves an individual defendant's "direct, purposeful participation" in the actionable conduct. *Cerrato v. Durham*, 941 F. Supp. 388, 396 (SDNY 1996). Numerous cases in this Court have held that as long as they directly participated in the discriminatory acts, individuals may be liable for aiding and abetting a principal actor's discriminatory conduct. *See e.g., Cheung v. Merrill Lynch*, 913 F. Supp. 248, 253-54 (SDNY 1996) (finding that consultant-independent contractor could be liable for aiding and abetting under NYSHRL); *McIlwain v. Korbean Int'l Inv. Corp.*, 896 F. Supp. 1373, 1382 (SDNY 1995) (holding that § 296(6) liability is not limited to those with an ownership interest or decision-making power).

Here, the Amended Complaint alleges at length that each of the individual Defendants *directly participated* in a sham investigation of Plaintiff's rape allegations with a pre-determined "not responsible" conclusion for the purpose of discriminating against Plaintiff on the basis of her sex.

The Seyfarth attorney-investigators, Kesselman and Miller, are alleged, *inter alia*, to have: (1) deliberately ignored and failed to request from Plaintiff the critical photographs and rape kit evidence which would have corroborated Plaintiff's claims that PERRY DOE used violence—which left visible bruises on her neck and inner thigh—during his rape of Plaintiff (Am. Compl. ¶¶ 84-87); and (2) deliberately failed to interview several witnesses identified by Plaintiff who would have corroborated Plaintiff's claims as to her distraught state-of-mind *immediately* after the rape incident. (Am. Compl. ¶¶ 91-94).

The YU individual Defendants, Lauer and Nissel, are alleged, *inter alia*, to have: (1) coordinated a sham investigation with a predetermined outcome (Am. Compl. ¶¶ 304-305); (2) failed to provide Plaintiff with the required notice (and reasons) for summarily dismissing her Title IX Complaint; (3) failed to engage in the Title IX-required detailed "program and activity" analysis; (4) failed to provide Plaintiff with reasonable security measures in violation of Title IX; (5) failed to provide Plaintiff with a reasonable ability to appeal YU's "not responsible" determination (Am. Compl. ¶¶ 171, 194-197); and (6) implemented and/or directly participated in YU's policy to violate The Cleary Act by deliberately failing to report to the DOE numerous reported sexual assaults and/or rapes that occurred on or near YU's campus (from 2001 to 2020). (Am. Compl. ¶¶ 29-51).

As Plaintiff has alleged at length and with considerable detail that each individual Defendant *directly participated* in YU's discriminatory conduct, Defendants' challenges to Plaintiff's NYSHRL and NYCHRL aiding and abetting claims are baseless if not frivolous.

### The Amended Complaint Does Not Violate FRCP 8(a)(2)

The Seyfarth Defendants argue that Plaintiff violated FRCP 8(a)(2) because her Amended Complaint included 30 subparagraphs of quotations from YU's Non-Discrimination Policy (Am. Compl. ¶ 38) and five pages of quotations from various other university policies. (Doc. No. 30 at 4). This argument is meritless because Plaintiff was required to address those policies at length in order to demonstrate that YU had the requisite "substantial control" over both Plaintiff's harasser (PERRY DOE) and the context in which her harassment occurred. There is no prolixity in Plaintiff's pleading.

### Defendants' Challenge to Plaintiff's Intentional Infliction of Emotional Distress Claims is Without Merit

The Seyfarth Defendants argue that Plaintiff's Intentional Infliction of Emotional Distress ("IIED") claims are deficient because Plaintiff fails to plead that Defendants' alleged misconduct was sufficiently "outrageous." (Doc. 30 at 2). Plaintiff submits that a sham rape investigation, where a school hired investigators-attorneys with an undisclosed and substantial conflict of interest (*see* Am. Compl. ¶¶ 118-138), may well be "outrageous" enough to support these claims. *See McGrath v. Dominican College of Blauvelt*, 672 F. Supp. 2d 477, 493 (SDNY 2009) (where plaintiff alleged that school officials subverted an impartial investigation of her rape allegations by, *inter alia*, directing the victim to a police detective who also was a school employee, she sufficiently pled IIED claim).

### Suggested Briefing Schedule

Plaintiff has no objection to the motion briefing schedule proposed by Defendants. As the Defendants have not demonstrated a reasonable chance of success in their respective motions to dismiss, however, Plaintiff respectfully requests that the Court not stay discovery but instead set a discovery schedule at the Court's October 24, 2022 preliminary conference.

Thank you for your consideration of these issues. I look forward to further discussing this matter with Your Honor.

Very best regards,

KEVIN THOMAS MULHEARN
KTM/gl

cc: *(By ECF and Email)*:
    Danielle C. Lesser, Esq.        Howard I. Elman, Esq.
    *Attorney for the YU Defendants*   David J. Barres, Esq.
                                          *Attorneys for the Seyfarth Defendants*