# EXHIBIT 1
# (Part 2 of 2)

377.   Section 296(6) of the New York Executive Law provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any acts forbidden under this article, or to attempt to do so."

378.   At all material times, Defendants Lauer, Nissel, Seyfarth, Kesselman, and Miller, were in charge of, or had vital roles YU's sham "investigation" as to Plaintiff's alleged rape by PERRY DOE.

379.   At all material times, Defendants Lauer, Nissel, Seyfarth, Kesselman, and Miller, were involved in YU's sham "investigation" as to Plaintiff's Title IX Complaint regarding her alleged rape by PERRY DOE, and participated in, developed, formulated and/or ratified said "investigation's" processes, procedures, rules, findings, conclusions and determinations.

380.   At all material times, Defendants Lauer, Nissel, Seyfarth, Kesselman, and Miller: (1) intentionally and maliciously conducted, participated in, and/or ratified a sham investigation that was specifically designed to shield and protect PERRY DOE from any serious consequences for his sexual harassment and sexual abuse of Plaintiff, and to protect Yeshiva University from any reputational damage that could result from a finding that a YU student had raped another YU student; and (2) retaliated

against Plaintiff for making such charges against PERRY DOE by failing to conduct a fair and impartial investigation of her rape allegations against PERRY DOE, refusing to provide her with any reasonable supportive measures that would protect her at YU's Wilf Campus, and failing to permit her to appeal YU's "not responsible" determination with respect to PERRY DOE's conduct.

381.   At all material times, therefore, Defendants Lauer, Nissel, Seyfarth, Kesselman, and Miller "aided and abetted" Defendant YU's harm to Plaintiff's rights and interests in violation of New York Executive Law § 296(6).

382.   For the reasons set forth above, pursuant to New York Executive Law § 296(6), Plaintiff is entitled to recover compensatory damages, including damages for egregious emotional distress and mental anguish, from YU.

### COUNT THIRTEEN:
### BREACH OF CONTRACT
### (AGAINST YESHIVA UNIVERSITY)

383.   Plaintiff repeats and realleges each of the allegations contained in this Complaint as if each has been fully set forth at length.

384.   In New York, the relationship between a university and its students is contractual in nature.

385.   When a student is admitted into a university, an implied contract arises between the parties which states that if the student complies with the terms proscribed by the university, she will obtain the degree she seeks.

386.   The rights and obligations of the parties as contained in the university's bulletins, circulars, regulations, and policy statements made available to the student, become a part of this contract.

387.   The rights and obligations of Yeshiva University and Plaintiff contained in YU's "Non-Discrimination and Anti-Harassment Policy & Complaint Procedures," updated December 31, 2020 (Ex. **B** hereto), are part of such a contract between YU and Plaintiff.

388.   YU breached such contract with Plaintiff by violating and failing to honor the following *specific* promises made by YU to Plaintiff in its Non-Discrimination Policy that are subject to quantification and/or objective evaluation:

> (1) "YU will respond to all [student] complaints thoroughly, fairly, and impartially."

(Ex. B at 1).

> (2) "The University will make supportive measures available to those reporting violations of the Policy…"

(Ex. B at 1).

(3) "Upon receipt of a complaint, the University will conduct a
fair and impartial investigation into reported incidents of
discrimination or harassment, as well as sexual abuse/assault
… or other sexual misconduct."

(Ex. B at 1).

(4) "The Title IX Coordinator will consider the individual's
wishes with respect to implementing supportive measures,
and will consider the individual's wishes with respect to
implementing supportive measures, and will notify
individuals of the availability of supportive measures with or
without filing a formal complaint."

(Ex. B at 12).

(5) "The alleged victim … will be afforded the rights set forth in
this Policy."

(Ex. B at 1).

(6) "The prohibition against Title IX Sexual Harassment …
applies to conduct that occurs in University premises and/or
at University-sponsored and affiliated activities and events,
whether on University premises or at other locations … The
prohibition against Title IX Sexual Harassment … applies to
conduct that occurs in the University's education programs
and activities. *Education programs and activities include
locations, events or circumstances where the University
exercised substantial control over both the person accused
of the misconduct and the context which the harassment
occurred[.]"*

(Ex. B at 4) (emphasis added).

(7) "Title IX prohibits discrimination on the basis of sex in
education programs and activities in the United States.
Sexual harassment and sexual assault are forms of sex
discrimination prohibited by Title IX. The University has
designated an employee to coordinate its efforts to comply

> with and carry out its responsibilities under Title IX. This
> employee is called the Title IX Coordinator and is
> responsible for ensuring Title IX compliance at the
> University, as well as compliance with this Policy. The
> Title IX Coordinator is responsible for the effective
> implementation of security measures ... The Title IX
> Coordinator is responsible for ensuring the prompt and
> equitable resolution of all Title IX complaints and other
> complaints under this Policy, identifying and addressing any
> patterns of systemic problems that are found based on
> review of such complaints or otherwise, and providing
> education and training about this Policy to the University
> Community."

(Ex. B at 11).

## WITH RESPECT TO TITLE IX COMPLAINTS

(8) "Upon receipt of a complaint involving Title IX Sexual
Harassment, other sexual Misconduct, or any other violation
of this Policy ..., a fair and impartial investigation will
commence in accordance with the procedures set forth in
this Policy."

(Ex. B at 16).

(9) "The parties will be notified of such additional information
as required by the applicable Appendix B [for "Formal
Resolution of Complaints Involving Title IX Sexual
Harassment, Including Sexual Abuse/Assault, Stalking,
Domestic Violence and Dating Violence"] or C [for "Formal
Resolution of Complaints Not Involving Title IX Sexual
Harassment]."

(Ex. B at 16).

(10) "In all cases, the complainant and respondent will be
provided with equal opportunity to present witnesses (fact
and expert), as well as inculpatory and exculpatory
evidence."

(Ex. B at 16-17)

> (11) "For all investigations into allegations of Title IX Sexual Harassment, both the complainant and respondent shall have the right to appeal the outcome of the investigation as more fully described in Appendix B."

(Ex. B at 17).

> (12) "The Title IX Coordinator, Deputy Title IX Coordinator, Investigators, Decision-Makers, University administrators rendering decisions or sanctions and appeal, and any other person who facilitates an informal resolution process will receive training on the definition of Title IX Sexual Harassment, the scope of the University's education program or activity, how to conduct an investigation and grievance process including hearings, appeals, and informed resolution processes ..., and how to serve impartially, including by avoiding prejudgment of the facts at issue, conflicts of interest, and bias."

(Ex. B at 21).

> (13) "The University will make materials used to train those individuals publicly available on its website."

(Ex. B at 21 n. 3).

> (14) "Upon initial evaluation, if the Title IX Coordinator or that person's designee determines that the alleged conduct: (even if proven), would not constitute Title IX Sexual Harassment...; [or] (2) did not occur in a University education program or activity ...—then the University *must* dismiss the complaint with respect to that conduct[.] ... *Where a complaint is dismissed, the Title IX Coordinator or that person's designee will notify both parties in writing of the dismissal and the reason(s) for it.*"

(Ex. B at 30) (emphasis added).

> (15)  "During the hearing portion of the [Title IX] formal complaint process, it is *required* that the complainant and respondent have an advisor.  If a party does not have an advisor at that time, the University will select and provide an advisor at no fee or cost to the party."

(Ex. B at 30).

> (16)  "The investigator ... will promptly, fully, fairly, and impartially investigate the complaint, and each party will have equitable opportunities to present witnesses, and review and present information and relevant inculpatory and exculpatory evidence."

(Ex. B at 31).

> (17)  "The Investigator will provide the parties with periodic status updates."

(Ex. B at 31).

> (18)  "The Investigator is responsible for gathering information sufficient to reach a determination about the respondent's responsibility.  The Investigator will review all information gathered or provided by the parties and determine the appropriateness, relevance and probative value of the information developed or received during the investigation."

(Ex. B at 31).

> (19)  "LIVE HEARING
>
> Upon receipt of the final investigative report from the Investigator, the Title IX Coordinator or Deputy Coordinator will identify a decision-maker to conduct a live hearing after which the decision-maker will render a determination regarding the respondent's responsibility based on a preponderance of the evidence (i.e., that it is more likely than not that the Title IX Sexual Harassment occurred).  The

parties will learn the decision-maker's identity at least 48 hours prior to the hearing.[4]

The decision-maker will schedule a hearing promptly after his/her receipt of the investigative report. The decision-maker will notify the parties as soon as practicable of the date, time and place of the hearing. The hearing will be closed to the public.

The live hearing will be conducted in real time. By request of either party, the University will arrange so that the parties are not in the same physical space during the hearing. In such circumstances, the University will arrange for the use of technology to enable all participants to see and hear the witness or party answering questions in real time.

The University may elect on its own to conduct the live hearing virtually, provided that all participants can simultaneously see and hear each other. When a hearing is conducted virtually, the University must still create an audio or audiovisual recording, or transcript, of the virtual proceeding and make it available to the parties for inspection and review.

The decision-maker will set an agenda for the hearing, including what order events will occur, how long statements or questioning may last, and any other issues that the decision-maker determines needs to be addressed.

Each party must have an advisor accompany them to the hearing. The University will provide an advisor, without fee, to any party who does not have one. At the hearing, the advisor will have the opportunity to ask relevant questions and follow-up questions of any party or witness (sometimes referred to as "cross-examination"), including those

---

[4] If either party is concerned that the decision-maker should be excluded for reasons of bias or conflict of interest, the party should notify the Title IX Coordinator or Deputy Title IX Coordinator of the concern, and that person will have the discretion to determine whether someone else should be assigned.

challenging credibility. *Only an advisor may conduct cross-examination*—a party may not do so.

The decision-maker may choose to exclude any question on cross-examination that he or she deems irrelevant—the decision-maker must explain why the question is not relevant. Questions and evidence about the complainant's prior sexual behavior are not relevant unless offered to prove that someone other than the respondent committed the alleged misconduct or concern specific incidents of the complainant's prior sexual behavior with respect to the respondent and are offered to prove consent.

The decision-maker will not rely on any statement made by someone who does not participate in the hearing or who refuses to answer questions posed on cross-examination, but the decision-maker will not draw any adverse inferences from that person's absence or refusal to answer questions."

(Ex. B at 32).

(20) "DECISION

As soon as practicable, the decision-maker will issue a written decision simultaneously to each party regarding the respondent's responsibility bases on a preponderance of the evidence. This written decision will: (i) identify the allegations, (ii) describe the procedural steps taken from the receipt of the formal complaint through the determination, including any notifications to the parties, interviews with parties and witnesses, site visits, methods used to gather other evidence, and hearings held, (iii) identify findings of fact that support the determination, (iv) make conclusions regarding the application of this Policy to the facts, (v) include a statement of, and rationale for, the results as to each allegation, including a determination regarding responsibility and any disciplinary sanctions the recipient imposes on the respondent, (vi) provide information about whether remedies designed to restore or preserve access to the University's education programs or activities will be

provided, and (vii) provide information about the procedures for sanctioning (if applicable) and bases for appeal.

The University will audio record the live hearing, and upon request, the Title IX Coordinator or Deputy Title IX Coordinator will make a copy of the recording available to the parties to review.

Where a respondent is found responsible for any of the alleged conduct, the parties will be provided with the opportunity to submit an impact statement for the decision-maker's consideration during the sanctioning stage.

Impact statements should be submitted with 3 days of the notice of the decision—and if submitted, will be shared with the other party. In deciding an appropriate disciplinary action, the decision-maker may consider the respondent's past violations of University policy, as well as the nature and severity of the violation(s), the impact statements of the parties, and any mitigating circumstances. The decision-maker will decide the appropriate disciplinary actions as soon as practicable. The Title IX Coordinator or Deputy Title IX Coordinator will simultaneously notify the parties as soon as practicable of the sanctions to be imposed, and the right to appeal (as provided below).

The University expects all cases involving a finding of sexual violence, stalking, domestic violence and dating violence to involve consideration of suspension or expulsion for students, and termination of employment for employees. Other sanctions that may be imposed include a warning, disciplinary probation, restriction from employment by the University, removal from University housing, removal from courses or activities, loss of privileges, no contact, exclusion from areas of the campus and facilities, removal or non-renewal of scholarships, a notation on respondent's official University transcript, community service, restitution, and a fine. In addition, the respondent may also be required to undergo an assessment and treatment by a therapist or

counselor, attend an intervention treatment program and/or issue a letter of apology.

(Ex. B at 33).

(21) For an appeal of a Title IX determination "[t]he Title IX Coordinator or Deputy Title IX Coordinator will appoint an appeal panel of two or more individuals ... to review the matter. The appeal will be conducted in a fair and impartial manner."

(Ex. B at 34).

## WITH RESPECT TO NON-TITLE IX COMPLAINTS

(22) "The Title IX Coordinator or Deputy Title IX Coordinator (or other designated investigator) will fully, fairly and impartially investigate the complaint, and each party equally will have the opportunity to present witnesses and other evidence to the investigator."

(Ex. B at 35).

(23) "The Title IX Coordinator or Deputy Title IX Coordinator will explore possible supportive measures with both parties."

(Ex. B at 36).

(24) "The Title IX Coordinator or Deputy Title IX Coordinator (or other designated investigator will endeavor, as promptly as feasible, to interview all relevant parties and review all evidence, *including witnesses and evidence identified by the parties.*"

(Ex. B at 36) (emphasis added).

(25) "The Title IX Coordinator or Deputy Title IX Coordinator (or his/her designee) will provide the complainant with periodic status updates."

(Ex. B at 36).

(26) "The Title IX Coordinator or Deputy Title IX Coordinator (or other designated investigator) will compile a neutral investigative report[.]"

(Ex. B at 36).

(27) "Either party may appeal the decision of the Title IX Coordinator or Deputy Title IX Coordinator (or other designated investigator/person) or hearing officer as applicable, … to an Appeal Panel of two or more persons, or as otherwise may be required by applicable law, rules or regulation) selected by the Title IX Coordinator … (in consultation with the Office of the General Counsel) depending on the nature of the case and the parties involved."

(Ex. B at 38).

(28) "The Title IX Coordinator … (or other designated investigator/person) … may not serve on the Appeal Panel."

(Ex. B at 38).

(29) "The appeal will be conducted in a fair and impartial manner."

(Ex. B at 38).

(30) "The Appeal Panel (by majority vote of panelists, or by unanimous decision of less than 3 panelists) can affirm the original determination of responsibility, alter the determination of responsibility either in who or in part, and/or alter the sanctions, depending on the circumstances. The matter can also be referred back for further investigation or consideration of appropriate."

(Ex. B at 39-39).

389. Without excuse or justification, YU failed to abide any of the specific promises that it made in its Policy (as set forth in each of the preceding paragraphs).

390. At all material times, Plaintiff complied with all rules and regulations for YU students as set forth in the Policy, as well as all other codes of conduct promulgated by YU (i.e., YU's Student Bill of Rights; YU's Policy on Protecting Student-Athletes; and YU's Anti-Bullying Policy).

391. As a direct and proximate result of YU's breaches of contract, Plaintiff suffered, and continues to suffer, extreme emotional distress, pain, and suffering and mental anguish.

392. Accordingly, as Defendant YU breached its obligations under its pertinent agreements with Plaintiff (including those as set forth in YU's Policy), Plaintiff is entitled to receive compensatory damages, including damages for egregious emotional distress and mental anguish, from YU.

## COUNT FOURTEEN:
## FRAUD: (AGAINST YESHIVA UNIVERSITY,
## ANDREW "AVI" LAUER, AND CHAIM NISSEL)

393. Plaintiff repeats and realleges each of the allegations contained in this Complaint as if each has been fully set forth at length.

394. The Clery Act has, at all material times, imposed upon YU an obligation to report and disclose to the U.S. Department of Education, all YU students, and prospective YU students, all reported rapes and sexual assaults that occurred on or near YU's campuses (including YU's Wilf Campus).

395. Upon information and belief, numerous sexual assaults were reported to the administration and Title IX Office of YU prior to Plaintiff's rape on January 24, 2021 (from 2001 to January 23, 2021), but YU deliberately failed to report or disclose those reported attacks.

396. One such sexual assault occurred, upon information and belief, in 2018, and was reported directly to YU's Title IX Office and Defendant Nissel, YU's Title IX Coordinator. This reported sexual assault was not publicly disclosed by Yeshiva University as required by The Clery Act.

397. Upon information and belief, Defendants Nissel and Lauer were involved in implementing and/or executing YU's policy and/or decisions to not disclose reported sexual assaults as required by The Clery Act.

398. The YU Defendants' failure to disclose reported sexual attacks, from 2001 to 2021, falsely gave female students (including Plaintiff) and prospective female students (including Plaintiff) the impression that YU was

safer than it actually was. Such information was material to Plaintiff's decisions to attend YU and to continue her studies at YU.

399. Upon information and belief, YU's Annual Security Report for YU's Wilf Campus, dated October 1, 2016, falsely and fraudulently reported that ZERO forcible sexual offenses had occurred on or near YU's Wilf Campus in 2013, 2014, and 2015.

400. Upon information and belief, YU's Annual Security Report for YU's Wilf Campus, dated October 1, 2017, falsely and fraudulently reported that ZERO forcible sexual offenses had occurred on or near YU's Wilf Campus in 2014, 2015, and 2016.

401. Upon information and belief, YU's Annual Security Report for YU's Wilf Campus, dated October 1, 2018, falsely and fraudulently reported that ZERO forcible sexual offenses had occurred on or near YU's Wilf Campus in 2015, 2016, and 2017.

402. Upon information and belief, YU's Annual Security Report for YU's Wilf Campus, dated October 1, 2019, falsely and fraudulently reported that ZERO forcible sexual offenses had occurred on or near YU's Wilf Campus in 2016, 2017, and 2018.

403. Upon information and belief, YU's Annual Security Report for YU's Wilf Campus, dated October 1, 2020, falsely and fraudulently reported that ZERO forcible sexual offenses had occurred on or near YU's Wilf Campus in 2017, 2018, and 2019.

404. Upon information and belief, various YU administrators, including Defendant Lauer and Defendant Nissel, participated in, drafted, ratified, and/or approved the contents of YU's Annual Security reports, dated October 1, 2016, October 1, 2017, October 1, 2018, October 1, 2019, and October 1, 2020 (including sexual assault reports data for all such Reports).

405. Upon information and belief, various YU administrators, including Defendant Lauer and Defendant Nissel, were aware that YU had knowledge of *numerous* rape and/or forcible fondling complaints on or near YU's Wilf Campus for 2013, 2014, 2015, 2016, 2017, 2018, 2019, and 2020, which were maliciously and deliberately omitted from YU's aforesaid Annual Security Reports for 2016, 2017, 2018, 2019, and 2020, to create a false impression of safety at YU.

406. At all material times, YU and Defendant Lauer and Defendant Nissel had a duty to disclose to YU's students and prospective students fair and accurate information about reported rapes and/or forcible fondling incidents which occurred on or near YU's Wilf Campus.

407. This duty to disclose truthful and accurate information arose from the fiduciary relationship that existed between Yeshiva University and its students (including Plaintiff), as well as the YU Defendants' possession of superior knowledge about rapes and forcible fondling incidents which were reported to have occurred on or near YU's Wilf Campus.

408. This superior knowledge was not readily available to students (including Plaintiff) and prospective students, and the YU Defendants knew at all material times that such students (including Plaintiff) and prospective students were acting—by enrolling in and/or continuing to attend YU—on the basis of mistaken knowledge about safety conditions and their specific safety in and/or near YU's Wilf Campus.

409. The YU Defendants' active concealment of the truthful and accurate rape/fondling reports of sexual assault data, with the intent to deceive and defraud students and prospective students, has the same legal effect as affirmative misrepresentations of fact.

410.   At all material times, the YU Defendants deliberately and maliciously intended to misrepresent, and did misrepresent, the safety of the school's Wilf Campus in order to induce female students, including Plaintiff, to enroll in YU or to continue their studies there.

411.   At all material times, the YU Defendants deliberately and maliciously intended to misrepresent, and did misrepresent (through, *inter alia*, the above-referenced Campus Security Reports), the number of rapes and sexual assaults that occurred on or near YU's Wilf Campus, in order to induce students, including Plaintiff, to enroll in YU or continue their studies there.

412.   At all material times, the YU Defendants deliberately and maliciously intended to misrepresent, and did misrepresent, the number of male YU students who were credibly accused of raping and/or sexually assaulting female YU students on or near YU's Wilf Campus, in order to induce female students, including Plaintiff, to enroll in YU or continue their studies there.

413.   At all material times, Plaintiff reasonably relied upon the false impression of safety created by the Yeshiva University Defendants, as memorialized by YU in its false, misleading, and deceptive Campus Security

Reports (as referenced herein), in deciding: (1) to attend YU, (2) to continue her studies at YU, and (3) where to travel to on or near YU's Wilf Campus.

414. As a direct and proximate result of the YU Defendants' false representations and omissions, Plaintiff was fraudulently induced to enroll as a student at YU, and to continue to attend YU and its education programs and activities, and travel to and/or near YU's Wilf Campus, as she reasonably believed that YU's Wilf Campus was a safe campus for female students with no recently reported sexual rapes or sexual assaults on or in close proximity to the campus.

415. As a direct and proximate result of the YU Defendants' fraud, and their abject failure to provide truthful and accurate sex crime reports information and data, Plaintiff sustained physical injuries (i.e., her rape) and psychological injuries, including severe emotional distress and mental anguish.

416. As a direct and proximate result of the YU Defendants' fraud and misconduct, Plaintiff has been required to obtain psychological care, treatment, and therapy for her severe emotional distress and mental anguish, at considerable costs, and will likely continue to need psychological care, treatment, and therapy for a considerable period of time.

417.   By reason of the foregoing, and as a direct and proximate result of the YU Defendants' conduct, Plaintiff sustained physical and psychological injuries, including but not limited to, severe emotional distress, depression, humiliation, embarrassment, fright, anger, anxiety, and has been caused to suffer pain and mental anguish, emotional and psychological damage as a result thereof, and, upon information and belief, some or all of these injuries are of a permanent and lasting nature.

418.   At all material times, the YU Defendants' conduct towards Plaintiff was willful, wanton, intentional, and malicious, and constituted evil-minded acts accompanied by a wanton and willful disregard of Plaintiff's rights, interests, and welfare, and was seriously harmful to the public—which has a compelling interest in ensuring that college and university students within the community—including Plaintiff—be given a full and fair opportunity to enjoy the benefits of higher education free from sexual assault, fraud, retaliation (for reporting rape and sexual abuse), violations of her civil rights, and other gross misconduct.

419.   The aforesaid fraudulent conduct of the YU Defendants entitles Plaintiff to receive punitive damages, as well as compensatory damages.

## AD DAMNUM CLAUSE

WHEREFORE, based on the aforesaid, Plaintiff hereby demands judgment in her favor and against each of the Defendants, jointly and severally, as follows:

1.      As and for Count I, Violation of Title IX (against Yeshiva University), a sum to be determined at trial in compensatory damages for Plaintiff, and, pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, and/or any other appropriate authority, all reasonable attorneys' fees, costs, and expenses, incurred in the prosecution of this case; and

2.      As and for Count II, Retaliation in Violation of Title IX (against Yeshiva University), a sum to be determined at trial in compensatory damages for Plaintiff, and, pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, and/or any other appropriate authority, all reasonable attorneys' fees, costs, and expenses, incurred in the prosecution of this case; and

3.      As and for Count III, Violation of New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(4), (against Yeshiva University), a sum to be determined at trial in compensatory damages for Plaintiff, a sum to be determined at trial in punitive damages for Plaintiff, and, pursuant to

New York City Human Rights Law, N.Y.C. Admin. Code § 8-502(g) and/or any other appropriate authority, all reasonable attorneys' fees, costs, and expenses, incurred in the prosecution of this case; and

4.      As and for Count IV, Retaliation in Violation of New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(7), (against Yeshiva University), a sum to be determined at trial in compensatory damages for Plaintiff, a sum to be determined at trial in punitive damages for Plaintiff, and, pursuant to New York City Human Rights Law, N.Y.C. Admin. Code § 8-502(g) and/or any other appropriate authority, all reasonable attorneys' fees, costs, and expenses, incurred in the prosecution of this case; and

5.      As and for Count V, Violation of New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(6) ("Aiding and Abetting") (against Andrew "Avi" Lauer, Esq., Chaim Nissel, Seyfarth Shaw, LLP, Dov Kesselman, Esq., and Emily Miller, Esq.), a sum to be determined at trial in compensatory damages for Plaintiff, a sum to be determined at trial in punitive damages for Plaintiff, and, pursuant to New York City Human Rights Law, N.Y.C. Admin. Code § 8-502(g) and/or any other appropriate authority, all reasonable attorneys' fees, costs, and expenses, incurred in the prosecution of this case; and

6.    As and for Count VI, Breach of Fiduciary Duties (against Yeshiva University and Chaim Nissel), a sum to be determined at trial in compensatory damages for Plaintiff, and a sum to be determined at trial in punitive damages for Plaintiff, and

7.    As and for Count VII, Intentional Infliction of Emotional Distress, (against all Defendants), a sum to be determined at trial in compensatory damages for Plaintiff, and a sum to be determined at trial in punitive damages for Plaintiff, and

8.    As and for Count VIII, Violation of New York General Business Law § 349 (Deceptive Acts and Practices), (against Yeshiva University), a sum to be determined at trial for Plaintiff in compensatory damages, treble damages (in the amount and to the extent appropriate), and, pursuant to New York General Business Law § 349(h), and/or other appropriate authority, all reasonable attorneys' fees, costs, and expenses, incurred in the prosecution of this case;

9.    As and for Count IX, Violation of New York General Business Law § 350 (False Advertising), (against Yeshiva University), a sum to be determined at trial in compensatory damages for Plaintiff, treble damages (in the amount and to the extent appropriate), and, pursuant to New York General Business Law § 349(h), and/or other appropriate authority, all

reasonable attorneys' fees, costs, and expenses, incurred in the prosecution of this case; and

10.    As and for Count X, Violation of New York Executive Law § 296(7), (against Yeshiva University), a sum to be determined at trial in compensatory damages for Plaintiff; and

11.    As and for Count XI, Violation of New York Executive Law § 296(4), (against Yeshiva University), a sum to be determined at trial in compensatory damages for Plaintiff; and

12.    As and for Count XII, Violation of New York Executive Law § 296(6) ("Aiding and Abetting"), (against Andrew "Avi" Lauer, Esq., Chaim Nissel, Seyfarth Shaw, LLP, Dov Kesselman, Esq., and Emily Miller, Esq.), a sum to be determined at trial in compensatory damages for Plaintiff; and

13.    As and for Count XIII, Breach of Contract (against Yeshiva University), a sum to be determined at trial in compensatory damages for Plaintiff; and

14.    As and for Count XIV, Fraud (against Yeshiva University), a sum to be determined at trial in compensatory damages for Plaintiff, and a sum to be determined at trial in punitive damages for Plaintiff; and

15.    Any pre-judgment interest to which Plaintiff is entitled; and

16.    A declaratory judgment declaring and adjudging Defendant, Yeshiva University, to be in violation of The Clery Act for false, fraudulent, and inaccurate reporting of campus crime data and statistics to the United States Department of Education, from 2001 through 2021; and

17.    A declaratory judgment declaring that the Non-Disclosure Agreement executed by Plaintiff on April 29, 2021 (Ex. G hereto) is in violation of The Clery Act, null and void, and of no force and effect.

18.    Any other, different or further relief as this Honorable Court may deem just, proper, or necessary.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: July 12, 2022
       Orangeburg, New York

Respectfully submitted,

**KEVIN T. MULHEARN, P.C.**

**Kevin T. Mulhearn /S**

KEVIN T. MULHEARN (KM 2301)
DARREN J. EPSTEIN (*OF COUNSEL*)

60 Dutch Hill Road, Suite 6B
Orangeburg, New York 10962
(845) 613-7059
kmulhearn@ktmlaw.net

*Attorneys for Plaintiff, JANE DOE*

# EXHIBIT A



Yeshiva University

**Chaim Nissel, Psy.D.**
**Vice Provost for Student Affairs**
Rubin Hall, Room 110, 500 West 185th Street, New York, NY 10033
P: 646.592.4201   drnissel@yu.edu

May 26, 2021

Ms.     **REDACTED**

Delivered by email to     **REDACTED**

Dear Ms.     **REDACTED**

As you know, the University conducted an investigation of the complaint that you filed against your fellow Yeshiva University student, **REDACTED**, alleging that he engaged in behavior (namely Sexual Assault) that violates the University's Non-Discrimination & Anti-Harassment Policy.

After an extensive investigation, it has been determined that the evidence does not support a finding that **REDACTED** violated the Policy.

If you would like to appeal the finding, please submit your request for an appeal to me by June 1, 2021. The request must consist of a plain, concise, and complete written statement outlining the grounds for the appeal. The possible grounds for an appeal (and process) are set forth in the Policy. (See Appendix C.I. – Formal Resolution of Complaints Not Involving Title IX Sexual Harassment (FOR COMPLAINTS INVOLVING SEX/SEX-BASED DISCRIMINATION, SEXUAL HARASSMENT, SEXUAL ABUSE/ASSAULT, STALKING, DOMESTIC VIOLENCE AND DATING VIOLENCE INVOLVING STUDENTS), pp. 35 – 39, available at https://www.yu.edu/student-life/resources-and-services/Standards-Policies.)

A letter similar to this one will be sent to **REDACTED** to apprise him of the finding.

As a reminder, the Policy prohibits retaliation against any individual who has participated in the investigation of a complaint, even if the complaint is unsubstantiated. Violations of this prohibition will be addressed through the process outlined within the Policy and/or through any other University disciplinary procedures.

If you have any questions, please feel free to contact me at 646-592-4201 or via email at drnissel@yu.edu.

Sincerely,

C. Nissel, Psy.D.

Chaim Nissel, Psy.D.
Vice Provost for Student Affairs

cc:     Dov Kesselman
        Emily Miller

# EXHIBIT B



# NON-DISCRIMINATION AND ANTI-HARASSMENT POLICY & COMPLAINT PROCEDURES

**(including Title IX Sexual Harassment, Sexual Abuse/Assault, Stalking, Domestic Violence, Dating Violence, and Other Sexual Misconduct)**

Azrieli Graduate School of Jewish Education and Administration – Benjamin N. Cardozo School of Law – Bernard Revel Graduate School of Jewish Studies – Ferkauf Graduate School of Psychology – The Katz School of Science and Health – Stern College for Women – Sy Syms School of Business – Wurzweiler School of Social Work – Yeshiva College

(December 31, 2020)

## Table of Contents

EXECUTIVE SUMMARY .............................................................................................1

I. POLICY STATEMENT ...........................................................................................3

II. DEFINITIONS .......................................................................................................4

III. BYSTANDER INTERVENTION ........................................................................10

IV. FREE SPEECH & ACADEMIC FREEDOM.......................................................11

V. TITLE IX COORDINATOR.................................................................................11

VI. SUPPORTIVE MEASURES................................................................................12

VII. REPORTING PROCEDURES & GUIDELINES................................................13

VIII. GUIDING PRINCIPLES ..................................................................................16

IX. INVESTIGATION OF REPORTED INCIDENTS...............................................16

X. REQUEST BY COMPLAINANT NOT TO PURSUE INVESTIGATION........................17

XI. RECORDS ..........................................................................................................17

XII. INFORMAL RESOLUTION AND UNLAWFUL HARASSMENT PANEL ................18

XIII. FORMAL RESOLUTION .................................................................................19

XIV. THE APPEAL PROCESS..................................................................................19

XV. CONFIDENTIALITY DURING AN INVESTIGATION ...............................................20

XVI. RETALIATION ................................................................................................20

XVII. KNOWING FALSE CLAIMS OR INFORMATION .......................................................20

XVIII. TIME LIMITS .............................................................................................................21

XIX. REMEDIES AND SANCTIONS ......................................................................................21

XX. EDUCATION/TRAINING ..............................................................................................21

XXL RE-EVALUATION.........................................................................................................22

XXII. SUPPORT RESOURCES .............................................................................................22

XXIII. LEGAL PROTECTIONS AND EXTERNAL REMEDIES ..........................................24

APPENDIX A ........................................................................................................................26
    Informal Resolution
APPENDIX B.........................................................................................................................29
    Formal Resolution of Complaints Involving Title IX Sexual Harassment
APPENDIX C ........................................................................................................................35
    Formal Resolution of Complaints Not Involving Title IX Sexual Harassment
APPENDIX D ........................................................................................................................43
    Student Bill of Rights
APPENDIX E.........................................................................................................................44
    Student Alcohol and Drug Use Amnesty Policy
APPENDIX F.........................................................................................................................45
    New York Crime Definitions
APPENDIX G ........................................................................................................................49
    A Plain Language Explanation of Distinctions between the New York State Penal Law
    and the University Disciplinary Processes
APPENDIX H ........................................................................................................................53
    Employee Complaint Form For Reporting Sexual Harassment

**Index to Certain Defined Terms**

Each term set forth below is defined in the referenced Section:

| Term | Section |
|------|---------|
| campus security authorities | VII. Reporting Procedures & Guidelines |
| Clery Act | VII. Reporting Procedures & Guidelines |
| Consent | II. Definitions |
| Dating Violence | II. Definitions |
| Domestic Violence | II. Definitions |
| Hostile Environment Harassment | II. Definitions |
| Incapacitation | II. Definitions |
| OCR | V. Title IX Coordinator |
| Other Sexual Misconduct | II. Definitions |
| Quid Pro Quo Harassment | II. Definitions |
| Sexual Assault | II. Definitions |
| Sexual Violence | II. Definitions |
| Stalking | II. Definitions |
| Title IX | II. Definitions |
| Title IX Sexual Harassment | II. Definitions |
| University employees | I. Policy Statement |
| Unlawful Discrimination or Harassment | II. Definitions |



## NON-DISCRIMINATION AND ANTI-HARASSMENT POLICY
## & COMPLAINT PROCEDURES

**(including Title IX Sexual Harassment, Sexual Abuse/Assault, Stalking, Domestic Violence, Dating Violence, and Other Sexual Misconduct)**

### EXECUTIVE SUMMARY

*The following is a brief summary of the Policy. Please read the full Policy for more details, including definitions and examples of discrimination and harassment; complaint reporting procedures and guidelines; and the investigation and resolution processes.*

- Yeshiva University prohibits discriminatory practices, harassment and sexual misconduct of any kind and in any form.
- Complaints may be made to the University's Title IX Coordinator or Deputy Title IX Coordinator, Security Department, Dean of Students, Unlawful Harassment Panel, Office of Human Resources, Office of the General Counsel or Confidential Compliance Hotline. Complaints also may be made to any other University personnel identified as "campus security authorities" including the Undergraduate Office of Student Life, Cardozo Office of Student Services and Advising, and Undergraduate Office of University Housing and Residence Life.
- There is no time limit on when a complaint can be made.
- No University employee may discourage an individual from making a complaint.
- Any University employee with any knowledge of a violation of the Policy must report the incident to the Title IX Coordinator or a Deputy Title IX Coordinator, Security Department, Dean of Students, Unlawful Harassment Panel, Office of Human Resources, or Office of the General Counsel, even if the actual victim of such discrimination, harassment or sexual misconduct is not interested in filing a formal complaint.
- All complaints must be reported to the Title IX Coordinator.
- The University will respond to all complaints promptly, thoroughly, fairly and impartially.
- The University will make supportive measures available to those reporting violations of the Policy as well as those accused of misconduct under the Policy.
- The University may take other reasonable steps to protect the parties involved and/or the University community.
- Upon receipt of a complaint, the University will conduct a fair and impartial investigation into reported incidents of discrimination or harassment, as well as sexual abuse/assault, stalking, domestic violence, dating violence or other sexual misconduct. The University may also choose to launch an investigation on its own initiative upon receipt of information that it determines warrants further investigation.
- The University expects all members of the University community to cooperate with investigations.
- Retaliation is prohibited against anyone who files and/or participates in the investigation of a complaint (including an individual who testifies or assists in any proceeding related to a complaint), even if the complaint is unsubstantiated. Those who knowingly make a false report will be subject to serious disciplinary action.

*Students and employee-victims have the right (i) to make a report to the University's Security Department, local law enforcement and/or State Police or choose not to report; (ii) to report the incident to the University; (iii) to be protected by the University from retaliation for reporting an incident (or testifying or assisting in a proceeding); and (iv) to receive assistance and resources from the University.*

1

**Title IX Coordinator**
Dr. Chaim Nissel, Vice Provost of Student Affairs
Yeshiva University – Wilf Campus
2501 Amsterdam Avenue - Rubin Hall 110
New York, NY 10033
(646) 592-4201 / drnissel@yu.edu

**Deputy Title IX Coordinator – Human Resources**

Ms. Renee Coker, Senior Director, Talent Management
Yeshiva University – Human Resources - Wilf Campus, BH 806
2495 Amsterdam Avenue, New York, New York 10033
(646) 592-4336 / renee.coker@yu.edu

**Deputy Title IX Coordinator – Athletics**

Mr. Joe Bednarsh, Athletic Director
Yeshiva University – Wilf Campus, Rubin Hall Suite 104
2501 Amsterdam Avenue, New York, New York 10033
(212) 960-0015 / joe.bednarsh@yu.edu

**Deputy Title IX Coordinator – Cardozo**

Ms. Jenn Kim, Dean of Students
Associate Dean of Student Services & Advising
Benjamin N. Cardozo School of Law
55 Fifth Avenue, Room 1000
New York, New York 10003
(212) 790-0429 / jennifer.kim@yu.edu

 Yeshiva University

### NON-DISCRIMINATION AND ANTI-HARASSMENT POLICY
### & COMPLAINT PROCEDURES

**(including Title IX Sexual Harassment, Sexual Abuse/Assault, Stalking, Dating Violence, Domestic Violence, and Other Sexual Misconduct)**

### I.    POLICY STATEMENT

Yeshiva University is committed to maintaining an academic, work and living environment in which all individuals are treated with respect and dignity. Everyone at the University has the right to work and learn in an environment that promotes equal opportunities for all. Thus, this Policy prohibits discriminatory practices, harassment and sexual misconduct of any kind. Where discrimination, harassment or sexual misconduct has occurred, the University will act promptly to stop it, prevent its recurrence, and discipline and/or take other appropriate action against those responsible.

Yeshiva University is further guided by the timeless religious values and principles of the Torah and Jewish thought. In addition to its commitment to serving as the premier orthodox Jewish institution of higher education and secular thought, Yeshiva University is dedicated to advancing the moral and material betterment of society in the service of G-d. The University's commitment to non-discrimination and anti-harassment is not only in compliance with law, but derives from its religious values and principles.

**Equal Employment Opportunity**

It is the policy of the University to ensure equal employment opportunity without discrimination or harassment on the basis of race, religion, color, creed, age, national origin or ancestry, sex, marital status, physical or mental disability, veteran or disabled veteran status, genetic predisposition/carrier status, sexual orientation, gender identity and expression, citizenship status, sexual and other reproductive health decisions or decision-making, or any other characteristic protected by any applicable law, ordinance or regulation. The University prohibits and will not tolerate any such discrimination or harassment. This Policy is one component of the University's commitment to a discrimination-free work environment.

**To Whom Applicable**

This Policy applies to all University faculty, administration (whether supervisors, administrators, senior or otherwise, and managers), athletic personnel, and other staff, whether full-time or part-time (hereinafter collectively, "*University employees*"), non-employees working at the University (such as employees of contracted service providers, volunteers, and interns), applicants for employment, students and visitors, and covers their treatment of each other as well as others with whom they come into contact at the University and/or at University-sponsored and affiliated activities and events.

The University's disciplinary authority may not extend to third parties who are not students or employees of the University; however, a complaint that such a person engaged in a violation of this Policy will be investigated in accordance with this Policy as will a complaint of Other Sexual Misconduct made to the University by a third party if such complaint is connected to the University's educational programs or

3

activities. At the time of filing a complaint of Title IX Sexual Harassment, a complainant must be participating in, or attempting to participate in, the University's education programs or activities.

The sexual harassment by any employee of the University of any non-employee working at the University is prohibited by this Policy.

With regard to discrimination, harassment, sexual abuse/assault, stalking, dating violence and domestic violence, as herein defined, this Policy supersedes all other procedures and policies set forth in other University documents.

### Where Applicable

This Policy is intended to protect all aforementioned people and applies to conduct that occurs on University premises and/or at University-sponsored and affiliated activities and events, whether on University premises or at other locations, including, but not limited to, overnight trips, sporting events and practices, study abroad programs, service learning programs, internships and external business meetings, and to all forms/uses of technology by all individuals covered by this Policy.

The prohibition against Title IX Sexual Harassment (see **Section II**) applies to conduct that occurs in the United States in the University's education programs and activities. Education programs and activities include locations, events or circumstances where the University exercised substantial control over both the person accused of misconduct and the context in which the harassment occurred, and also includes any building owned or controlled by a student organization that is officially recognized by the University.

Conduct that occurs outside of the University's education programs and activities or that occurs outside of the United States or at locations, events, or under circumstances where the University does not exercise substantial control over both the person accused of misconduct and the context in which the harassment occurred, although not covered by the Title IX Sexual Harassment policy, may be covered by the University's Other Sexual Misconduct policy (see **Section II**) if the University determines that the behavior, or the continued presence of the accused perpetrator, impairs, obstructs, substantially interferes with or adversely affects the mission, processes or functions of the University. Calls, texts, emails, and social media usage by employees can constitute unlawful workplace harassment, even if they occur away from the workplace premises or not during work hours.

Discrimination, harassment or sexual misconduct in any form (including sexual harassment, sexual abuse/assault, stalking, domestic violence and dating violence) is a violation of this Policy and will be dealt with seriously, promptly and thoroughly. If any of the principles and procedures in this Policy are inconsistent with those contained in another University policy, the principles and procedures in this Policy will control.

## II.   DEFINITIONS

### Unlawful Discrimination or Harassment

Unlawful Discrimination or Harassment includes discrimination or harassment based on race, religion, color, creed, age, national origin or ancestry, sex, marital or partnership status, physical or mental disability, veteran or disabled veteran status, genetic predisposition/carrier status, sexual orientation, gender identity and expression, citizenship status (non-citizen or immigration status), sexual and other reproductive health decisions or decision-making (in the case of employees), or any other characteristic protected by any applicable law, ordinance, or regulation.   Applicable laws that prohibit such discrimination and harassment include, but are not limited to, the following: Title VI of the Civil Rights Act of 1964, which prohibits discrimination on the basis of race, color or national origin; Title VII of the Civil Rights Act of 1964, which prohibits discrimination on the basis of race, color, national origin, sex

4

and religion; New York State Human Rights Law, which prohibits discrimination on the basis of age, race, creed, color, national origin, sexual orientation, sex, domestic violence victim status, arrest record, conviction record, predisposing genetic characteristics, military status, familial status, marital status or disability; Title IX of the Higher Education Act of 1972 ("*Title IX*"), which prohibits discrimination on the basis of sex; and Section 504 of the Rehabilitation Act of 1973 and Title II of the Americans with Disabilities Act, which prohibit discrimination on the basis of disability.

This Policy prohibits discrimination against or harassment of any individual based upon that individual's membership in a protected class, regardless of whether it rises to the level of unlawful discrimination or harassment. In addition, this Policy protects all others listed in "To Whom Applicable" above, even if they are not members of a protected class, such as when one is discriminated against or harassed based on an inaccurate assumption that such person is a member of a protected class.

Examples of conduct that may violate this Policy include the use of epithets, slurs, jokes, stereotyping, or intimidating or hostile acts directed at any individual because of his/her protected class status, as well as the failure to provide equal consideration, acknowledgment or access to educational opportunities to equally qualified individuals. Harassment does not have to include intent to harm or be directed at a specific target. Prohibited harassment may involve a single episode or ongoing behavior depending on the severity of the issue. Further, this Policy forbids not only verbal harassment but also harassment in any medium, including email and electronic social media.

Discrimination and harassment can take many forms. Prohibited conduct includes, but is not be limited to, behaviors commonly recognized as sexual harassment, sexual abuse/assault, other physical violence, threatening behavior and stalking. Sexual harassment, including sexual abuse/assault ("*sexual violence*"), is a form of sex discrimination prohibited by Title IX and other laws. All of these behaviors are prohibited regardless of the relationship or gender of the parties involved, and thus any such harassment that occurs in a dating or domestic relationship is specifically prohibited by this Policy.

Sexual abuse/assault, stalking, domestic violence and dating violence are prohibited by this Policy as well as federal and state laws; anyone found responsible by the University for such conduct will face serious disciplinary sanctions, up to and including suspension or expulsion from the University for students, and termination of University employment for employees.

### Title IX Sexual Harassment

Sexual Harassment, including sexual abuse/assault, is a form of sex discrimination prohibited by Title IX, Title VII of the 1964 federal Civil Rights Act, the New York State Human Rights Law, and the New York City Administrative Code. Sexual harassment is offensive and includes harassment on the basis of sex, sexual orientation, gender identity and the status of being transgender. Sexual harassment in any form is prohibited and constitutes a violation of this Policy. The University may be liable for harm to victims of sexual harassment by University employees and others, and harassers may also be individually subject to liability.

Sexual harassment refers to any *unwelcome* or *unwanted* sexual advances, requests for sexual favors, or other verbal, physical, demonstrative, or electronic conduct or communication of a sexual nature, or which is directed at an individual because of that individual's sex, and includes the following:

1. **Hostile Environment Harassment**

   Hostile Environment Harassment is unwelcome sexual conduct that a reasonable person would find so severe, pervasive, and objectively offensive that it effectively denies a person equal access to the University's education programs or activities. Hostile environment harassment can occur even if, in the case of a University employee or non-employee working at the University, the

complaining individual is not the intended target of the sexual harassment. A sexually harassing hostile work environment may include words, signs, jokes, pranks, intimidation or physical violence which are of a sexual nature, or which are directed at an individual because of that individual's sex. Conduct that does not constitute a Title IX violation may still be a violation of the University's Other Sexual Misconduct Policy.

2.    **Quid Pro Quo Harassment**

Quid Pro Quo Harassment occurs when a University employee either explicitly or implicitly conditions the provision of an aid, benefit, or service of the University of an individual's participation in unwelcome sexual conduct. Conduct that does not meet the level of a Title IX violation may still be a violation of the University's Other Sexual Misconduct Policy.

3.    **Sexual Assault**

Sexual Assault is any nonconsensual sexual act prohibited by law, including when the victim lacks capacity to consent. This Policy prohibits sexual assault as defined in 20 U.S.C. § 1092(f)(6)(A)(v), incorporating definitions from the uniform crime reporting system of the Federal Bureau of Investigation, which include:

   1) *Rape* is the penetration, no matter how slight, of the vagina or anus with any body part or object, or oral penetration by a sex organ of another person, forcibly or without affirmative consent or where the victim is incapable of affirmative consent due to mental or physical incapacity.

   2) *Statutory Rape* is non-forcible sexual intercourse with a person who is under the statutory age of consent. In New York, the statutory age of consent is 17 years old.

   3) *Fondling* is the touching of the private body parts of another person (buttocks, groin, breasts) for the purpose of sexual gratification, forcibly and/or without affirmative consent (as defined below) or not forcibly or against the person's will in instances where the victim is incapable of giving consent because of age or because of temporary or permanent mental or physical incapacity.

4.    **Dating Violence**

Dating Violence is violence committed by a person who is or has been in a romantic or intimate relationship with the victim. Identification of a dating partner, and the existence of a social relationship of a romantic or intimate nature constituting a dating relationship, shall be determined based on consideration of the length of the relationship, the type of relationship, and the frequency of interaction between the persons involved in the relationship.

5.    **Domestic Violence[1]**

Domestic Violence includes felony or misdemeanor crimes of violence committed by a current or former spouse or intimate partner of the victim, by a person with whom the victim shares a

---

[1]    To categorize an incident as Domestic Violence, the relationship between the parties must be more than just two people living together as roommates. The people cohabitating must be current or former spouses or have an intimate relationship.

6

child in common, by a person who is cohabitating with or has cohabitated with the victim, by a person similarly situated to a spouse of the victim, or by any other person against an adult or youth victim who is protected from that person's acts.

Examples of conduct that may constitute, whether alone or in combination, domestic violence include, but are not limited to: a pattern of name-calling, insults, put-downs; keeping or limiting a person from contacting family or friends; withholding money, food or other necessities; stopping a person from getting or keeping a job, getting to class, or staying in school; actual or threatened physical harm; sexual abuse/assault ("*sexual violence*"); stalking; possessiveness or extreme jealousy; intimidation; physical assault or threats thereof; and emotional isolation/manipulation.

6.    **Stalking**

Stalking refers to engaging in a course of conduct directed at a specific person that would cause a reasonable person to fear for his/her own safety or the safety of others, or to suffer substantial emotional distress (i.e., significant mental suffering or anguish that may, but does not necessarily, require medical or other professional treatment or counseling). Such a course of conduct means two or more acts, including, but not limited to, any actions directed at another person, whether done directly, indirectly or through others, via the telephone, electronic devices or any other means of communication, to follow, monitor, observe, surveil, threaten, or communicate to or about a person or interfere with the person's property. Stalking may include contact through a third party.

Examples of conduct that may constitute prohibited stalking include, but are not limited to: unwelcome/unwanted communications of any type, including face-to-face, telephone calls, voice messages, e-mail, text messages, postings, written letters or notes and unwanted gifts; use of threatening words or conduct; pursuing or following; observing and/or surveillance; trespassing or vandalism; entering or remaining on or near a person's property, residence, classroom, place of employment or any other location where the person is present; interfering with or damaging a person's property, including pets; and engaging in other unwelcome contact.

**Regarding the appropriateness of romantic or sexual relationships between University employees and students, see Yeshiva University Policy Regarding Romantic Relationships between Individuals of Unequal Power or Status ( https://www.yu.edu/hr/policies).**

Sexual harassment may occur in a single incident or consist of a series of incidents. It can occur between any individuals, regardless of sex or gender, including, but not limited to, two faculty or staff members, a faculty or staff member and a student, two students, a group and an individual, people of the same or different gender, or people of the same or unequal status or power. A harasser can be a superior, a subordinate, a co-worker or anyone in the workplace including an independent contractor, contract worker, vendor, client, customer or visitor.

Examples of conduct which may constitute sexual harassment include, but are not limited to: verbal comments of an overtly sexual nature, whether in the form of jokes, innuendoes, slurs, or other statements; the use of sexual teaching materials or comments of a sexual nature not relevant to the material being taught or any other academic purpose; remarks of a sexual nature about an individual's clothing or body; remarks speculating about an individual's sexual orientation, activity or previous sexual experiences; verbal harassment or abuse of a sexual nature; making offensive gender-based remarks; the display or transmission of sexually offensive objects, photographs, drawings, graffiti, email,

electronic social media communications, computer graphics or programs when sexual content is not relevant to any academic purpose; non-verbal behaviors of a sexually degrading or offensive nature, such as gesturing, or leering; unwanted touching, hugging, or brushing against an individual's body; requests, demands or persistent pressure for sexual favors, particularly when accompanied by an offer of rewards or threats of retaliation concerning work, grades, promotions, tenure or any other academic or University-related decision; and sexual abuse/assault ("*sexual violence*"). In addition, sexual harassment may include hostile actions taken against an individual because of that individual's sex, sexual orientation, gender identity and the status of being transgender, such as (i) interfering with, destroying or damaging a person's workstation, tools or equipment, or otherwise interfering with the individual's ability to perform the job; (ii) sabotaging an individual's work; or (iii) bullying, yelling, or name-calling. Sex stereotyping may also constitute sexual harassment. Sex stereotyping occurs when conduct or personality traits are considered inappropriate simply because they may not conform to other people's ideas or perceptions about how individuals of a particular sex should act or look.

Sexual harassment constitutes employee misconduct and is a form of workplace discrimination. Sexual harassment also may consist of any unwanted verbal or physical advances, sexually explicit derogatory statements or sexually discriminatory remarks made by someone which are offensive or objectionable to the recipient, which cause the recipient discomfort or humiliation, and which interfere with the recipient's job performance. Sexual harassment also occurs when a person in authority tries to trade job benefits for sexual favors. This can include hiring, promotion, continued employment or any other terms, conditions or privileges of employment. This is also called "quid pro quo" harassment. The University will enforce sanctions, up to and including termination of employment, against any employee who engages in an act of sexual harassment, and against any managerial or supervisory personnel who knowingly allow such behavior to continue.

**Other Sexual Misconduct**

In addition to Title IX Sexual Harassment, the University prohibits a broader range of misconduct under its prohibition against Other Sexual Misconduct. This captures any unwelcome or unwanted sexual advances, requests for sexual favors, or other verbal, physical, demonstrative, or electronic conduct or communication of a sexual nature, or which is directed at an individual because of that individual's sex, when:

1.  The conduct meets the definition of hostile environment harassment, quid pro quo harassment, sexual assault, dating violence, domestic violence, or stalking, but falls outside of the scope of Title IX because it occurs outside of the United States;

2.  The conduct meets the definition of hostile environment harassment, quid pro quo harassment, sexual assault, dating violence, domestic violence, or stalking, but falls outside of the scope of Title IX because it occurs outside of the University's education programs and activities, and the University determines that the behavior, or the continued presence of the accused perpetrator, impairs, obstructs, substantially interferes with or adversely affects the mission, processes or functions of the University; or,

3.  The conduct does not meet the definition of Title IX hostile environment harassment or quid pro quo harassment, but unwelcome sexual conduct is occurring; and

    a.  Submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment or educational experience; or

8

b. Submission to or rejection of such conduct is used as the basis for a decision regarding an employment, academic, or other University-related activity affecting such individual; or

c. Such conduct has the purpose or effect of unreasonably interfering with an individual's work or academic performance or participation in a University program, department or extra-curricular activity (even if, in the case of a University employee or non-employee working at the University, the complaining individual is not the intended target of the sexual harassment); or

d. Such conduct has the purpose or effect of creating an intimidating, hostile, or offensive working, learning, studying, or school environment (even if, in the case of a University employee or non-employee working at the University, the complaining individual is not the intended target of the sexual harassment). A sexually harassing hostile work environment consists of words, signs, jokes, pranks, intimidation or physical violence which are of a sexual nature, or which are directed at an individual because of that individual's sex.

**You do not need to determine whether conduct falls under any of these definitions prior to speaking with the Title IX Coordinator, the Deputy Title IX Coordinator or any other University resources. The University encourages all individuals with concerns to bring them forward.**

### Affirmative Consent ("Consent")

Affirmative Consent is defined as a knowing, voluntary, and mutual decision among all participants to engage in sexual activity. Consent can be given by words or actions, as long as those words or actions create clear permission regarding willingness to engage in the sexual activity. Silence or lack of resistance, in and of itself, does not demonstrate consent. This definition does not vary based upon a participant's sex, sexual orientation, gender identity, or gender expression.

- Consent to any sexual act or prior consensual sexual activity between or with any party does not necessarily constitute consent to any other sexual act;
- Consent is required regardless of whether the person initiating the act is under the influence of drugs and/or alcohol;
- Consent may be initially given but withdrawn at any time;
- Consent cannot be given when a person is incapacitated (as hereafter described);
- Consent cannot be given when it is the result of any coercion, intimidation, force, or threat of harm; and
- When consent is withdrawn or can no longer be given, sexual activity must stop.
- Children under 17 years of age cannot legally consent under New York State Law to having sex or sexual contact with an adult (i.e., someone who is 17 years of age or older). **Any sexual contact in New York between a child under 17 and an adult is a crime, and any such illegal behavior between a University student under 17 and a University employee or non-employee working at the University will be reported to an appropriate law enforcement agency. Other jurisdictions may have different standards, and any illegal behavior in such jurisdiction also will be reported to the appropriate law enforcement agency.**

**Incapacitation:** occurs when an individual lacks the ability to knowingly choose to participate in sexual activity. Incapacitation may be caused by the lack of consciousness or being asleep, being

9

involuntarily restrained, or if an individual otherwise cannot consent. Depending on the degree of intoxication, someone who is under the influence of alcohol, drugs, or other intoxicants may be incapacitated and therefore unable to consent.

Evaluating incapacitation requires an assessment of an individual's:

> ➤ Decision-making ability;
> ➤ Awareness of consequences;
> ➤ Ability to make informed judgments;
> ➤ Capacity to appreciate the nature and the quality of the act; and
> ➤ Level of consciousness.

An individual who engages in sexual activity with someone the individual knows or reasonably should know is incapable of making a knowing, reasonable decision about whether to engage in sexual activity is in violation of this Policy.

**Alcohol and Other Drugs**: In general, sexual contact while under the influence of alcohol or other drugs poses a risk to all parties. Alcohol and drugs impair a person's ability to provide affirmative consent, awareness of the consequences, and ability to make informed judgments. It is especially important, therefore, that anyone engaging in sexual activity be aware of the other person's level of intoxication. If there is any doubt as to the level or extent of the other individual's intoxication or impairment, the prudent course of action is to forgo or cease any sexual contact or activity.

*Being intoxicated or impaired by drugs or alcohol is never an excuse for sexual misconduct and does not diminish one's responsibility to obtain affirmative consent.*

See **Appendix E** for the Student Alcohol and Drug Use Amnesty Policy.

## III.   BYSTANDER INTERVENTION

The University expects all members of the University community to take reasonable and prudent actions to prevent or stop an act of discrimination, harassment, or sexual misconduct, and provide assistance if an act has occurred. Taking action or providing assistance may include direct intervention, calling law enforcement, or seeking assistance from a person in authority.

If someone suspects a friend, acquaintance, or stranger may be in a high risk situation for becoming a victim, is being victimized, or has been victimized, it is important to decide as a bystander whether there is a safe and reasonable way to intervene effectively.

**Do's:**

- Remind friends that affirmative consent is required and it is the difference between sex and sexual assault and that someone can be too intoxicated to consent.
- Take the initiative to help friends who aren't thinking clearly from becoming targets of violence (or) take steps to stop a friend who chooses to use violence.
- When possible, prevent an intoxicated friend/person from going to a private location with an acquaintance or friend.
- Contact the Security Department, the Title IX Coordinator or a Deputy Title IX Coordinator, or another person of authority who can assist.

**Don'ts:**

- Let friends engage in activities, such as excessive alcohol/drug consumption, that impedes judgement and that therefore could lead to actions, including sexual advances, that are unwelcome and/or endanger the rights, safety, and well-being of others.
- Let friends walk/run alone in secluded areas or at night.
- Leave a friend or acquaintance alone at a party.
- Leave residence hall doors unlocked.
- Let friends drink to the point of impairment.
- Place yourself in a vulnerable situation where you are unable to voice consent.

## IV.   FREE SPEECH & ACADEMIC FREEDOM

This Policy is intended to protect covered persons from discrimination, harassment and sexual misconduct, not to regulate protected speech. The University welcomes robust classroom and campus discussions about sensitive and difficult topics impacting its community and the world, and is further committed to the religious values and principles taught by the Torah and Jewish thought. However, freedom of speech and academic freedom are not limitless and do not protect speech or expressive conduct that violates this Policy or otherwise violates federal, state or local anti-discrimination laws.

## V.   TITLE IX COORDINATOR

Title IX prohibits discrimination on the basis of sex in education program and activities in the United States. Sexual harassment and sexual assault are forms of sex discrimination prohibited by Title IX. The University has designated an employee to coordinate its efforts to comply with and carry out its responsibilities under Title IX. This employee is called the Title IX Coordinator and is responsible for ensuring Title IX compliance at the University, as well as compliance with this Policy. The Title IX Coordinator is responsible for the effective implementation of supportive measures. (See **Section VI.**) At the conclusion of a grievance process, the Title IX Coordinator is also responsible for effective implementation of any remedies.

The Title IX Coordinator for the University is currently **Dr. Chaim Nissel**, who also serves the function of Vice Provost of Student Affairs. The Title IX Coordinator is responsible for ensuring the prompt and equitable resolution of all Title IX complaints and other complaints under this Policy, identifying and addressing any patterns of systemic problems that are found based on review of such complaints or otherwise, and providing education and training about this Policy to the University community. Dr. Nissel can be reached at (646) 592-4201 or via email at drnissel@yu.edu. His office is located on the Wilf Campus, 2501 Amsterdam Avenue - Rubin Hall 110, New York, New York 10033. In the event of Dr. Nissel's absence (or in the event of a conflict of interest), his duties will be carried out by the following Deputy Title IX Coordinators:

Deputy Title IX Coordinator -- Human Resources

Ms. Renee Coker, Senior Director, Talent Management
Yeshiva University – Human Resources - Wilf Campus, BH 806
2495 Amsterdam Avenue, New York, New York 10033
(646) 592-4336 / renee.coker@yu.edu

Deputy Title IX Coordinator – Athletics

Mr. Joe Bednarsh, Athletic Director
Yeshiva University – Wilf Campus, Rubin Hall Suite 104

2501 Amsterdam Avenue, New York, New York 10033
(212) 960-0015 / joe.bednarsh@yu.edu

Deputy Title IX Coordinator – Cardozo

Ms. Jenn Kim, Dean of Students
Associate Dean of Student Services & Advising
Benjamin N. Cardozo School of Law
55 Fifth Avenue, Room 1000, New York, New York 10003
(212) 790-0429 / jennifer.kim@yu.edu

In addition to the Title IX Coordinator or a Deputy Title IX Coordinator, inquiries regarding Title IX may be directed to the United States Department of Education's Office of Civil Rights ("*OCR*"). This agency may be contacted as follows:

**United States Department of Education, Office for Civil Rights**
Region 2 – New York
Jacob Javits Federal Building
26 Federal Plaza - Suite 3312
New York, NY 10278
Voice Phone: (800) 368-1019
Fax: (212) 264-3039
TDD: (800) 537-7697

**U. S. Equal Employment Opportunity Commission - New York District Office**
33 Whitehall Street, 5th Floor
New York, NY 10004
(800) 669-4000
TYY: (800) 669-6820
Fax: (212) 336-3790

## VI. SUPPORTIVE MEASURES

The Title IX Coordinator is responsible for the effective implementation of supportive measures. Supportive measures are non-disciplinary, non-punitive, individualized services offered as appropriate, as reasonably available, and without fee or charge to the alleged victim, the reporting individual (if different than the alleged victim), the respondent (i.e., the person against whom a report has been filed), and all third party witnesses at any point. Supportive measures may include counseling, extensions of deadlines or other course-related adjustments, modifications of work or class schedules, campus escort services, mutual restrictions on contact (i.e., "no contact" orders), changes in work or housing locations, leaves of absence, increased security and monitoring of certain areas of the campus, and other similar measures. The Title IX Coordinator will consider the individual's wishes with respect to implementing supportive measures, and will notify individuals of the availability of supportive measures with or without filing a formal complaint.

Intentional and/or continued violations of a University-issued "no contact" order is a violation of this Policy and may result in additional misconduct charges and additional disciplinary sanctions, up to and including suspension and expulsion for students, or termination of employment for employees.

Nothing in this Section should be construed to limit the steps that the University may take on its own initiative to protect the safety of its community.

## VII.   REPORTING PROCEDURES & GUIDELINES

Anyone (whether the victim or anyone else) who has knowledge of a suspected violation of this Policy may notify the University by contacting any of the following:

1) Title IX Coordinator:
   Dr. Chaim Nissel - (646) 592-4201 - drnissel@yu.edu
   http://yu.edu/student-life/contact-us/

   Deputy Title IX Coordinators:
   (Human Resources) Ms. Renee Coker - (646) 592-4336 – renee.coker@yu.edu
   (Athletics) Mr. Joe Bednarsh - (212) 960-0015 - joe.bednarsh@yu.edu
   (Cardozo) Ms. Jenn Kim - (212) 790-0429 – jennifer.kim@yu.edu

2) Security Department:
   http://yu.edu/safety-security/
   Beren Campus Security Department – (917) 326-4885 - security@yu.edu
   Cardozo School of Law Security Department – (212) 790-0303 – security@yu.edu
   Wilf Campus Security Department – (212) 960-5221 – security@yu.edu

3) Dean of Students:
   http://yu.edu/student-life/contact-us/
   Dr. Chaim Nissel – (646) 592-4201 - drnissel@yu.edu

   http://cardozo.yu.edu/ossa (Cardozo Campus)
   Ms. Jenn Kim – (212) 790-0429 - jennifer.kim@yu.edu

4) A member of the Unlawful Harassment Panel:
   http://yu.edu/hr/harass-panel/

5) Office of Human Resources:
   http://yu.edu/hr/
   (646) 592-4335

6) Office of the General Counsel:
   http://yu.edu/ogc/
   (646) 592-4400

7) The University's Confidential Compliance Hotline at (866) 447-5052 or via the web at
   https://www.integrity-helpline.com/yu.jsp.

In addition to those listed above, suspected violations of this Policy may be reported to other University personnel identified by the University as "campus security authorities" in the Annual Security Reports it publishes in compliance with the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act (the "*Clery Act*"), including:

- Undergraduate Office of Student Life (http://yu.edu/osl)
  Beren Campus – (646) 592-4125 / Wilf Campus – (212) 960-5411

- Cardozo Office of Student Services and Advising (http://cardozo.yu.edu/ossa)
  (212) 790-0429

- Undergraduate Office of University Housing and Residence Life
  Beren Campus - (646) 592-4163 - http://yu.edu/student-life/housing/women/
  Wilf Campus – (646) 592-4215 - http://yu.edu/student-life/housing/men/

If any of these aforementioned people, other than the Title IX Coordinator, is first notified of a complaint, that person must promptly inform the Title IX Coordinator of the suspected violation of the Policy. If the complaint involves an allegation of sexual misconduct, the Title IX Coordinator will promptly inform the Office of the General Counsel of such complaint. There is no time limit on when a report or complaint pursuant to this Policy can be made to the University, however, the University's ability to investigate and respond may be affected by any time delay in reporting. Therefore, the University strongly encourages victims to file complaints promptly. Prompt reporting will serve to enhance the University's ability to investigate effectively and to preserve important evidence for future proceedings, including, for example, legal and disciplinary proceedings.

**Students and employee-victims have the right (i) to make a report to the University's Security Department, local law enforcement and/or State Police or choose not to report; (ii) to report the incident to the University; (iii) to be protected by the University from retaliation for reporting an incident (or testifying or assisting in a proceeding); and (iv) to receive assistance and resources from the University.**

In the case of an anonymous report, such report will be investigated to the extent possible, however, all anonymous reporters should be aware that reporting anonymously may affect the University's ability to investigate and respond effectively.

No University employee may discourage an individual from reporting misconduct covered by this Policy. Any University employee with any knowledge, whether from firsthand observation, having been confided in or having heard about it in some other fashion, of a violation of this Policy *must* report the incident to the Title IX Coordinator or a Deputy Title IX Coordinator, the Security Department, the Dean of Students, a member of the Unlawful Harassment Panel, the Office of Human Resources or the Office of the General Counsel (who in turn must inform the Title IX Coordinator if he/she is not first notified), even if the actual victim of such discrimination or harassment is not interested in filing a formal complaint. In addition to being subject to discipline if they have violated this Policy themselves, supervisors and managers will be subject to discipline for failing to report suspected sexual harassment or otherwise knowingly allowing sexual harassment to continue. Certain University employees who are serving in a privileged professional capacity as defined by applicable New York State Law (such as a professional mental-health counselor) are not so obligated to report. No University employee is authorized to investigate or resolve a suspected violation of this Policy without the involvement of the Title IX Coordinator.

See **Section XXIII** for information regarding confidential support services. See **Appendix E** for the Student Alcohol and Drug Use Amnesty Policy. See **Appendix H** for the Employee Complaint Form For Reporting Sexual Harassment which can also be found online at: http://yu.edu/hr/policies/.

Complaints also may be made to the U.S. Department of Health and Human Services, Office for Civil Rights. See **Section V** for contact information.

**Filing Complaints with Law Enforcement**

Anyone who has been the victim of sexual violence, stalking, domestic violence, dating violence, or any other crime may (but is not required to) initiate a complaint with the local police department as well as with the University. Should an individual decide to file a complaint with the police, the University will support such individual in doing so. Regardless of whether such person wants to make a complaint to either the University or the local police, he/she should promptly seek medical attention both to address his/her own health and to preserve potential evidence should he/she later decide to file charges or obtain a protective order. The University can help guide a victim through the process of obtaining a judicial order of protection and/or University-issued "no contact" order.

The University system and police/legal system work independently from one another. Because the standards for finding a violation of criminal law are different from the standards in this Policy, criminal investigations or reports are not determinative of whether or not misconduct under this Policy has occurred. The University will cooperate with police investigations, but will not delay its investigation of a complaint in the absence of extenuating circumstances and will conduct its investigation simultaneously with any police/legal system investigation.

The University's first and foremost concern for anyone who has been the victim of an incident of sexual violence, stalking, domestic violence, dating violence, or any other crime is their physical safety. Thus, if anyone who has been a victim of such unlawful behavior is feeling physically unsafe, he/she should immediately call the Security Department, the local police precinct or 911 for assistance.

> **Security Department**
> Beren Campus Security Department - (917) 326-4885
> 24-Hour Hotline: 1-888-STERN YU (1-888-783-7698)
> Cardozo School of Law Security Department - (212) 790-0303 or (212) 790-0308
> Wilf Campus Security Department - (212) 960-5221
> 24-Hour Hotline: 212.960.5200 (in-house Ext. 200)
> 1-888-YU SAFTY (1-888-987-2389)

> **Police Precincts**
> Beren Campus - 17th Precinct (212) 826-3211 or Midtown South Precinct (212) 239-9811
> Cardozo Campus - 6th Precinct (212) 741-4811
> Wilf Campus - 34th Precinct (212) 927-9711

In addition, if such person is in need of **immediate medical treatment**, he/she should go to the nearest hospital emergency room, or call 911 or Hatzalah Volunteer Ambulance Corps at (212) 230-1000. The University is well aware of the emotional trauma often suffered by a victim of sexual violence, and therefore it has designated trained counselors in its Counseling Center to serve as sexual assault coordinators for the University. They can be reached by calling (646) 592-4210 (Beren/Cardozo Campus) or (646) 592-4200 (Wilf Campus) (or emailing counseling@yu.edu) and asking for a sexual assault coordinator. These counselors can offer advice and support on a confidential basis as the victim begins to make choices regarding how to proceed post-assault. There are also many outside sources of support available to victims in these circumstances, including The NYC Alliance Against Sexual Assault (on-line at www.svfreenyc.org), which has compiled numerous resources available to victims, and the SOVRI (Support for Orthodox Victims of Rape and Incest) Hotline at Beth Israel Medical Center, (888) 613-1613. The latter is a confidential (no caller-ID is used) hotline that may be called anonymously for information and support. (For additional resources, see **Section XXIII**.)

## VIII.  GUIDING PRINCIPLES

The University will address all complaints according to the following guiding principles, which are intended to protect the rights of all individuals:

1) Every effort will be made, consistent with the need to discharge the University's responsibilities and protect the safety of the University community, to respect the wishes of the alleged victim regarding further investigation. A complaint will not be pursued without the victim's consent, unless the University is obligated to do so or, in its judgment, the allegations are serious enough to warrant further action (see **Section XI**).

2) Victims are strongly encouraged to file a complaint promptly after the alleged incident because as time goes by, an investigation becomes more difficult. Memories may become unreliable, and information and witnesses may become unavailable. Promptness in filing complaints is therefore strongly encouraged, as it may be essential for a thorough and fair resolution.

3) Those accused of misconduct are presumed not responsible until all relevant evidence has been considered and a determination of responsibility has been made through the grievance process.

4) Any attempt to retaliate against or penalize a victim or any other person who reports or participates in the resolution of an incident is strictly prohibited, and any party found to have engaged in retaliation will be subjected to discipline (see **Section XVII**).

5) Any attempt to retaliate against any person who complains of sexual harassment or testifies or assists in any proceeding related to complaint of sexual harassment is strictly prohibited, and any party found to have engaged in retaliation will be subjected to discipline (see **Section XVII**).

The University will respond to all reported complaints promptly, thoroughly, fairly and impartially. The alleged victim and the respondent will also be afforded the rights set forth in this Policy.

Following a report of an incident to the Title IX Coordinator, the Title IX Coordinator will promptly contact the victim to discuss the availability of supportive measures and to explain the process for filing a formal complaint. The Title IX Coordinator will also explain the informal resolution process and its availability to the victim.

Both the respondent or the alleged victim and the reporting individual shall, upon request to the Title IX Coordinator, be afforded a prompt review (reasonable under the circumstances) of the need for and terms of any mutual no-contact order or other supportive measures that directly affects him or her (including potential modification), and shall be allowed to submit evidence in support of his or her request.

## IX.  INVESTIGATION OF REPORTED INCIDENTS

Upon receipt of a complaint involving Title IX Sexual Harassment, Other Sexual Misconduct, or any other violation of this Policy, or upon receiving information which the University determines on its own warrants further investigation (even if no complaint is filed, or even if a complaint is filed and later withdrawn), a fair and impartial investigation will commence in accordance with the procedures set forth in this Policy. The University will provide written notice to the complainant and respondent that includes: information about the grievance processes available (formal and informal), sufficient details of the allegations, a statement that the respondent is presumed not responsible and that any responsibility will be determined at the conclusion of the process, and a statement that making false statements or submitting false information during the grievance process is prohibited. In addition, the parties will be notified of such additional information as required by the applicable Appendix B or C. Should the University decide to investigate additional allegations that arise during the course of an investigation, the complainant and respondent will be notified of those allegations as well. In all cases, the complainant

16

and respondent will be provided with an equal opportunity to present witnesses (fact and expert), as well as other inculpatory and exculpatory evidence.

A detailed explanation of the investigative process, as well as the adjudication process, is set out in **Appendix A**, Informal Resolution; **Appendix B**, Formal Resolution of Complaints Involving Title IX Sexual Harassment, Including Sexual Abuse/Assault, Stalking, Domestic Violence and Dating Violence; and **Appendix C**, Formal Resolution of Complaints Not Involving Title IX Sexual Harassment.

The University expects all members of the University community to cooperate with investigations. However, in no event will an alleged victim or respondent be compelled to participate in the investigation.

## X.   REQUEST BY COMPLAINANT NOT TO PURSUE INVESTIGATION

A complainant may decide after filing a complaint that he/she does not want to have the University pursue an investigation. Complainants and others should understand that compliance with such a request may limit the University's ability to take action in response to the complaint. In such a situation, the University will evaluate the request in the context of the University's responsibility to provide a safe, non-discriminatory, and harassment-free environment. In evaluating such a request, the University will consider several factors, including the seriousness of the alleged misconduct, the complainant's age, whether a weapon or force was involved, the parties involved, whether there have been other complaints of misconduct against the respondent, and the applicability of laws mandating an investigation or other action. See **Section XXIII** for information regarding confidential support services.

## XI.   RECORDS

The Title IX Coordinator will maintain, for at least seven years, records of all reports and complaints (both formal and informal), investigations, findings (including the basis for those findings), and if applicable, hearings, any recordings of hearing, any disciplinary sanctions imposed on respondent, and appeals. The Title IX Coordinator will similarly maintain, for at least seven years, records of any remedies provided to restore or preserve equal access to the University's education programs and activities, any actions (including supportive measures) taken in response to a report, and all training material described in **Section XXI**.[2]

Promptly following the final resolution of a complaint, the Title IX Coordinator will provide a copy of these records to the Office of the General Counsel. All of these records will be kept on file in accordance with the University's records and retention policy (but in any event for at least seven years from final resolution of the complaint).

The Title IX Coordinator will inform the applicable Registrar if any transcript notations are required (see **Appendix B** and **Appendix C**).

## XII.   INFORMAL RESOLUTION AND UNLAWFUL HARASSMENT PANEL

Members of the University community may seek advice from the Title IX Coordinator, a Deputy Title IX Coordinator or the Unlawful Harassment Panel on alternative methods of resolving disputes or perceived acts of discrimination/harassment.

### Unlawful Harassment Panel

The Unlawful Harassment Panel (http://yu.edu/hr/harass-panel/) is charged with providing advice and access to resources about possible courses of action in respect of an allegation of discrimination or

---

[2]     The University will similarly maintain records of supportive measures not provided and reasons why that response was not clearly unreasonable.

harassment (e.g., referral for any member of the University community who is concerned because of behavior that he/she perceives as discrimination or harassment). If a complainant wishes to pursue an informal resolution to a complaint, a Panel Member can provide a non-adversarial setting in which the problem can be addressed as appropriate, including confidential counseling. In the course of such action, the Panel Member may also assist by clarifying misunderstandings, and helping to assure that conflicts do not recur. Also, when appropriate and acceptable to both parties, certain complaints may be suitable for referral to mediation in order to explore the possibilities of a resolution.

The Panel consists of members of the University community, designated by the President from time to time. These appointments will be guided by considerations of continuity, experience and sensitivity to the concerns presented. A list of the present members can be found at: http://yu.edu/hr/harass-panel/.

### Informal Resolution of Complaints Involving Title IX Sexual Harassment

For reports of Title IX Sexual Harassment, the University cannot offer informal resolution unless a formal complaint is filed.

At any time prior to reaching a determination regarding responsibility, the University may facilitate an informal resolution process, such as mediation, that does not involve a full investigation and adjudication. The University must first provide the parties with written notice disclosing the allegations, the requirements of the informal resolution process (including under what circumstances it precludes parties from resuming a formal complaint on the same allegations – and the fact that, at any time prior to agreeing to a resolution, any party can withdraw from informal resolution and resume the process as a formal complaint), and any consequences resulting from participating in an informal resolution process, including that records will be maintained or could be shared.

The University cannot require parties to participate in an informal resolution process – and must obtain the parties' voluntary written consent to informally resolve complaints of Title IX Sexual Harassment.

The Title IX Coordinator has discretion to refuse a request for informal resolution where the allegations are so severe or complex as to render the informal resolution process an inappropriate mechanism for resolution.

### Informal Resolution of Complaints Not Involving Title IX Sexual Harassment

For Other Sexual Misconduct and other complaints not involving Title IX Sexual Harassment, the informal resolution process is available to resolve incidents that may not be so serious that the University must intervene in a formal way and where the complainant (alleged victim or other person reporting the discrimination/harassment) does not wish to pursue a formal complaint but wants to end the discrimination/harassment. The manner in which an incident is handled will depend largely upon its severity or nature. Both parties must agree to participate in order to commence the informal resolution process. Either party may instead choose to engage in Formal Resolution procedures.

For more information about the Informal Resolution Process, please refer to **Appendix A.**

**Notwithstanding anything else contained herein, Informal Resolution is not available to resolve allegations of sexual assault, stalking, domestic violence or dating violence, nor is informal resolution available to resolve allegations that an employee sexually harassed a student.**

### XIII.  FORMAL RESOLUTION

Any individual who wishes to pursue the formal resolution process should file, in writing, a complaint with the Title IX Coordinator or a Deputy Title IX Coordinator, stating the nature of the alleged misconduct, the individual(s) accused and the relief requested. If the individual making the complaint withdraws it, no further action will be taken unless the University determines it is obligated to do so or

deems the allegations serious enough to warrant further action. The University, in its sole discretion, reserves the right to depart from the prescribed steps in order to effectively handle any and all complaints in accordance with applicable laws. The formal resolution process for complaints involving Title IX Sexual Harassment is set out in detail in **Appendix B.** The formal resolution process for complaints not involving Title IX Sexual Harassment is set out in detail in **Appendix C.**

## XIV.   THE APPEAL PROCESS

For all investigations into allegations of Title IX Sexual Harassment, both the complainant and respondent shall have the right to appeal the outcome of the investigation as more fully described in **Appendix B.**   For investigations involving Other Sexual Misconduct regarding sex/sex-based discrimination, sexual harassment, sexual abuse/assault, stalking, domestic violence and dating violence involving students, both parties shall have the right to appeal as more fully described in Appendix C.I., and for other investigations involving Other Sexual Misconduct where the respondent is a student, the student shall have the right to appeal the determination as more fully described in Appendix C.II. In all other cases, no party will have the right of appeal.

## XV.   CONFIDENTIALITY DURING AN INVESTIGATION

Information gathered during the informal or formal investigation process will be handled by the University with due diligence and care. Discreet inquiry, corrective counseling, and trust will be stressed by the University in dealing with all complaints. Records and information concerning complaints will be kept confidential to the greatest extent possible, and the University will comply with all applicable laws in maintaining the confidentiality of the investigation. However, subject to applicable laws, the University cannot guarantee complete confidentiality where it would conflict with the University's obligations to ensure a safe, non-discriminatory and harassment-free environment. For example, under conditions of potential imminent harm to the community, the University may be required by federal law to inform the community of the occurrence of an incident of sexual violence (but would not identify the victim). In addition, consistent with law, information regarding violations of this Policy may be shared among University personnel as appropriate and necessary.

### Complainant Request for Confidentiality

Under the formal resolution process for complaints involving Title IX Sexual Harassment, a complainant cannot remain anonymous or prevent his or her identity from being disclosed to the respondent. In all other circumstances, when someone reporting misconduct requests that their name be kept confidential, the Title IX Coordinator or the Deputy Title IX Coordinator will evaluate the request in consultation with the Office of the General Counsel. The Title IX Coordinator will advise the person reporting misconduct that granting the request may limit the University's ability to respond fully to the matter, including pursuing disciplinary action against the person accused of misconduct. Nevertheless, in most instances, the University will attempt to comply with requests for confidentiality unless doing so would impede its ability to provide a safe and nondiscriminatory environment.

In all instances, the University will endeavor to maintain the complainant's and the respondent's privacy and reveal the parties' identities only to those individuals who need to know it in order for an investigation to commence or continue (as applicable) and the matter to be adjudicated.

**Even University offices and employees who cannot guarantee confidentiality will maintain the complainant's privacy to the greatest extent possible. The information the complainant provides to a non-confidential resource will be relayed only as necessary for the Title IX Coordinator or Deputy Title IX Coordinator (or designated investigator) to investigate and/or seek a resolution.**

## XVI.  RETALIATION

This Policy prohibits retaliation against any individual who reports or complains of sexual harassment or other discrimination and/or participates in the investigation of a complaint or resolution of an incident, including those who testify or assist in any proceeding related to a complaint or incident, even if the complaint or incident is unsubstantiated.  Retaliation includes (i) threats, intimidation, reprisals, harassment, and/or any other adverse action threatened (expressed or implied) or taken against anyone who reports or complains of a violation or suspected violation of this Policy or who participates (including testifying or assisting) in an investigation of a complaint, or (ii) any other conduct that would discourage a reasonable person from engaging in activity protected under this Policy or would keep an individual from coming forward to make or support a complaint under this Policy. Retaliation may take place in person, over the telephone or through electronic or social media means, and it need not be job-related or occur on University premises. Regardless of how it manifests itself, retaliation is prohibited. Anyone who either observes or becomes aware of such retaliatory behavior is strongly encouraged to report it to the Title IX Coordinator or Deputy Title IX Coordinator, and all University employees are under a business duty to do so.  The Title IX Coordinator or Deputy Title IX Coordinator will review the facts and recommend the appropriate disciplinary action, up to and including suspension and expulsion for students, and termination of employment for employees.  Violations of this prohibition will be addressed through the procedures outlined in this Policy and/or other University disciplinary procedures, as the University deems appropriate.

Retaliation is unlawful under federal, state, and (where applicable) local law. The New York State Human Rights Law protects any individual who has engaged in "protected activity." Protected activity occurs when a person has: (i) filed a complaint of sexual harassment, either internally or with any anti-discrimination agency; (ii) testified or assisted in a proceeding involving sexual harassment under the Human Rights Law or other anti-discrimination law; (iii) opposed sexual harassment by making a verbal or informal complaint to management, or by simply informing a supervisor or manager of harassment; (iv) complained that another employee has been sexually harassed; or (v) encouraged a fellow employee to report harassment.  Any University employee or non-employee working at the University who believes they have been a victim of retaliation may also seek compensation in other available forums (for additional information, see **Section XXIV**).

## XVII.  KNOWING FALSE CLAIMS OR INFORMATION

The University considers any allegation of discrimination, harassment or sexual misconduct a serious matter and encourages individuals to report all incidents to the University.  All good faith reports will be treated seriously.  Any individual who *knowingly* files a false claim, or who *knowingly* provides false information during an investigation or proceeding, may be subject to appropriate disciplinary action, up to and including suspension and expulsion for students, and termination of employment for employees.

## XVIII. TIME LIMITS

The University will exercise due diligence in complying with the stated time limits set forth in this Policy. However, stated time limits may be extended depending on the nature of the allegations, the time of year, and any other unforeseen or extenuating circumstance. Any party may request an extension of any deadline by submitting a written request to the Title IX Coordinator, Deputy Title IX Coordinator, Investigator, or other relevant person(s) detailing the reason for such request and the amount of additional time requested. The person to whom the request is submitted has the discretion to grant or deny any such request.

## XIX.   REMEDIES AND SANCTIONS

If the University determines that an individual has engaged in an act of Title IX Sexual Harassment or Other Sexual Misconduct, sanctions which may be imposed by the University include suspension or expulsion for students, and termination of employment for employees.

In addition to any disciplinary action, the University may take action to eliminate a hostile environment created by discrimination, Title IX Sexual Harassment, or Other Sexual Misconduct; to prevent the recurrence of the discrimination, harassment or sexual misconduct; and to address the effects of the discrimination, harassment or sexual misconduct on the parties involved, the witnesses and the University community, as appropriate. Such efforts may include additional training and awareness programs for the University community.

More information about possible sanctions can be found in **Appendix B**, Formal Resolution of Complaints Involving Title IX Sexual Harassment and **Appendix C**, Formal Resolution of Complaints Not Involving Title IX Sexual Harassment.

## XX.   EDUCATION/TRAINING

**University Community.** As part of the University's commitment to providing a safe, non-discriminatory and harassment-free environment, this Policy shall be disseminated widely to the University community through publications, websites, student orientations, new employee orientations, current employee training, and other appropriate channels of communication. The University also provides training programs for University employees and students to promote awareness and a safe and respectful University environment.

**Those Involved in Investigations.** The Title IX Coordinator, Deputy Title IX Coordinator, Investigators, Decision-Makers, University administrators rendering decisions on sanctions and appeal, and any person who facilitates an informal resolution process will receive training on the definition of Title IX Sexual Harassment, the scope of the University's education program or activity, how to conduct an investigation and grievance process including hearings, appeals, and informal resolution processes (as applicable), and how to serve impartially, including by avoiding prejudgment of the facts at issue, conflicts of interest, and bias.[3] In addition, decision-makers will receive training on any technology to be used at a live hearing and on issues of relevance of questions and evidence, including when questions and evidence about the Complainant's sexual predisposition or prior sexual behavior are not relevant. Investigators will receive training on issues of relevance as it relates to drafting an investigative report that fairly summarizes relevant evidence.

---

[3]     The University will make materials used to train these individuals publicly available on its website.

## XXI. RE-EVALUATION

The University reserves the right to modify and/or amend any or all of the terms and/or procedures outlined herein at any time, in its sole discretion. In the event the University determines that circumstances warrant modification or amendment of this Policy, timely notice of the same will be communicated to all affected parties. This Policy is made available to the entire faculty, staff, and student body of Yeshiva University, as well as all interested others, and can be accessed at http://yu.edu/hr/policies/; http://yu.edu/student-life/resources-and-services/standards-policies/; and http://cardozo.yu.edu/current-students/office-student-services-and-advising/policies or can be obtained from the Title IX Coordinator, a Deputy Title IX Coordinator, the Office of Human Resources, the Office of the General Counsel, the Undergraduate Office of Student Life, and the Cardozo Office of Student Services and Advising.

## XXII. SUPPORT RESOURCES (Confidential and Non-Confidential Support)

### Confidential University Resources

A report made to the following University resources will not trigger an investigation by the University:

- **University Counseling Centers** - http://www.yu.edu/student-life/counseling/
  Beren/Cardozo Campus Counseling Center
  215 Lexington Ave, Suite 1303 (13th floor)
  (646) 592-4210
  counseling@yu.edu

  Wilf Campus Counseling Center
  500 West 185th Street, FH 520
  (646) 592-4200
  counseling@yu.edu

  Counselors at these centers can offer advice and support on a confidential basis as the victim begins to make choices regarding how to proceed post-assault.

### Non-Confidential University Resources

A report also may be made to the University's Title IX Coordinator or a Deputy Title IX Coordinator, Security Department, Dean of Students, or other "campus security authorities" (See **Section V** and **Section VII**), however reports to these resources will trigger a review by the University in accordance with this Policy.

### Confidential Resources not affiliated with University

There are also many outside sources of support available to victims. Reporting to one of these resources will not trigger an investigation by the University.

- **SOVRI (Support for Orthodox Victims of Rape and Incest)** Hotline at Beth Israel Medical Center, (888) 613-1613. This is a confidential (no caller-ID is used) hotline that may be called anonymously for information and support.

### Other Resources not affiliated with the University

- **The NYC Alliance Against Sexual Assault** (on-line at www.svfreenyc.org) has compiled numerous resources available to victims.

- **Manhattan Family Justice Center can provide a wide range of services and support.**
  The Manhattan location is at 80 Centre Street, New York, NY 10013; **Phone:** (212)
  602-2800; https://www1.nyc.gov/site/ocdv/programs/family-justice-centers.page.

- **Family Court Volunteer Lawyer Program** (part of the New York State Access to
  Justice Program)
  900 Sheridan Avenue
  Bronx, NY 10451
  Phone: (718) 618-2150
  Hotline: (718) 618-2150

- **Safe Horizon (NYC)**
  2 Lafayette Street, 3rd Floor
  New York, NY 10007
  Phone: (212) 227-3000
  http://www.safehorizon.org/
  help@safehorizon.org
  Hotline: (866) 689-4357

**Immigration & Visa Assistance Services for Victims of Sexual & Interpersonal Violence**

- Non-Confidential University Resource

  **Yeshiva University Office of International Students and Scholars**
  500 West 185th Street, Furst Hall, Room 413
  New York, NY 10033
  (646) 592-4203
  oiss@yu.edu

- Other Resources not affiliated with the University

  **U.S. Citizenship and Immigration Services (USCIS)**
  http://www.uscis.gov/citizenship/learners/find-help-your-community
  **USCIS Find Legal Services Webpage**
  http://www.uscis.gov/avoid-scams/find-legal-services

  **Board of Immigration Appeals (BIA)** (Listing of attorneys by state who provide
  immigration services either for free or for little cost)
  http://www.justice.gov/eoir/probono/states.htm

  **American Immigration Lawyers Association (AILA)**
  **Immigration Lawyer Referral Service**
  http://www.ailalawyer.org/

  **American Bar Association (ABA)**
  (Information on finding legal services by state)
  http://apps.americanbar.org/legalservices/findlegalhelp/home.cfm

**Sexual Assault Forensic Examinations (SAFE)**

The University has a Memorandum of Understanding (MOU) with **Mount Sinai Beth Israel - Petrie Division** (Manhattan) located at First Avenue at 16th Street, New York, NY 10003 (main phone: (212) 420-2000) regarding services to sexual assault victims. The Petrie Division has a Sexual Assault Forensic Examiner Program, and is a designated SAFE Center of Excellence. Emergency care and support is available 24 hours/7 days a week, and a Victim Service Program social worker or volunteer advocate is on call at all times.

## XXIII. LEGAL PROTECTIONS AND EXTERNAL REMEDIES

Sexual harassment in the employment context is not only prohibited by the University but is also prohibited by state, federal, and, where applicable, local law.

Aside from the internal process at the University, employees may also choose to pursue legal remedies with the following governmental entities at any time.

### New York State Division of Human Rights (DHR)

The Human Rights Law (HRL), codified as N.Y. Executive Law, art. 15, § 290 et seq., applies to employers in New York State with regard to sexual harassment, and protects employees, paid or unpaid interns, and non-employees regardless of immigration status. A complaint alleging violation of the Human Rights Law may be filed either with DHR or in New York State Supreme Court.

Complaints with DHR may be filed any time within one year of the harassment. If an individual did not file at DHR, they can sue directly in state court under the HRL, within three years of the alleged discrimination. An individual may not file with DHR if they have already filed a HRL complaint in state court.

Complaining internally to the University does not extend your time to file with DHR or in court. The one year or three years is counted from date of the most recent incident of harassment.

You do not need an attorney to file a complaint with DHR, and there is no cost to file with DHR.

DHR will investigate your complaint and determine whether there is probable cause to believe that discrimination has occurred. Probable cause cases are forwarded to a public hearing before an administrative law judge. If discrimination is found after a hearing, DHR has the power to award relief, which varies but may include requiring your employer to take action to stop the harassment, or redress the damage caused, including paying monetary damages, attorney's fees and civil fines.

Adoption of this Policy does not constitute a conclusive defense to charges of unlawful sexual harassment. Each claim of sexual harassment will be determined in accordance with existing legal standards, with due consideration of the particular facts and circumstances of the claim, including but not limited to the existence of an effective anti-harassment policy and procedure.

DHR's main office contact information is: NYS Division of Human Rights, One Fordham Plaza, Fourth Floor, Bronx, New York 10458, (718) 741-8400, www.dhr.ny.gov

Contact DHR at (888) 392-3644 or visit dhr.ny.gov/complaint for more information about filing a complaint. The website has a complaint form that can be downloaded, filled out, notarized and mailed to DHR. The website also contains contact information for DHR's regional offices across New York State.

## United States Equal Employment Opportunity Commission (EEOC)

The EEOC enforces federal anti-discrimination laws, including Title VII of the 1964 federal Civil Rights Act (codified as 42 U.S.C. § 2000e et seq.). An individual can file a complaint with the EEOC anytime within 300 days from the harassment. There is no cost to file a complaint with the EEOC. The EEOC will investigate the complaint, and determine whether there is reasonable cause to believe that discrimination has occurred, at which point the EEOC will issue a Right to Sue letter permitting the individual to file a complaint in federal court.

The EEOC does not hold hearings or award relief, but may take other action including pursuing cases in federal court on behalf of complaining parties. Federal courts may award remedies if discrimination is found to have occurred.

If an employee believes that he/she has been discriminated against at work, he/she can file a "Charge of Discrimination." The EEOC has district, area, and field offices where complaints can be filed. Contact the EEOC by calling 1-800-669-4000 (1-800-669-6820 (TTY)), visiting their website at www.eeoc.gov or via email at info@eeoc.gov.

If an individual filed an administrative complaint with DHR, DHR will file the complaint with the EEOC to preserve the right to proceed in federal court.

## Local Protections

Many localities enforce laws protecting individuals from sexual harassment and discrimination. An individual should contact the county, city or town in which they live to find out if such a law exists. For example, employees who work in New York City may file complaints of sexual harassment with the New York City Commission on Human Rights. Contact their main office at Law Enforcement Bureau of the NYC Commission on Human Rights, 40 Rector Street, 10th Floor, New York, New York; call 311 or (212) 306-7450; or visit www.nyc.gov/html/cchr/html/home/home.shtml

## Contact the Local Police Department

If the harassment involves physical touching, coerced physical confinement or coerced sex acts, the conduct may constitute a crime. Contact the local police department.

**Updated December 31, 2020**

Appendix A

## Informal Resolution

### I. INFORMAL RESOLUTION OF MATTERS INVOLVING TITLE IX SEXUAL HARASSMENT

For reports of Title IX Sexual Harassment, the University cannot offer informal resolution unless a formal complaint is filed. At any time prior to reaching a determination regarding responsibility, the University may facilitate an informal resolution process, such as mediation, that does not involve a full investigation and adjudication. To do so, the University must first provide the parties with written notice disclosing the allegations, the requirements of the informal resolution process (including under what circumstances it precludes parties from resuming a formal complaint on the same allegations – and the fact that, at any time prior to agreeing to a resolution, any party can withdraw from informal resolution and resume the process as a formal complaint) (see **Appendix B**, Formal Resolution of Complaints Involving Title IX Sexual Harassment), and any consequences resulting from participating in an informal resolution process, including that records will be maintained or could be shared.

The University cannot require parties to participate in an informal resolution process, and must obtain the parties' voluntary written consent to informally resolve complaints of Title IX Sexual Harassment. **Notwithstanding anything else contained herein, Informal Resolution is not available to resolve allegations of sexual assault, stalking, domestic violence or dating violence, nor is informal resolution available to resolve allegations that an employee sexually harassed a student.**

Additionally, the Title IX Coordinator has discretion to refuse a request for informal resolution where the allegations are so severe or complex as to render the informal resolution process an inappropriate mechanism for resolution.

As part of the informal resolution process, the Title IX Coordinator, Deputy Title IX Coordinator or Unlawful Harassment Panel Member(s) may recommend or, with the continued mutual consent of all parties, facilitate an informal means of addressing the issues raised in a complaint made pursuant to this Policy, including but not limited to:

1) An informal direct discussion between the complainant and the respondent in the presence of the Title IX Coordinator, Deputy Title IX Coordinator or a Panel Member(s);

2) Requesting additional education for the area or department where the complaint originated; or

3) Commencing mediation of the complaint. The complainant and the respondent must agree to mediation if mediation is to go forward. **Mediation is optional.** The mediator will be designated by the Title IX Coordinator or Deputy Title IX Coordinator within 10 days after the parties' agreement to participate in mediation. The mediator will contact the parties to set the date, time, and location of the mediation session(s). Only the mediator and the parties will be participants in the mediation session(s), except as provided below. During the mediation process, the mediator normally will: (i) ask the parties to give their versions of the incident, including both factual information and their feelings; (ii) identify key issues; (iii) seek the agreement of both parties on the issues; (iv) facilitate discussion; and (v) work with both parties to develop a written document that will include a statement of agreement. If either party is dissatisfied with the mediation process at any time prior to the signing of a mediation agreement, that party may request that the mediation process cease.

Where the parties reach mutual agreement through the informal resolution process – and the University determines that the agreement is acceptable – the agreement terms will be implemented and the matter will be deemed resolved and closed.

Where the parties do not reach mutual agreement, or where an agreement was reached but a party fails to comply with the terms, the Title IX Coordinator may refer the matter for investigation and formal resolution. At such time, any statements made or information offered by either party during the informal resolution process may be used or considered during the subsequent investigation and formal resolution.

If applicable, where a Unlawful Harassment Panel Member is unable or unwilling to participate in the informal resolution process, for example because of a conflict of interest, the Title IX Coordinator or Deputy Title IX Coordinator will select another Panel Member. In addition, at the reasonable request of a party to the complaint (for example, because of a conflict of interest), the Title IX Coordinator or Deputy Title IX Coordinator will select another Panel Member or mediator (as applicable). Where acceptable to both parties, the Panel Member(s) involved may request that an additional Panel Member(s) and/or the Title IX Coordinator or Deputy Title IX Coordinator be present for the discussions.

## II.   INFORMAL RESOLUTION OF MATTERS NOT INVOLVING TITLE IX SEXUAL HARASSMENT

The Title IX Coordinator, Deputy Title IX Coordinator or Unlawful Harassment Panel Member(s) may recommend or, with the continued mutual consent of all parties, facilitate an informal means of addressing the issues raised in a complaint made pursuant to this Policy, including but not limited to:

1) An informal direct discussion between the complainant and the respondent in the presence of the Title IX Coordinator, Deputy Title IX Coordinator or a Panel Member(s);

2) Requesting additional education for the area or department where the complaint originated; or

3) Commencing mediation of the complaint. The complainant and the respondent must agree to mediation if mediation is to go forward. **Mediation is optional.** The mediator will be designated by the Title IX Coordinator or Deputy Title IX Coordinator within 10 days after the parties' agreement to participate in mediation. The mediator will contact the parties to set the date, time, and location of the mediation session(s). Only the mediator and the parties will be participants in the mediation session(s), except as provided below. During the mediation process, the mediator normally will: (i) ask the parties to give their versions of the incident, including both factual information and their feelings; (ii) identify key issues; (iii) seek the agreement of both parties on the issues; (iv) facilitate discussion; and (v) work with both parties to develop a written document that will include a statement of agreement. If either party is dissatisfied with the mediation process at any time prior to the signing of a mediation agreement, that party may request that the mediation process cease.

The complainant may at any time replace his/her informal complaint with a formal complaint and thereby proceed with the formal resolution process (see **Appendix C**, Formal Resolution of Complaints Not Involving Title IX Sexual Harassment). Formal complaints must be made to the Title IX Coordinator or a Deputy Title IX Coordinator. Furthermore, the University reserves the right to conduct its own formal investigation into any complaint, whether formal or informal, where it determines the facts call for such an investigation.

The respondent may decline to participate in the informal process and may request that a formal complaint be filed. No negative inference may be drawn from such a request.

If applicable, where a Panel Member is unable or unwilling to undertake the review of a complaint, for example because of a conflict of interest, the Title IX Coordinator or Deputy Title IX Coordinator will select another Panel Member.

In addition, at the reasonable request of a party to the complaint (for example, because of a conflict of interest), the Title IX Coordinator or Deputy Title IX Coordinator will select another Panel Member or mediator (as applicable). Where acceptable to both parties, the Panel Member(s) involved may request that an additional Panel Member(s) and/or the Title IX Coordinator or Deputy Title IX Coordinator be present for the discussions.

**Informal Resolution is not available in cases of alleged sexual assault, stalking, domestic violence, or dating violence or to resolve allegations that an employee sexually harassed a student.**

Appendix B

## FORMAL RESOLUTION OF COMPLAINTS INVOLVING TITLE IX SEXUAL HARASSMENT, INCLUDING SEXUAL ABUSE/ASSAULT, STALKING, DOMESTIC VIOLENCE AND DATING VIOLENCE

### FILING THE COMPLAINT

To initiate a formal complaint, the complainant (the person who is alleged to have experienced conduct that could constitute Title IX Sexual Harassment) must file a formal, written, signed complaint with the Title IX Coordinator or Deputy Title IX Coordinator either in person, by e-mail, or by mail. (A physical or electronic signature, or such other method that indicates that the complainant is the person filing the formal complaint, is permitted.) At the time of filing, the complainant must be participating in, or attempting to participate in, the University's education programs or activities.

When warranted based on a review of available information, the Title IX Coordinator or Deputy Title IX Coordinator may initiate a formal complaint and ask the University to investigate – even where the complainant chooses not to participate in the investigation. In such circumstances, the Title IX Coordinator or Deputy Title IX Coordinator does not become the complainant or a "party."

### NOTICE OF ALLEGATIONS

Following a determination to pursue a formal resolution of a complaint involving Title IX Sexual Harassment received by the Title IX Coordinator or Deputy Title IX Coordinator, the Title IX Coordinator or Deputy Title IX Coordinator will provide all parties with:

1. A copy of these procedures (which may be via a link to these procedures on the University's website).

2. Notice of the alleged conduct, including the identities of the parties (if known), the date, time, location, nature of the alleged misconduct, factual allegations and reference to specific code violations and sanctions that may be imposed, and will provide the parties with adequate time to review this information prior to any initial interview.

3. A statement that the individual accused of misconduct (the respondent) is presumed not responsible and that a determination regarding responsibility will be made at the conclusion of the grievance process.

4. Information about each party's right to have an advisor of their choice - who may be an attorney - who can accompany them to any meeting or proceeding in connection with the grievance process, and information about the scope of the advisor's role.

5. Information that all parties will have equal opportunities to inspect and review evidence in the grievance process.

6. Information about University policies that prohibit knowingly making false statements or submitting false information during the grievance process; and

7. Information about the prohibition against retaliation.

## NOTICE OF ADDITIONAL ALLEGATIONS

If, during the course of the investigation, additional allegations of Title IX Sexual Harassment arise which were not included in the original notice of allegations, each party will receive an updated written notice with the additional allegations.

## DISMISSAL OF THE COMPLAINT

**Initial Evaluation of Complaint and Non-Merit-Based Threshold Dismissal.** Upon initial evaluation, if the Title IX Coordinator or that person's designee determines that the alleged conduct: (1) even if proven, would not constitute Title IX Sexual Harassment (as defined in this Policy); (2) did not occur in a University education program or activity; or (3) did not occur in the United States – then the University must dismiss the complaint with respect to that conduct. (Note: Where a complaint is dismissed under this section but the conduct alleged may violate other University policies, such as the prohibition against Other Sexual Misconduct, the Title IX Coordinator or that person's designee will refer the matter to the appropriate University office for resolution under the relevant procedure.)

**Permissive Dismissal of Formal Complaint.** If, during the grievance process, the complainant notifies the Title IX Coordinator or that person's designee that he/she would like to withdraw the formal complaint or any component of it, or if the respondent is no longer enrolled in, or employed by, the University, or if the University is prevented from gathering evidence that would allow it to reach a determination as to the allegations in the complaint, the Title IX Coordinator or that person's designee may dismiss the complaint.

**Notice and Appeal of Dismissal.** Where a complaint is dismissed, the Title IX Coordinator or that person's designee will notify both parties simultaneously in writing of the dismissal and the reason(s) for it. Any party may appeal the dismissal using the appeal procedures outlined in **Appendix B**.

## ADVISORS

Both the complainant and respondent may be accompanied by an advisor of their choice during any meeting or proceeding related to the formal complaint. That advisor may be, but is not required to be, an attorney. The advisor can be anyone, including a University faculty member, staff member, or student. The advisor may also be a friend, family member, or attorney who is not a member of the University community.

During the investigation portion of the formal complaint process, it is not required that the complainant or respondent have an advisor. If a party has an advisor at that time, the advisor will have the same opportunity as the party to inspect and review evidence and any written reports. During the investigation portion, an advisor may not speak on behalf of a party.

During the hearing portion of the formal complaint process, it is required that the complainant and respondent have an advisor. If a party does not have an advisor at that time, the University will select and provide an advisor at no fee or cost to the party. During the hearing, the advisor will have the opportunity to cross-examine the other party and any witnesses who participate in the hearing.

Apart from the advisor's role in conducting any cross-examination during the live hearing, an advisor may not speak on behalf of a party or otherwise participate in, or in any manner delay, disrupt or interfere with meetings and/or proceedings.

## THE INVESTIGATION

An investigator (who may be, but is not required to be, the Title IX Coordinator or a Deputy Title IX Coordinator) will promptly, fully, fairly and impartially investigate the complaint, and each party will have equitable opportunities to present witnesses, and review and present information and relevant inculpatory and exculpatory evidence.

The Investigator will seek to conclude the investigation as soon as practicable after receipt of the formal complaint. The Investigator will provide the parties with periodic status updates.

The Investigator is responsible for gathering information sufficient to reach a determination about the respondent's responsibility. The Investigator will review all information gathered or provided by the parties and will determine the appropriateness, relevance and probative value of the information developed or received during the investigation. Information about the complainant's sexual predisposition or prior sexual behavior are not relevant, unless such questions and evidence are offered to prove that someone other than the respondent committed the conduct alleged by the complainant, or if the questions and evidence concern specific incidents of the complainant's prior sexual behavior with respect to the respondent and are offered to prove consent.

The University will not restrict the parties from discussing the allegations or from gathering and presenting relevant evidence.

The Investigator will provide each party and any relevant witness with written notice of a request that they participate in an investigatory interview. The Investigator will provide sufficient notice of the date, time, location, participants, and purpose of any meeting to allow each party to prepare.

Prior to completing the final investigative report, the Investigator will provide the parties with equal opportunity to inspect and review any evidence directly related to the allegations that was obtained from any party or witness during the investigation. (This includes evidence that the Investigator will not rely upon in reaching a determination regarding responsibility.) The Investigator will send the evidence subject to inspection and review to the parties and their advisors (if applicable) in either physical or electronic form. The parties then have 10 business days to submit any written feedback or additional information – or to identify additional witnesses or request that the Investigator collect additional information. With that information in-hand, the Investigator has discretion to determine appropriate next steps, including whether further investigation is warranted. Any information that either party submits to the Investigator at this stage will be shared with the other party, as will any additional evidence gathered after that point in time.

After receipt of written feedback and/or additional information from the parties, and after taking any additional steps that the Investigator deems necessary based on that information, the Investigator will finalize the investigative report. The investigative report will summarize the relevant evidence gathered during the investigation – but it will not reach a determination of responsibility. The Investigator will provide the final investigative report to the parties and their advisors (if applicable) simultaneously and at least 10 business days prior to the scheduled hearing. The parties may submit a written response to the investigative report – any response will be shared with the other party.

Any evidence gathered during the Investigation will be available for use at the live hearing.

31

## THE LIVE HEARING

Upon receipt of the final investigative report from the Investigator, the Title IX Coordinator or Deputy Title IX Coordinator will identify a decision-maker to conduct a live hearing after which the decision-maker will render a determination regarding the respondent's responsibility based on a preponderance of the evidence (i.e., that it is more likely than not that the Title IX Sexual Harassment occurred). The parties will learn the decision-maker's identity at least 48 hours prior to the hearing.[4]

The decision-maker will schedule a hearing promptly after his/her receipt of the investigative report. The decision-maker will notify the parties as soon as practicable of the date, time and place of the hearing. The hearing will be closed to the public.

The live hearing will be conducted in real time. By request of either party, the University will arrange so that the parties are not in the same physical space during the hearing. In such circumstances, the University will arrange for the use of technology to enable all participants to see and hear the witness or party answering questions in real time.

The University may elect on its own to conduct the live hearing virtually, provided that all participants can simultaneously see and hear each other. When a hearing is conducted virtually, the University must still create an audio or audiovisual recording, or transcript, of the virtual proceeding and make it available to the parties for inspection and review.

The decision-maker will set an agenda for the hearing, including in what order events will occur, how long statements or questioning may last, and any other issues that the decision-maker determines needs to be addressed.

Each party _must_ have an advisor accompany them to the hearing. The University will provide an advisor, without fee, to any party who does not have one. At the hearing, the advisor will have the opportunity to ask relevant questions and follow-up questions of any party or witness (sometimes referred to as "cross-examination"), including those challenging credibility. Only an advisor may conduct the cross-examination – a party may not do so.

The decision-maker may choose to exclude any question on cross-examination that he or she deems irrelevant – the decision-maker must explain why the question is not relevant. Questions and evidence about the complainant's prior sexual behavior are not relevant unless offered to prove that someone other than the respondent committed the alleged misconduct or concern specific incidents of the complainant's prior sexual behavior with respect to the respondent and are offered to prove consent.

The decision-maker will not rely on any statement made by someone who does not participate in the hearing or who refuses to answer questions posed on cross-examination, but the decision-maker will not draw any adverse inferences from that person's absence or refusal to answer questions.

---

[4]      If either party is concerned that the decision-maker should be excluded for reasons of bias or conflict of interest, the party should notify the Title IX Coordinator or Deputy Title IX Coordinator of the concern, and that person will have the discretion to determine whether someone else should be assigned.

## DECISION

As soon as practicable, the decision-maker will issue a written decision simultaneously to each party regarding the respondent's responsibility based on a preponderance of the evidence. This written decision will: (i) identify the allegations, (ii) describe the procedural steps taken from the receipt of the formal complaint through the determination, including any notifications to the parties, interviews with parties and witnesses, site visits, methods used to gather other evidence, and hearings held, (iii) identify findings of fact that support the determination, (iv) make conclusions regarding the application of this Policy to the facts, (v) include a statement of, and rationale for, the result as to each allegation, including a determination regarding responsibility and any disciplinary sanctions the recipient imposes on the respondent, (vi) provide information about whether remedies designed to restore or preserve access to the University's education programs or activities will be provided, and (vii) provide information about the procedures for sanctioning (if applicable) and bases for appeal.

The University will audio record the live hearing, and upon request, the Title IX Coordinator or Deputy Title IX Coordinator will make a copy of the recording available to the parties to review.

Where a respondent is found responsible for any of the alleged conduct, the parties will be provided with the opportunity to submit an impact statement for the decision-maker's consideration during the sanctioning stage.

Impact statements should be submitted within 3 days of the notice of the decision – and if submitted, will be shared with the other party. In deciding an appropriate disciplinary action, the decision-maker may consider the respondent's past violations of University policy, as well as the nature and severity of the violation(s), the impact statements of the parties, and any mitigating circumstances. The decision-maker will decide the appropriate disciplinary actions as soon as practicable. The Title IX Coordinator or Deputy Title IX Coordinator will simultaneously notify the parties as soon as practicable of the sanctions to be imposed, and the right to appeal (as provided below).

The University expects all cases involving a finding of sexual violence, stalking, domestic violence and dating violence to involve consideration of suspension or expulsion for students, and termination of employment for employees. Other sanctions that may be imposed include a warning, disciplinary probation, restriction from employment by the University, removal from University housing, removal from courses or activities, loss of privileges, no contact, exclusion from areas of the campus and facilities, removal or non-renewal of scholarships, a notation on the respondent's official University transcript, community service, restitution, and a fine. In addition, the respondent may also be required to undergo an assessment and treatment by a therapist or counselor, attend an intervention treatment program and/or issue a letter of apology.

## THE APPEAL PROCESS

Any party may appeal the dismissal or non-dismissal of a formal complaint, a determination of responsibility or non-responsibility, and/or the sanctions imposed. Any request for an appeal must consist of a plain, concise, and complete written statement outlining the grounds for the appeal. The appeal request must be submitted to the Title IX Coordinator or Deputy Title IX Coordinator within 5 days of the date of the final determination letter. The other party will be provided notice of the appeal and given 5 days to respond. In the event that both parties initially appeal the decision, each party will be provided notice and a copy of the other party's appeal.

33

In all cases, there are only three possible grounds for appeal:

1.    An alleged material violation of the established procedures in this Policy (including conflict of interest or bias on the part of the Title IX Coordinator, the Investigator, or the decision-maker);

2.    Evidence that could affect the outcome is now available that could not have been obtained at the time of the determination/initial hearing; or

3.    The sanction is excessive, inconsistent with or insufficient for the nature of the offense.

The Title IX Coordinator or Deputy Title IX Coordinator will appoint an appeal panel of two or more individuals (or as otherwise may be required by applicable law, rule or regulation) to review the matter. The appeal panel will not include the Title IX Coordinator, the Investigator, or the decision-maker. The appeal will be conducted in a fair and impartial manner. The appeal is not a re-hearing of the underlying matter. The appeal panel will review the written investigation report, decisions and all supporting documents, may review other records generated through the investigation and hearing, and also may consult with both parties.

The appeal panel can affirm the original determination of responsibility, alter the determination of responsibility either in whole or in part, and/or alter the sanctions, depending on the circumstances. The matter can also be referred back for further investigation or consideration if appropriate.

The appeal panel will issue its written determination as soon as practicable. The Title IX Coordinator or Deputy Title IX Coordinator will simultaneously notify the parties as soon as practicable of the outcome of the appeal and issue them the appeal panel's written decision.

Appeal decisions are final.

If there is no appeal, the Title IX Coordinator or Deputy Title IX Coordinator also will simultaneously notify the parties that the initial decision is final because the time for an appeal has expired.

**Transcript Notations.** Students suspended or expelled for committing an act of sexual assault, stalking, domestic violence, dating violence, or a "violent crime," as defined by the Clery Act,[5] will have a notation placed on their transcript as follows: "suspended after a finding of responsibility for a code of conduct violation" or "expelled after a finding of responsibility for a code of conduct violation." The University will consider requests to remove transcript notations. Requests for removal of a transcript notation should be sent to the Title IX Coordinator. A transcript notation will not be removed prior to one year after conclusion of the suspension. If a finding of responsibility is vacated for any reason, a corresponding transcript notation will be removed. Expulsion notations will not be removed in any case. If an accused student withdraws from the University while charges are pending and declines to complete the disciplinary process the following notation will be placed on his/her transcript: "withdrew with conduct charges pending."

---

[5] "Violent crimes" defined by the Clery Act are murder, sexual offenses (forcible and non-forcible), robbery, aggravated assault, burglary, motor vehicle theft, manslaughter, and arson.

Appendix C

### Formal Resolution of Complaints Not Involving Title IX Sexual Harassment

Following a determination to pursue a formal resolution of a complaint not involving Title IX Sexual Harassment received by the Title IX Coordinator or Deputy Title IX Coordinator:

I.    **FOR COMPLAINTS INVOLVING SEX/SEX-BASED DISCRIMINATION, SEXUAL HARASSMENT, SEXUAL ABUSE/ASSAULT, STALKING, DOMESTIC VIOLENCE AND DATING VIOLENCE INVOLVING STUDENTS**

1)    The Title IX Coordinator or Deputy Title IX Coordinator (or his/her designee) will provide all parties involved with a copy of these procedures (which may be via a link to these procedures on the University's website).

2)    The Title IX Coordinator or Deputy Title IX Coordinator (or his/her designee) will request the complainant to provide to the Title IX Coordinator or Deputy Title IX Coordinator, within 5 days after the request and preferably in writing, a description of all facts that bear on the allegations; specifically, the details surrounding the accusation, names of possible witnesses, and the nature and description of possible evidence. The complainant is expected to share with the Title IX Coordinator or Deputy Title IX Coordinator (or other appropriate investigative entity as designated by the University) any relevant supplemental information that subsequently becomes available.

3)    The Title IX Coordinator or Deputy Title IX Coordinator (or his/her designee) will promptly inform the respondent in writing (and send a copy to the complainant) of the allegations (including the date, time, location, nature of the alleged misconduct, factual allegations and reference to specific code violations and sanctions that may be imposed) and ask the respondent to respond to them within 5 days after such notice. Such response should include all facts that bear on the allegations, including the names of possible witnesses and the nature and description of possible evidence. The respondent is expected to share with the Title IX Coordinator or Deputy Title IX Coordinator (or other appropriate investigative entity as designated by the University) any relevant supplemental information that subsequently becomes available. The Title IX Coordinator or Deputy Title IX Coordinator will inform the complainant of any defenses that the respondent may provide. The Title IX Coordinator or Deputy Title IX Coordinator (or his/her designee) may ask to meet with the parties separately to discuss the allegations.

4)    Where appropriate, in the judgment of the Title IX Coordinator or Deputy Title IX Coordinator, both the complainant and the respondent may be invited to engage in mediation or conciliation; however, mediation will not be used to resolve a complaint of sexual assault, stalking, domestic violence or dating violence or an allegation that an employee sexually harassed a student.

5)    The Title IX Coordinator and Deputy Title IX Coordinators may also work with the Office of the General Counsel, as appropriate, in responding to the receipt of a complaint, and when the complaint involves an allegation of sexual violence, stalking, domestic violence, dating violence or other sexual misconduct, the Title IX Coordinator or Deputy Title IX Coordinators will promptly notify the Office of the General Counsel of the existence of such complaint.

6)    The Title IX Coordinator or Deputy Title IX Coordinator (or other designated investigator) will fully, fairly and impartially investigate the complaint, and each party equally will have the opportunity to present witnesses and other evidence to the investigator. Each party will also

35

be afforded similar and timely access to information that may be provided by the University to the other party and that will be used to adjudicate the complaint.

7)  Both parties will be advised by the Title IX Coordinator or Deputy Title IX Coordinator (or his/her designee) that reasonable efforts will be made by the University to protect the privacy of the parties, and to maintain confidentiality to the extent possible and as is consistent with investigative needs and applicable laws (see **Section XVI**).

8)  The Title IX Coordinator or Deputy Title IX Coordinator will explore possible supportive measures with both parties.

9)  The Title IX Coordinator or Deputy Title IX Coordinator (or other designated investigator) will endeavor, as promptly as feasible, to interview all relevant parties and review all evidence, including witnesses and evidence identified by the parties.

10)  The Title IX Coordinator or Deputy Title IX Coordinator (or his/her designee) will provide the complainant and the respondent with periodic status updates.

11)  The Title IX Coordinator or Deputy Title IX Coordinator (or other designated investigator) will seek to conclude the investigation as promptly as practicable (see Section XIX).

12)  The Title IX Coordinator or Deputy Title IX Coordinator (or other designated investigator) will compile a neutral investigation report, and will simultaneously inform the parties of the conclusion of the investigation. Both parties will have an opportunity to review the investigation report in person, in the presence of a University official at a location selected by the University. The complainant and respondent may respond to the report, either verbally or in writing.

13)  The Title IX Coordinator or Deputy Title IX Coordinator will then decide (in his/her discretion as he/she feels appropriate, and in consultation with the Office of the General Counsel) if (i) the individual who handled the investigation and compiled the report (which may be the Title IX Coordinator, Deputy Title IX Coordinator or other designated investigator) should make the finding as to whether this Policy has been violated and if such individual or other person (such as the Title IX Coordinator or Deputy Title IX Coordinator) should determine appropriate sanctions, or (ii) a hearing officer should convene a hearing and make the finding as to whether this Policy has been violated and determine appropriate sanctions. (It is expected that the hearing process referred to in option (ii) will only be used in very limited circumstances as the Title IX Coordinator or Deputy Title IX Coordinator, in consultation with the Office of the General Counsel, will determine as appropriate in his/her discretion.) In all cases, a finding of a violation of this Policy will be based on a preponderance of evidence (i.e., that it is more likely than not that the discrimination or harassment occurred).

14)  If the Title IX Coordinator or Deputy Title IX Coordinator (or other designated investigator or person) is selected to make the finding and determine sanctions as provided above, then he/she should do so promptly after the conclusion of the investigation. The Title IX Coordinator or Deputy Title IX Coordinator will simultaneously notify the parties as soon as practicable of the finding. At this point, if it has been determined that a violation has occurred, the parties may submit an impact statement for the Title IX Coordinator's or Deputy Title IX Coordinator's (or other designated investigator's or other person's) consideration during the sanction stage. Impact statements should be submitted within 3 days of notice of the finding. In deciding an appropriate disciplinary action, the Title IX Coordinator or Deputy Title IX Coordinator (or other designated investigator or person) may consider the respondent's past violations of University policy, as well as the nature and severity of the violation(s), the impact statements

36

of the parties, and any mitigating circumstances. The Title IX Coordinator or Deputy Title IX Coordinator (or other designated investigator or person) will decide the appropriate disciplinary actions. The Title IX Coordinator or Deputy Title IX Coordinator will simultaneously notify the parties as soon as practicable of the sanctions to be imposed, and the right to appeal (as provided below).

15) If a hearing officer is selected to make the finding and determine sanctions as provided above, then a hearing officer will be selected by the Title IX Coordinator or Deputy Title IX Coordinator (in consultation with the Office of the General Counsel) depending on the nature of the case and the parties involved. The hearing officer may be the Title IX Coordinator, a Deputy Title IX Coordinator, another University employee, or an outside individual, but may not be the person who handled the investigation. The process will then be as follows:

   i. The hearing officer will schedule a hearing as soon as possible after the conclusion of the investigation, and the Title IX Coordinator or Deputy Title IX Coordinator will simultaneously notify the parties as soon as practicable of the date, time and place of the hearing.

   ii. Prior to the hearing, the hearing officer will review the investigation report, as well as any responses to the investigation report submitted by the complainant or respondent.

   iii. At the hearing, the hearing officer may question the parties in order to assist him/her in deciding whether or not the charges are supported by a preponderance of the evidence. The hearing officer may ask that witnesses attend the hearing, so that he/she may ask witnesses questions in person. The parties are encouraged to attend the hearing, so that they are given a full opportunity to explain their positions. If a party is uncomfortable appearing in the same location with the other party, arrangements can be made so that one or both parties may participate in the hearing live by conference call or video conference.

   iv. With respect to allegations regarding sexual assault, stalking, domestic violence or dating violence, the parties may have a personal advisor/support person present during the hearing. With respect to allegations regarding sexual assault, stalking, domestic violence or dating violence, the alleged victim and respondent may have a personal advisor/support person of their choice and at their expense (who may be an attorney) present with them during any University meeting/proceeding. The party shall promptly notify the Title IX Coordinator or Deputy Title IX Coordinator if he/she intends to use an advisor/support person, and identify such advisor/support person. Such advisor/support person is limited to an advisory role, and may only privately consult and advise his/her advisee. The advisor/support person may not speak for the advisee at the meeting/proceeding, may not question witnesses, may not make any statements during the meeting/proceeding or otherwise actively participate in the meeting/proceeding. The advisor/support person may be asked to leave the meeting/proceeding if he/she deviates from his/her role. The advisor/support person will be subject to the same confidentiality expectations applicable to others in attendance at the meeting/proceeding.

   v. The hearing officer will issue a written decision on whether a violation has occurred. The Title IX Coordinator or Deputy Title IX Coordinator will simultaneously notify the parties as soon as practicable of the decision. At this point, if it has been determined that a violation has occurred, the parties may submit an impact statement for the hearing officer's consideration during the sanction stage. Impact statements should be submitted within 3 days of notice of the decision. In deciding an appropriate disciplinary action,

the hearing officer may consider the respondent's past violations of University policy, as well as the nature and severity of the violation(s), the impact statements of the parties, and any mitigating circumstances.

vi. The Title IX Coordinator or Deputy Title IX Coordinator will simultaneously notify the parties as soon as practicable of the sanctions to be imposed, and the right to appeal (as provided below).

16) The University expects all cases involving a finding of sexual violence, stalking, domestic violence and dating violence to involve consideration of suspension or expulsion for students, and termination of employment for employees. Other sanctions that may be imposed include a warning, disciplinary probation, restriction from employment by the University, removal from University housing, removal from courses or activities, loss of privileges, no contact, exclusion from areas of the campus and facilities, removal or non-renewal of scholarships, a notation on the respondent's official University transcript, community service, restitution, and a fine. In addition, the respondent may also be required to undergo an assessment and treatment by a therapist or counselor, attend an intervention treatment program and/or issue a letter of apology.

17) **Appeal Process.**

i. In all cases, there are three possible grounds for appeal:

   • An alleged material violation of the established procedures in this Policy;

   • Evidence is now available that could not have been obtained at the time of the determination/initial hearing; or

   • The sanction is excessive, inconsistent or insufficient with the nature of the offense.

ii. Either party may appeal the decision of the Title IX Coordinator or Deputy Title IX Coordinator (or other designated investigator/person) or hearing officer, as applicable, (based on the grounds described above) to an **Appeal Panel** (of two or more persons, or as otherwise may be required by applicable law, rule or regulation) selected by the Title IX Coordinator or Deputy Title IX Coordinator (in consultation with the Office of the General Counsel) depending on the nature of the case and the parties involved. The Title IX Coordinator or Deputy Title IX Coordinator (or other designated investigator/person) or hearing officer, as applicable, may not serve on the Appeal Panel. A request for an appeal must consist of a plain, concise, and complete written statement outlining the grounds for the appeal. The appeal request must be submitted to the Title IX Coordinator or Deputy Title IX Coordinator within 5 days of the date of the final determination letter.

iii. Upon receipt of the appeal, the Title IX Coordinator or Deputy Title IX Coordinator will provide the other party with notice of the appeal and the opportunity to respond in writing. The other party's response to the appeal must be submitted within 5 days from receipt of notice of the appeal. In the event that both parties initially appeal the decision, each party will be provided notice and a copy of the other party's appeal.

iv. The appeal will be conducted in a fair and impartial manner. The appeal is not a re-hearing of the underlying matter. The Appeal Panel will review the written investigation report, decisions and all supporting documents, and also may consult with both parties.

v. The Appeal Panel (by majority vote of panelists, or by unanimous decision if less than 3 panelists) can affirm the original determination of responsibility, alter the determination

38

of responsibility either in whole or in part, and/or alter the sanctions, depending on the circumstances. The matter can also be referred back for further investigation or consideration if appropriate.

vi. The Appeal Panel will issue its determination as soon as practicable from the date of the submission of all appeal documents by both parties. The Title IX Coordinator or Deputy Title IX Coordinator will simultaneously notify the parties as soon as practicable of the decision.

vii. Appeal decisions are final.

viii. If there is no appeal, the Title IX Coordinator or Deputy Title IX Coordinator also will simultaneously notify the parties that the initial decision is final because the time for an appeal has expired.

18) Notwithstanding the foregoing, to the extent permitted by law, (i) findings and recommendations concerning represented employees will be subject to the provisions of the appropriate collective bargaining agreement, and (ii) findings and recommendations that involve suspension or termination of faculty members will be subject to the provisions of the appropriate faculty handbook/policy.

19) The University will endeavor to fully resolve all formal complaints as soon as practicable (or, in the case of a faculty complaint, such time period as may be required by the applicable faculty handbook/policy) after receipt of the formal complaint.

20) **Transcript Notations.** Students suspended or expelled for committing an act of sexual assault, stalking, domestic violence, dating violence, or a "violent crime," as defined by the Clery Act,6 will have a notation placed on their transcript as follows: "suspended after a finding of responsibility for a code of conduct violation" or "expelled after a finding of responsibility for a code of conduct violation." The University will consider requests to remove transcript notations. Requests for removal of a transcript notation should be sent to the Title IX Coordinator. A transcript notation will not be removed prior to one year after conclusion of the suspension. If a finding of responsibility is vacated for any reason, a corresponding transcript notation will be removed. Expulsion notations will not be removed in any case. If an accused student withdraws from the University while charges are pending and declines to complete the disciplinary process the following notation will be placed on his/her transcript: "withdrew with conduct charges pending."

---

6 "Violent crimes" defined by the Clery Act are murder, sexual offenses (forcible and non-forcible), robbery, aggravated assault, burglary, motor vehicle theft, manslaughter, and arson.

## II.   FOR ALL OTHER COMPLAINTS

1) The Title IX Coordinator or Deputy Title IX Coordinator (or his/her designee) will provide all parties involved with a copy of these procedures (which may be via a link to these procedures on the University's website).

2) The Title IX Coordinator or Deputy Title IX Coordinator (or his/her designee) will request the complainant to provide to the Title IX Coordinator or Deputy Title IX Coordinator, within 5 days after the Title IX Coordinator's or Deputy Title IX Coordinator's request and preferably in writing, a description of all facts that bear on the allegations; specifically, the details surrounding the accusation, names of possible witnesses, and the nature and description of possible evidence. The complainant is expected to share with the Title IX Coordinator or Deputy Title IX Coordinator, or other appropriate investigative entity as designated by the University, any relevant supplemental information that subsequently becomes available.

3) The Title IX Coordinator or Deputy Title IX Coordinator (or his/her designee) will promptly inform the respondent in writing (and send a copy to the complainant) of the allegations (including the date, time, location, nature of the alleged misconduct, and factual allegations) and ask the respondent to respond to them within 5 days after such notice. Such response should include all facts that bear on the allegations, including the names of possible witnesses and the nature and description of possible evidence. The respondent is expected to share with the Title IX Coordinator or Deputy Title IX Coordinator, or other appropriate investigative entity as designated by the University, any relevant supplemental information that subsequently becomes available. The Title IX Coordinator or Deputy Title IX Coordinator will inform the complainant of any defenses that the respondent may provide. The Title IX Coordinator or Deputy Title IX Coordinator (or his/her designee) may ask to meet with the parties separately to discuss the allegations.

Where appropriate, in the judgment of the Title IX Coordinator or Deputy Title IX Coordinator, both the complainant and the respondent may be invited to engage in mediation or conciliation; however, mediation will not be used to resolve a complaint of sexual assault, stalking, domestic violence or dating violence or an allegation that an employee sexually harassed a student.

4) The Title IX Coordinator or Deputy Title IX Coordinator may also work with the Office of the General Counsel, as appropriate, in responding to the receipt of a complaint.

5) The Title IX Coordinator or Deputy Title IX Coordinator (or other designated investigator) will fully, fairly and impartially investigate the complaint, and each party equally will have the opportunity to present witnesses and other evidence to the investigator. Each party will also be afforded similar and timely access to information that may be provided by the University to the other party and that will be used to adjudicate the complaint.

6) Both parties will be advised by the Title IX Coordinator or Deputy Title IX Coordinator (or his/her designee) that reasonable efforts will be made by the University to protect the privacy of the parties, and to maintain confidentiality to the extent possible and as is consistent with investigative needs and applicable laws (see Section XVI).

7) The Title IX Coordinator or Deputy Title IX Coordinator will explore possible supportive measures with both parties.

8) The Title IX Coordinator or Deputy Title IX Coordinator (or other designated investigator) will endeavor, as promptly as feasible, to interview all relevant parties and review all evidence, including witnesses and evidence identified by the parties.

9) The Title IX Coordinator or Deputy Title IX Coordinator (or his/her designee) will provide the complainant and the respondent with periodic status updates.

10) The Title IX Coordinator or Deputy Title IX Coordinator (or other designated investigator) will seek to conclude the investigation as promptly as practicable (see Section XIX).

11) The Title IX Coordinator or Deputy Title IX Coordinator (or other designated investigator) will compile a neutral investigation report and will then determine the credible evidence and make a finding as to whether this Policy has been violated. A finding of a violation of this Policy will be based on a preponderance of evidence (i.e., that it is more likely than not that the discrimination or harassment occurred).

12) The Title IX Coordinator or Deputy Title IX Coordinator will simultaneously inform the parties of the conclusion of the investigation and the finding. The complainant and respondent may respond to such findings, either verbally or in writing, and such response will be furnished to the appropriate disciplinary authority along with the investigation's findings. Neither the complainant nor the respondent is entitled to receive a copy of the internal investigative report or any other related documents, except, in the case of any faculty complaint, as may otherwise be expressly required by any applicable faculty handbook/policy. If the University determines to furnish a document to one party, it will also simultaneously furnish a copy to the other party.

13) Findings and recommendations concerning an employee-respondent will be promptly referred to the Chief Human Resources Officer for consideration of appropriate disciplinary action. The Chief Human Resources Officer will consult with the Title IX Coordinator or Deputy Title IX Coordinator and the designated investigator (as applicable) to review the findings and recommendations, as well as any responses to such findings received from the complainant or respondent. With respect to faculty, the Chief Human Resources Officer also will consult with the Provost. The parties will be notified of any sanctions to be imposed. There is no right to appeal.

14) Notwithstanding the foregoing, (i) findings and recommendations concerning represented employees will be subject to the provisions of the appropriate collective bargaining agreement, and (ii) findings and recommendations that involve suspension or termination of faculty members will be subject to the provisions of the appropriate faculty handbook/policy.

15) Findings and recommendations concerning a student-respondent will be promptly referred to the applicable Dean of Students or his/her counterpart at the student-respondent's school for consideration of appropriate disciplinary action. The Dean of Students or his/her counterpart will consult with the Title IX Coordinator or Deputy Title IX Coordinator and the designated investigator (as applicable) to review the findings and recommendations, as well as any responses to such findings received from the complainant or respondent.

In such circumstances, the Title IX Coordinator or Deputy Title IX Coordinator will simultaneously notify the parties as soon as practicable of the sanctions to be imposed. A student-respondent may appeal the sanctions to be imposed on him/her, but no other party has a right of appeal. Within 5 days of notice of the sanctions to be imposed on the student-respondent, the student-respondent may appeal the sanctions by submitting a written request to the Title IX Coordinator or Deputy Title IX Coordinator. The only grounds for an appeal are that the sanctions are excessive or inconsistent with the nature of the offense. The appeal is not a re-hearing of the underlying matter. Upon receipt of the appeal, the Title IX Coordinator or Deputy Title IX Coordinator will provide the other party with notice of the appeal and the opportunity to respond in writing. The other party's response to the appeal must be submitted within 5 days from receipt of notice of the appeal. The appeal will be reviewed by the Provost

(or his/her designee), and he/she will issue a determination as soon as practicable from the date of the submission of all appeal documents by both parties. The Title IX Coordinator or Deputy Title IX Coordinator will simultaneously notify the parties as soon as practicable of the decision. Appeal decisions are final. If there is no appeal, the Title IX Coordinator or Deputy Title IX Coordinator also will simultaneously notify the parties that the initial decision is final because the time for an appeal has expired.

16) The University will endeavor to fully resolve all formal complaints as soon as (or, in the case of a faculty complaint, such time period as may be required by the applicable faculty handbook/policy) after receipt of the formal complaint.

42

Appendix D

## Student Bill of Rights

The University is committed to providing options, support and assistance to victims/survivors of sexual assault, domestic violence, dating violence, and/or stalking to ensure that they can continue to participate in University-wide and campus programs, activities, and employment. All victims/survivors of these crimes and violations have the following rights, regardless of whether the crime or violation occurs on campus, off campus, or while studying abroad:

All students have the right to:

1.    Make a report to local law enforcement and/or state police;

2.    Have disclosures of domestic violence, dating violence, stalking, and sexual assault treated seriously;

3.    Make a decision about whether or not to disclose a crime or violation and participate in the judicial or conduct process and/or criminal justice process free from pressure by the institution;

4.    Participate in a process that is fair, impartial, and provides adequate notice and a meaningful opportunity to be heard;

5.    Be treated with dignity and to receive from the institution courteous, fair, and respectful health care and counseling services, where available;

6.    Be free from any suggestion that the reporting individual is at fault when these crimes and violations are committed, or should have acted in a different manner to avoid such crimes or violations;

7.    Describe the incident to as few institution representatives as practicable and not be required to unnecessarily repeat a description of the incident;

8.    Be protected from retaliation by the institution, any student, the accused and/or the respondent, and/or their friends, family and acquaintances within the jurisdiction of the institution;

9.    Access to at least one level of appeal of a determination;

10.   Be accompanied by an advisor of choice who may assist and advise a reporting individual, accused, or respondent throughout the judicial or conduct process including during all meetings and hearings related to such process; and

11.   Exercise civil rights and practice of religion without interference by the investigative, criminal justice, or judicial or conduct process of the institution.

See **Section VII** for information about filing a report, and **Section XXIII** for confidential reporting options.

Appendix E

## Student Alcohol and Drug Use Amnesty Policy

The health and safety of every student at the University is of utmost importance. The University recognizes that students who have been drinking and/or using drugs (whether such use is voluntary or involuntary) at the time that violence, including but not limited to domestic violence, dating violence, stalking or sexual assault, occurs may be hesitant to report such incidents due to fear of potential consequences for their own conduct. The University strongly encourages students to report domestic violence, dating violence, stalking, or sexual assault to University officials. A bystander acting in good faith or a reporting individual acting in good faith that discloses any incident of domestic violence, dating violence, stalking, or sexual assault to a University official or law enforcement will not be subject to a code of conduct action for violations of alcohol and/or drug use policies occurring at or near the time of the commission of the domestic violence, dating violence, stalking, or sexual assault.

The University will provide students with the assistance needed to respond to high risk drinking and/or other drug abuse. In a crisis, students are encouraged to seek such assistance by contacting the Security Department or 911. Counseling services or drug and alcohol abuse counseling are available at the University's Counseling Centers.

**Security Department** - http://yu.edu/safety-security/
Beren Campus Security Department
50 East 34th Street, 1st Floor
(917) 326-4885
security@yu.edu
24-Hour Hotline: 1-888-STERN YU (1-888-783-7698)

Cardozo School of Law Security Department
55 Fifth Avenue (Basement)
(212) 790-0303 or (212) 790-0308
security@yu.edu

Wilf Campus Security Department
2521 Amsterdam Avenue (1st Floor)
(212) 960-5221
security@yu.edu
24-Hour Hotline:  212.960.5200 (in-house Ext. 200)
                 1-888-YU SAFTY (1-888-987-2389)

**University Counseling Centers** – http://www.yu.edu/student-life/counseling/
Wilf Campus Counseling Center
500 West 185th Street, FH 520
(646) 592-4200
counseling@yu.edu

Beren/Cardozo Campus Counseling Center
215 Lexington Ave, Suite 1303 (13th floor)
(646) 592-4210
counseling@yu.edu

Appendix F

## New York Crime Definitions

The Violence Against Women Act (VAWA) and its regulations require the University to include certain New York State definitions in its Annual Security Report and also require that these definitions be provided in other materials disseminated by the University. Relevant New York definitions are set forth below.

CONSENT:[7] Lack of consent results from: forcible compulsion; or incapacity to consent; or where the offense charged is sexual abuse or forcible touching, any circumstances, in addition to forcible compulsion or incapacity to consent, in which the victim does not expressly or impliedly acquiesce in the actor's conduct. Where the offense charged is rape in the third degree, a criminal sexual act in the third degree, or forcible compulsion in circumstances under which, at the time of the act of intercourse, oral sexual conduct or anal sexual conduct, the victim clearly expressed that he or she did not consent to engage in such act, and a reasonable person in the actor's situation would have understood such person's words and acts as an expression of lack of consent to such act under all the circumstances. A person is incapable of consent when he or she is: less than 17 years old; or mentally disabled; or mentally incapacitated; or physically helpless; or committed to the care and custody of the state department of correctional services, a hospital, the office of children and family services and is in residential care, or the other person is a resident or inpatient of a residential facility operated by the office of mental health, the office for people with development disabilities, or the office of alcoholism and substance abuse services, and the actor is an employee, not married to such person, who knows or reasonably should know that such person is committed to the care and custody of such department or hospital.

CONSENT, ABBREVIATED: Clear, unambiguous, and voluntary agreement between the participating to engage in specific sexual activity.

DATING VIOLENCE: New York State does not specifically define "dating violence." However, under New York Law, intimate relationships are covered by the definition of domestic violence when the crime is committed by a person in an "intimate relationship" with the victim. See "Family or Household Member" for definition of "intimate relationship."

DOMESTIC VIOLENCE: An act which would constitute a violation of the penal law, including, but not limited to acts constituting disorderly conduct, harassment, aggravated harassment, sexual misconduct, forcible touching, sexual abuse, stalking, criminal mischief, menacing, reckless endangerment, kidnapping, assault, attempted murder, criminal obstruction or breaching or blood circulation, or strangulation; and such acts have created a substantial risk of physical or emotional harm to a person or a person's child. Such acts are alleged to have been committed by a family member. The victim can be anyone over the age of sixteen, any married person or any parent accompanied by his or her minor child or children in situations in which such person or such person's child is a victim of the act.

FAMILY OR HOUSEHOLD MEMBER: Person's related by consanguinity or affinity; persons legally married to one another; person formerly married to one another regardless of whether they still reside in the same household; persons who have a child in common regardless of whether such persons are married or have lived together at any time; unrelated persons who are continually or at regular intervals living in the same household or who have in the past continually or at regular intervals lived in the same household; persons who are not related by consanguinity or affinity and who are or have been in an intimate relationship regardless of whether such persons have lived together at any time. Factors that

---

[7] For the purposes of this Policy, the University defines consent as affirmative consent as defined in the body of this Policy, which is consistent with N.Y. Educ. Law § 6441.

may be considered in determining whether a relationship is an "intimate relationship" include, but are not limited to: the nature or type of relationship regardless of whether the relationship is sexual in nature; the frequency of interaction between the persons; and the duration of the relationship. Neither a casual acquaintance nor ordinary fraternization between two individuals in business or social contexts shall be deemed to constitute an "intimate relationship"; any other category of individuals deemed to be a victim of domestic violence as defined by the office of children and family services in regulation. Intimate relationship status shall be applied to teens, lesbian/gay/bisexual/transgender, and elderly individuals, current and formerly married and/or dating heterosexual individuals who were, or are in an intimate relationship.

PARENT: means natural or adoptive parent or any individual lawfully charged with a minor child's care or custody.

SEXUAL ASSAULT: New York State does not specifically define sexual assault. However, sexual assault includes offenses that meet the definitions of rape, fondling, incest, or statutory rape.

SEX OFFENSES; LACK OF CONSENT: Whether or not specifically stated, it is an element of every sexual act committed without consent of the victim.

SEXUAL MISCONDUCT: When a person (1) engages in sexual intercourse with another person without such person's consent; or (2) engages in oral sexual conduct or anal sexual conduct without such person's consent; or (3) engages in sexual conduct with an animal or a dead human body.

RAPE IN THE THIRD DEGREE: When a person (1) engages in sexual intercourse with another person who is incapable of consent by reason of some factor other than being less than 17 years old; (2) Being 21 years old or more, engages in sexual intercourse with another person less than 17 years old; or (3) engages in sexual intercourse with another person without such person's consent where such lack of consent is by reason of some factor other than incapacity to consent.

RAPE IN THE SECOND DEGREE: When a person (1) being 18 years old or more, engages in sexual intercourse with another person less than 15 years old; or (2) engages in sexual intercourse with another person who is incapable of consent by reason of being mentally disabled or mentally incapacitated. It is an affirmative defense to the crime of rape in the second degree the defendant was less than four years older than the victim at the time of the act.

RAPE IN THE FIRST DEGREE: When a person engages in sexual intercourse with another person (1) by forcible compulsion; or (2) Who is incapable of consent by reason of being physically helpless; or (3) who is less than 11 years old; or (4) who is less than 13 years old and the actor is 18 years old or more.

CRIMINAL SEXUAL ACT IN THE THIRD DEGREE: When a person engages in oral or anal sexual conduct (1) with a person who is incapable of consent by reason of some factor other than being less than 17 years old; (2) being 21 years old or more, with a person less than 17 years old; (3) with another person without such persons consent where such lack of consent is by reason of some factor other than incapacity to consent.

CRIMINAL SEXUAL ACT IN THE SECOND DEGREE: When a person engages in oral or anal sexual conduct with another person (1) and is 18 years or more and the other person is less than 15 years old; or (2) who is incapable of consent by reason of being mentally disabled or mentally incapacitated. It is an affirmative defense that the defendant was less than four years older than the victim at the time of the act.

CRIMINAL SEXUAL ACT IN THE FIRST DEGREE: When a person engages in oral or anal sexual conduct with another person (1) by forcible compulsion; (2) who is incapable of consent by reason of

being physically helpless; (3) who is less than 11 years old; or (4) who is less than 13 years old and the actor is 18 years old or more.

FORCIBLE TOUCHING: When a person intentionally, and for no legitimate purpose, forcibly touches the sexual or other intimate parts of another person for the purpose of degrading or abusing such person; or for the purpose of gratifying the actor's sexual desire. It includes squeezing, grabbing, or pinching.

PERSISTENT SEXUAL ABUSE: When a person commits a crime of forcible touching, or second or third degree sexual abuse within the previous ten year period, has been convicted two or more times, in separate criminal transactions for which a sentence was imposed on separate occasions of one of one of the above mentioned crimes or any offense defined in this article, of which the commission or attempted commissions thereof is a felony.

SEXUAL ABUSE IN THE THIRD DEGREE: When a person subjects another person to sexual contact without the latter's consent. For any prosecution under this section, it is an affirmative defense that (1) such other person's lack of consent was due solely to incapacity to consent by reason of being less than 17 years old; and (2) such other person was more than 14 years old and (3) the defendant was less than five years older than such other person.

SEXUAL ABUSE IN THE SECOND DEGREE: When a person subjects another person to sexual contact and when such other person is (1) incapable of consent by reason of some factor other than being less than 17 years old; or (2) less than 14 years old.

SEXUAL ABUSE IN THE FIRST DEGREE: When a person subjects another person to sexual contact (1) by forcible compulsion; (2) when the other person is incapable of consent by reason of being physically helpless; or (3) when the other person is less than 11 years old; or (4) when the other person is less than 13 years old.

AGGRAVATED SEXUAL ABUSE: For the purposes of this section, conduct performed for a valid medical purpose does not violate the provisions of this section.

AGGRAVATED SEXUAL ABUSE IN THE FOURTH DEGREE: When a person inserts a (1) foreign object in the vagina, urethra, penis or rectum of another person and the other person is incapable of consent by reason of some factor other than being less than 17 years old; or (2) finger in the vagina, urethra, penis, rectum or anus of another person causing physical injury to such person and such person is incapable of consent by reason of some factor other than being less than 17 years old.

AGGRAVATED SEXUAL ABUSE IN THE THIRD DEGREE: When a person inserts a foreign object in the vagina, urethra, penis, rectum or anus of another person (1)(a) by forcible compulsion; (b) when the other person is incapable of consent by reason of being physically helpless; or (c) when the other person is less than 11 years old; or (2) causing physical injury to such person and such person is incapable of consent by reason of being mentally disabled or mentally incapacitated.

AGGRAVATED SEXUAL ABUSE IN THE SECOND DEGREE: When a person inserts a finger in the vagina, urethra, penis, rectum or anus of another person causing physical injury to such person by (1) forcible compulsion; or (2) when the other person is incapable of consent by reason of being physically helpless; or (3) when the other person is less than 11 years old.

AGGRAVATED SEXUAL ABUSE IN THE FIRST DEGREE: When a person subjects another person to sexual contact: (1) By forcible compulsion; or (2) when the other person is incapable of consent by reason of being physically helpless; or (3) when the other person is less than eleven years old; or (4) when the other person is less than thirteen years old and the actor is twenty-one years old or older.

STALKING IN THE FOURTH DEGREE: When a person intentionally, and for not legitimate purpose, engages in a course of conduct directed at a specific person, and knows or reasonably should know that

47

such conduct (1) is likely to cause reasonable fear of material harm to the physical health, safety or property of such person, a member of such person's immediate family or a third party with whom such person is acquainted; or (2) causes material harm to the mental or emotional health of such person, where such conduct consists of following, telephoning or initiating communication or contact with such person, a member of such person's immediate family or a third party with whom such person is acquainted, and the actor was previously clearly informed to cease that conduct; or (3) is likely to cause such person to reasonably fear that his or her employment, business or career is threatened, where such conduct consists of appearing, telephoning or initiating communication or contact at such person's place of employment or business, and the actor was previously clearly informed to cease that conduct.

STALKING IN THE THIRD DEGREE: When a person (1) Commits the crime of stalking in the fourth degree against any person in three or more separate transactions, for which the actor has not been previously convicted; or (2) commits the crime of stalking in the fourth degree against any person, and has previously been convicted, within the preceding ten years of a specified predicate crime and the victim of such specified predicate crime is the victim, or an immediate family member of the victim, of the present offense; or (3) with an intent to harass, annoy or alarm a specific person, intentionally engages in a course of conduct directed at such person which is likely to cause such person to reasonably fear physical injury or serious physical injury, the commission of a sex offense against, or the kidnapping, unlawful imprisonment or death of such person or a member of such person's immediate family; or (4) commits the crime or stalking in the fourth degree and has previously been convicted within the preceding ten years of stalking in the fourth degree.

STALKING IN THE SECOND DEGREE: When a person: (1) Commits the crime of stalking in the third degree and in the course of and furtherance of the commission of such offense: (a) displays, or possesses and threatens the use of, a firearm, pistol, revolver, rifle, sword, billy, blackjack, bludgeon, plastic knuckles, metal knuckles, chuka stick, sand bag, sandclub, sligshot, slungshot, shirken, "Kung Fu Star," dagger, dangerous knife, dirk, razor, stiletto, imitation pistol, dangerous instrument, deadly instrument or deadly weapons; or (b) displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; or (2) commits the crime of stalking in the third against any person, and has previously been convicted, within the preceding five years, of a specified predicate crime, and the victim of such specified predicate crime is the victim, or an immediate family member of the victim, of the present offense; or (3) commits the crime of stalking in the fourth degree and has previously been convicted of stalking in the third degree; or (4) being 21 years of age or older, repeatedly follows a person under the age of fourteen or engages in a course of conduct or repeatedly commits acts over a period of time intentionally placing or attempting to place such person who is under the age of fourteen in reasonable fear of physical injury, serious physical injury or death; or (5) commits the crime of stalking in the third degree, against ten or more persons, in ten or more separate transactions, for which the actor has not been previously convicted.

STALKING IN THE FIRST DEGREE: When a person commits the crime of stalking in the third degree or stalking in the second degree and, in the course and furtherance thereof, he or she intentionally or recklessly causes physical injury to the victim of such crime.

Appendix G

## A Plain Language Explanation of Distinctions between the
## New York State Penal Law and the University Disciplinary Processes

New York State Education Law Article 129-B requires that University officials explain differences between University processes and the criminal justice process in addressing sexual and interpersonal violence.

There are significant differences between the two systems because they have different, important goals. In the criminal justice system, prosecutors pursue cases when they believe there is sufficient evidence to prove, beyond a reasonable doubt, that an individual has committed a criminal act. A person who is convicted of a crime will face criminal penalties, such as incarceration, probation, or the imposition of a fine. The University disciplinary process seeks to determine whether an individual has violated University policy. In this process, a preponderance of the evidence standard of proof is used to determine responsibility. A person who is found to have violated University policy may be suspended, expelled or otherwise restricted from full participation in the University community. This document is intended to help explain the differences between the criminal justice system and University disciplinary processes.

|  | **Criminal Justice System** | **University Disciplinary System** |
|---|---|---|
| **Goals.** | Public safety, deterrence, and punishment. | Education; safety; safe and supportive campus environment. |
| **Governing Law.** | NYS Penal Code; NYS Rules of Criminal Procedure (or another state's rules if the crime took place there), Federal Criminal Law, and Rules of Evidence. | Title IX; The Clery Act, as amended by the Violence Against Women Act; NYS Education Law Articles 129-A and 129-B. University's Title IX Policy (Non-Discrimination and Anti-Harassment Policy); Student Bill of Rights Employee/Faculty Handbooks; Code of Conduct. |
| **How to report and whether there must be action once a report is made.** | Crimes involving sexual violence may be reported to the local police agency or to the New York State Police. Certain crimes may also be reported to federal law enforcement agents. Once a report is made, the decision whether to investigate is made by the police/law enforcement agency, often in consultation with a District Attorney or other prosecuting agency. An investigation may be conducted without the consent or participation of a reporting individual. The ultimate decision of whether to initiate a criminal prosecution is initially made by a prosecutor. In cases involving | Victims may disclose sexual violence to various University employees who are designated confidential resources (e.g., University Counseling Centers) or to others who will try to ensure privacy to the extent consistent with the University's obligation to provide a safe educational environment. Disclosures made to a confidential resource will not trigger an investigation. When a report is made to the Title IX Coordinator or Deputy Title IX Coordinator (TIXC) or another Non-Confidential resource, the TIXC will determine whether an investigation is necessary by weighing a request for confidentiality by the reporting individual against the continuing safety of that person and the safety and best interests of the campus community. |

|  | felony charges, the final charging decision is made by a Grand Jury. |  |
|---|---|---|
| **Who investigates?** | Police or other law enforcement officials. | Investigators employed or retained by the University; these individuals may work for different departments within the University, including, but not limited to, the Security Department, Student Affairs and Academic Affairs. |
| **Procedures.** | See Governing Law. Procedures established by police departments, prosecutors' offices, etc. | University policies, which generally incorporate requirements of Governing Law. Collective bargaining agreements and the faculty handbook may impact some procedures. |
| **Standard of Evidence.** | Crimes must be proven "Beyond a Reasonable Doubt." | A violation of disciplinary rules must be found by a "Preponderance of the Evidence" (more likely than not). |
| **Confidentiality.** | Law enforcement agencies offer some confidential assistance, but a criminal charge and trial must be public. | The University offer confidential resources, but a disciplinary proceeding requires that relevant information be shared with those involved. |
| **Privacy.** | Criminal trials must be public. | Disciplinary proceedings are kept as private as possible, but information must be shared with certain individuals within the University, the parties to the proceedings, and pursuant to law. |
| **Who are the parties?** | The prosecution/State and defendant. The victim/survivor is <u>not</u> a party, but often the critical witness for the prosecution. | Reporting individual and accused/respondent. |
| **Participation in the process.** | In limited circumstances, a criminal prosecution can proceed without the participation or cooperation of the reporting individual, but without a reporting individual's participation, it is generally more difficult to prove a crime beyond a reasonable doubt. | Reporting students cannot be required to participate in the University process. However, the University will be limited in its ability to respond if a reporting individual does not participate. |
| **Who initiates the proceedings?** | A prosecutor, acting on behalf of the State (or the United States in federal cases). | In cases involving Title IX Sexual Harassment, the person filing the complaint initiates proceedings. In cases involving Other Sexual Misconduct, the University initiates proceedings, with the reporting individual generally having an active role. |
| **Testimony.** | In a court, testimony is generally public. Other parties are, through counsel, entitled to cross-examine witnesses. | Upon conclusion of a formal investigation, a hearing may be scheduled where the hearing officer may question the parties and witnesses. (In cases |

| | | |
|---|---|---|
| | | involving Title IX Sexual Harassment, a live hearing will always occur.) The University may permit a party to participate in the hearing live by video conference. |
| Role of attorneys. | Both the State and the defendant are represented by counsel; counsel may question witnesses. | The parties may have a personal advisor/support person of their choice and at their expense (who may be an attorney) present with them during any University meeting/proceeding. Such advisor/support person is limited to an advisory role, and may only privately consult and advise his/her advisee – except that in investigations involving Title IX Sexual Harassment, the advisor will have the opportunity to question any party or witness at the live hearing. In all other circumstances, the advisor/support person may not speak for the advisee at the meeting/proceeding, may not question witnesses, may not make any statements during the meeting/proceeding or otherwise actively participate in the meeting/proceeding. If a party does not have an advisor present at the live hearing, the University will choose and provide an advisor who may be, but is not required to be, an attorney, to conduct cross-examination on behalf of that party. |
| Mental Health and Sexual History. | In New York, a reporting individual's prior sexual and mental health history is generally, but not always, inadmissible in a criminal case. There are limited circumstances under which directly relevant evidence of that kind may be admitted. | Generally not admissible, but subject to quite limited exceptions. NYS Education Law Article 129-B permits parties to exclude information about their prior sexual history with persons other than the other party and also to exclude evidence of their own mental health history in the fact finding phase of the disciplinary process. |
| Possible Results. | If a prosecution takes place, the defendant may<br>• plead guilty or "no contest"<br>• have the case dismissed by the judge (on legal grounds)<br>• be found "guilty" or "not guilty" by a judge or jury | In cases that do not involve sexual assault, stalking, domestic violence or dating violence or an employee's sexual harassment of a student the University has mediation or similar procedures if the parties agree.   For reports of Title IX Sexual Harassment, the University cannot offer informal resolution unless a formal complaint is filed.<br>If there is a formal proceeding, the respondent may be found "responsible" or "not responsible" for violations of the University's rules. Respondents may also accept responsibility before a finding by an adjudicator. |

| Sanctions. | An individual found guilty may be fined, imprisoned, or both. In some courts, alternative sanctions are sometimes used. | An individual found responsible for violating University policy may be given a range of sanctions (depending on the severity of the conduct and other factors, such as prior judicial history), ranging from a warning to suspension or expulsion from the University. |

\* From http://system.suny.edu/sexual-violence-prevention-workgroup/College-and-Criminal-Resource/.

**Appendix H**

## **Employee Complaint Form For Reporting Sexual Harassment**

### YESHIVA UNIVERSITY

New York State Labor Law requires all employers to adopt a sexual harassment prevention policy that includes a complaint form for employees to report alleged incidents of sexual harassment. The University's Non-Discrimination and Anti-Harassment Policy & Complaint Procedures serves as its sexual harassment prevention policy (among other things).

If you believe that you have been subjected to sexual harassment, you are encouraged to complete this form and submit it (via personal hand delivery or email) to:

Deputy Title IX Coordinator – Human Resources
Ms. Renee Coker, Senior Director, Talent Management
Yeshiva University – Human Resources - Wilf Campus, BH 806
2495 Amsterdam Avenue, New York, New York 10033
(646) 592-4336 / renee.coker@yu.edu

The University prohibits retaliation for filing a complaint.

If you are more comfortable reporting verbally or in another manner, the University will complete this form, provide you with a copy, and follow its Non-Discrimination and Anti-Harassment Policy & Complaint Procedures by investigating the claims as outlined in the policy.

**For additional resources, visit: ny.gov/combatting-sexual-harassment**

### COMPLAINANT INFORMATION

Name: _____

Job Title: _____

Work Location/School/Department: _____

Work Phone: _____

Email: _____

Select Preferred Communication Method: (please select one)

___ Email
___ Phone
___ In person

53

## SUPERVISORY INFORMATION

Immediate Supervisor's Name: _____

Job Title: _____

Work Location/School/Department: _____

Work Phone: _____

## COMPLAINT INFORMATION

**1. Complaint of Sexual Harassment is made against:**

Name: _____

Job Title: _____

Work Location/School/Department: _____

Work Phone: _____

Relationship to you: ___ Supervisor
___ Subordinate
___ Co-Worker
___ Other: _____

**2. Please explain in detail the circumstances regarding the complaint. Please describe what happened, and provide date(s) Sexual Harassment occurred and where it occurred. Please use additional sheets of paper if necessary and attach any relevant documents or evidence.**

_____
_____
_____
_____
_____
_____

Is the Sexual Harassment continuing? ____ Yes _____ No

**3. Please list the name and contact information of any witnesses or individuals that may have information related to your complaint:**

_____
_____
_____

*The last question is optional, but may help facilitate the investigation.*

54

**4. Have you previously complained or provided information (verbal or written) about related incidents?** _____ Yes _____ No

If yes, when and to whom did you complain or provide information?

_____

_____

If you have retained legal counsel and would like us to work with them, please provide their contact information. _____

_____

*Signature:* _____ *Date:* _____