UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x
                                                        :
JANE DOE (A PSEUDONYM),                                  :
WHOSE REAL NAME IS REDACTED,                             :
                                                        :
                               Plaintiff,               :
                                                        :
                  -against-                             :      No. 1:22-cv-05405-PKC-KHP
                                                        :
YESHIVA UNIVERSITY, ANDREW "AVI" LAUER,                  :
ESQ., CHAIM NISSEL, SEYFARTH SHAW, LLP,                  :
DOV KESSELMAN, ESQ., and EMILY MILLER, ESQ.,            :
                                                        :
                               Defendants.               :
                                                        :
------------------------------------------------------------------------x


### MEMORANDUM OF LAW IN SUPPORT OF THE SEYFARTH DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT


Howard I. Elman
David L. Barres
ELMAN FREIBERG PLLC
450 Seventh Avenue, 33rd Floor
New York, NY 10123
(646) 780-8100
helman@ef-law.com
dbarres@ef-law.com

*Attorneys for Defendants*
*Seyfarth Shaw, LLP, Dov Kesselman, Esq.,*
*and Emily Miller, Esq.*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF FACTS .................................................................................. 2

    A.    Events Before and Immediately After the Alleged Rape .......................... 3

    B.    Investigation of the Alleged Rape ......................................................... 4

    C.    Procedural History. ............................................................................ 5

    D.    Defendant Emily Miller's Lack of Contacts with New York. ................. 6

ARGUMENT .................................................................................................... 7

I.    THE COURT SHOULD DISMISS THE SEVENTH CLAIM OF
    INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ......................... 7

    A.    The Claim of Intentional Infliction of Emotional Distress Is Time-Barred ........... 8

    B.    The Claim of Intentional Infliction of Emotional Distress Is Not
        Adequately Pled. ............................................................................... 8

II.    THE COURT SHOULD DISMISS THE FIFTH AND TWELFTH CLAIMS
    OF AIDING AND ABETTING SEX DISCRIMINATION UNDER THE
    NYSHRL AND NYCHRL ............................................................................ 10

    A.    Plaintiff Cannot Plead Any Aiding and Abetting of Sex Discrimination
        Occurring Before or After the Investigation of Her Rape Charge. ......................... 11

    B.    Plaintiff Cannot Plead Any Aiding and Abetting of Sex Discrimination
        During, or in the Conduct of, the Investigation of Her Rape Charge. ................... 13

        1.    Doe Cannot Plead Facts Plausibly Suggesting That the Investigators
            Acted With a Discriminatory Motive. ....................................... 13

        2.    The Alleged Deficiencies of the Investigation Do Not Support the
            Claims Under the NYSHRL and NYCHRL. .............................. 16

III.    THE COURT LACKS PERSONAL JURISDICTION OVER DEFENDANT
    EMILY MILLER ........................................................................................ 19

    A.    There Is No Long-Arm Jurisdiction Over Miller Under CPLR § 302(a)(1) ......... 19

B. There Is No Long-Arm Jurisdiction Over Miller Under CPLR § 302(a)(3)..........21

C. The Exercise of Personal Jurisdiction Over Miller Would Also Violate Constitutional Due Process. ..................................................................................23

CONCLUSION ....................................................................................................................24

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Acquiline v. Capital Partners LLC*,
861 F. Supp. 2d 378 (S.D.N.Y. 2012)......................................................................20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................7

*Bailey v. New York Law School*,
16 Civ. 4283 (ER), 2017 WL 6611582 (S.D.N.Y. Dec. 27, 2017) ..............................9

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
171 F.3d 779 (2d Cir. 1999).............................................................................19, 21

*Beattie v. Farnsworth Middle School*,
143 F. Supp. 2d 220 (N.D.N.Y. 1998)....................................................................18

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................................................7

*Bissonnette v. Podlaski*,
138 F. Supp. 3d 616 (S.D.N.Y. 2015)........................................................... 19-20, 21

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)...............................................................................................23

*Carpino v. National Store Fixtures Inc.*,
275 A.D.2d 580 (3d Dep't 2000) ...........................................................................24

*Faiaz v. Colgate U.*,
64 F. Supp. 3d 336 (N.D.N.Y. 2014)....................................................................8, 9

*Grace Int'l Assembly of God v. Festa*,
797 Fed. Appx. 603 (2d Cir. 2019).........................................................................7

*Hanson v. Denckla*,
357 U.S. 235 (1958)...............................................................................................23

*Hearst Corp. v. Goldberger*,
No. 96 Civ. 3620 (PKL) (AJP), 1997 WL 97097 (S.D.N.Y. Feb. 26, 1997)..................22, 23

*Hughes v. Twenty-First Century Fox, Inc.*,
304 F. Supp. 3d 429 (S.D.N.Y. 2018).....................................................................10

*Ingraham v. Carroll*,
90 N.Y.2d 592 (1997) .......................................................................................22-23

*Kalola v. IBM Corp.*,
   No. 13 CV 7339 (VB), 2015 WL 861718 (S.D.N.Y. Feb. 3, 2015) ......................... 13, 16-17, 18

*Kakarla v. Penakalapati*,
   551 F. Supp. 3d 70 (W.D.N.Y. 2021) .................................................................................14

*Kiobel v. Royal Dutch Petrol. Co.*,
   621 F.3d 111 (2d Cir. 2018).................................................................................................7

*Kurtz v. Hansell*,
   20 Civ. 3401 (PAE), 2021 WL 1143619 (S.D.N.Y. Mar. 24, 2021)......................................8

*Licci ex rel. Licci v. Lebanese Imperial Bank, SAL*,
   673 F.3d 50 (2d Cir. 2012)..................................................................................................19

*McGrath v. Dominican College*,
   672 F. Supp. 2d 477 (S.D.N.Y. 2009)...............................................................................9, 10

*McHenry v. Fox News Network, LLC*,
   510 F. Supp. 3d 51 (S.D.N.Y. 2020)........................................................................... 10, 14-15

*Mondelo v. Quinn, Emanuel, Urquhart & Sullivan, LLP*,
   No. 21 Civ. 02512 (CM), 2022 WL 524551 (S.D.N.Y. Feb. 22, 2022) .......... 10, 13, 15, 17-18

*Morales v. NY Presbyterian Hosp.*,
   18-CV-9711 (GBD) (KHP), 2019 WL 8989858 (S.D.N.Y. Nov. 20, 2019),
   *adopted*, 2020 WL 1150136 (S.D.N.Y. Mar. 10, 2020) .........................................................15

*Murphy v. American Home Prods. Corp.*,
   58 N.Y.2d 293 (1983) ...........................................................................................................8

*Parkcentral Global Hub Ltd. V. Porsche Auto. Holdings SE*,
   763 F.3d 198 (2d Cir. 2014)..................................................................................................7

*Parke-Bernet Galleries, Inc. v. Franklyn*,
   26 N.Y.2d 13 (1970) ............................................................................................................20

*Paterno v. Laser Spine Institute*,
   24 N.Y.3d 370 (2014) ................................................................................................19, 20, 21

*Rahman v. Limani 51, LLC*,
   20-CV-6708 (KMW), 2022 WL 3927814 (S.D.N.Y. Aug. 31, 2022)........................ 13-14, 15

*Ross v. Louise Wise Services, Inc.*,
   8 N.Y.3d 478 (2007) .............................................................................................................8

*Twine v. Levy*,
   746 F. Supp. 1202 (E.D.N.Y. 1990) .....................................................................................21

*Warren v. Ultimate Fitness Group, LLC*,
   No. 19-CV-10315, 2021 WL 4239246 (S.D.N.Y. Sept. 17, 2021) ....................... 10, 12-13, 18

*Whiteside v. Hover-Davis, Inc.*,
   19-CV-6026 CJS, 2020 WL 979785 (W.D.N.Y. Feb. 28, 2020),
   *aff'd*, 995 F.3d 315 (2d Cir. 2021) ........................................................................................17

## Statutes and Rules

34 C.F.R. § 106.45(b)(1)(iii) ..............................................................................................12

Fed. R. Civ. P. 8(a)(2) ..........................................................................................................5

Fed. R. Civ. P. 12(b)(2) ...................................................................................................2, 24

Fed. R. Civ. P. 12(b)(6) ...................................................................................................2, 24

N.Y. CPLR § 215(3) ..............................................................................................................8

N.Y. CPLR § 302(a) .............................................................................................................19

N.Y. CPLR § 302(a)(1) ..............................................................................................19, 21, 22

N.Y. CPLR § 302(a)(3) .........................................................................................................21

N.Y. CPLR § 302(a)(3)(i) .................................................................................................21, 23

N.Y. CPLR 302(a)(3)(ii) .................................................................................................22, 23

N.Y. Exec. Law § 296(4) .....................................................................................................10

N.Y.C. Admin. Code § 8-107(4) .........................................................................................10

New York City Human Rights Law ..............................................................................*passim*

New York State Human Rights Law ............................................................................*passim*

## Other Authorities

Restatement (Second) of Torts § 46 cmt. d (1965) ...............................................................8

## PRELIMINARY STATEMENT

Yeshiva University ("Yeshiva") engaged defendant Seyfarth Shaw, LLP ("Seyfarth") to independently investigate the alleged rape of one of its students, plaintiff Jane Doe, by a male student.  After conducting the investigation, defendants Dov Kesselman (a partner of Seyfarth) and Emily Miller (an associate) found that the evidence was insufficient to establish the charge of rape or sexual assault by a preponderance of the evidence.  Dissatisfied with that result, and on the basis of nothing but rank speculation and conjecture, Doe now accuses Seyfarth, Kesselman, and Miller (collectively, the "Seyfarth Defendants") of risking their professional reputations to engage in grotesquely unethical conduct.  Specifically, Doe claims that the Seyfarth Defendants conducted a "sham" investigation to reach a "preordained result," and thereby aided and abetted Yeshiva to discriminate against her based on her gender in violation of the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL").  If that sounds implausible, it should, because, as Doe's own allegations make clear, it *is* implausible.  Despite the great length of the Amended Complaint, Doe does not come close to adequately pleading these claims, compelling their dismissal.

Most conspicuously, Doe fails to plead—as she must to sustain an aiding-and-abetting claim under the NYSHRL and NYCHRL—facts plausibly suggesting both that Yeshiva intended to discriminate against her *because of her gender*, and that the Seyfarth Defendants knew about and shared that discriminatory purpose.  Instead, she improperly asks the Court to infer discriminatory intent from *gender-neutral* facts, such as Yeshiva's fund-raising campaign, its winning basketball team, and Seyfarth's representation of Yeshiva in prior cases alleging sex crimes committed against high-school boys.  No doubt recognizing the insufficiency of those allegations, Doe alleges perceived imperfections in the investigation, but claimed imperfection—even if true, and it is not— is not even close to the mark for aiding-and-abetting liability.  In any event, she cannot plead that

the Seyfarth Defendants failed to consider all evidence provided by her, cannot name any material witness that they ignored, and—most critically—cannot allege a single *gender-based* discriminatory act.

Doe also alleges that the Seyfarth Defendants' motive was to help Yeshiva conceal sex crimes so that it would give more business to Seyfarth. But that alleged motive—as baseless and speculative as it is—is a purely economic one, and not a discriminatory one, much less directed at a protected category. That is a critical, and fatal, distinction that dooms her claims under both the NYSHRL and NYCHRL. Indeed, any other holding would expose every investigator of a university sex crime to liability unless they find for the complainant (whether female or male).

Doe also fails to state a claim that the Seyfarth Defendants intentionally inflicted emotional distress. She cannot plead the required element of extreme and outrageous conduct, and, for good measure, her claim is time-barred because she filed her initial Complaint after the one-year statute of limitations had expired.

This Court, therefore, should dismiss the Amended Complaint entirely against the Seyfarth Defendants under FRCP 12(b)(6), as well as against defendant Miller under FRCP 12(b)(2) for the additional reason that the Court lacks personal jurisdiction over her.

## STATEMENT OF FACTS

The alleged facts summarized below—*i.e.,* the facts other than the procedural history and Miller's contacts with New York—are taken entirely from the Amended Complaint.[1]

---

[1] Because this is a motion to dismiss, the allegations in the Amended Complaint are assumed, but not conceded, to be true. The Seyfarth Defendants deny, and if necessary will vigorously contest, Doe's allegations.

A.   <u>**Events Before and Immediately After the Alleged Rape.**</u>

Doe is a student at Yeshiva.  She claims that, on January 24, 2021, she was forcibly raped

by a male student referred to anonymously as "Perry Doe" ("Perry") who is a member of

Yeshiva's basketball team.  (Amended Complaint ("AC") ¶¶ 15, 66, 83.)[2]

Doe alleges that, before the incident, Yeshiva falsely reported to the U.S. Department of

Education that no forcible rapes or sexual assaults occurred on or near its campus from 2001 to

2020.  (AC ¶¶ 39-41.)  But she does not allege that the Seyfarth Defendants encouraged or

assisted the alleged under-reporting in any way.  Doe also alleges that, since 2013, Seyfarth (but

not Kesselman or Miller) has represented Yeshiva in at least five lawsuits brought by over 50

men claiming they were molested by administrators and teachers while attending Yeshiva's

affiliated high school.  (*Id.* ¶¶ 121-26.)  Doe also alleges that, beginning in 2019, Yeshiva was in

the "quiet phase" of its campaign to raise $613,000,000.  But that campaign was not publicly

announced until December 5, 2021 (*id.* ¶¶ 17-19), which, as noted below, was well after the

Seyfarth Defendants concluded their investigation.

Immediately after the alleged rape occurred on January 24, 2021, Doe alleges that she

informed her roommates and a close male friend.  (*Id.* ¶¶ 91-92.)  She also alleges that, the next

night, she went to the emergency room at Columbia Presbyterian Hospital, where "a rape kit

examination was performed" and photos of her neck and inner thigh were taken.  (*Id.* ¶¶ 98-99,

102.)  It is unclear from her pleading whether the alleged rape kit consists of the photos only, or

whether it includes any other evidence.  (*See id.*)  She further alleges that the hospital still has the

alleged "rape kit, including the above-referenced photographs" (*id.* ¶ 102), and acknowledges

---

[2] A copy of the Amended Complaint is attached as Exhibit 1 to the Declaration of David L.
Barres dated October 17, 2022.

that she always had the power to obtain such evidence (*see id.* ¶¶ 186-87), but does not allege that she ever did so.

**B.**     **Investigation of the Alleged Rape.**

In approximately February 2021, Doe reported to Yeshiva's Dean of Students that she had been raped.  (AC ¶¶ 105-06.)  She filed a Title IX complaint with the university on February 18, 2021.  (*Id.* ¶ 111.)  On March 4, 2021, defendant Chaim Nissel (Yeshiva's Title IX Coordinator) informed Doe by email that Yeshiva would investigate her allegations of sexual assault pursuant to its Non-Discrimination & Anti-Harassment Policy & Complaint Procedures (the "Policy").  (*Id.* ¶ 116 & Ex. B.)  He also informed her that Yeshiva retained Seyfarth to conduct an independent investigation, and that Kesselman and Miller would serve as the investigators.  (*Id.* ¶ 118.)  The Complaint is glaringly silent in its absence of any allegations concerning the process of the investigation, the Seyfarth investigators' requests to Doe (and the male respondent) to provide any evidence and the names of witnesses in advance of their interviews, the Seyfarth investigators' interviews of other witnesses, the collection of other evidence, or any other aspect of the exhaustive investigation itself.

On or about April 29, 2021, Yeshiva informed Doe that the Seyfarth attorneys had completed their investigation and their report was available for her review.  (*Id.* ¶ 175.)  On or about April 30, 2021, she received an encrypted copy of the report and was able to review it.  (*Id.* ¶¶ 181, 183.)  Doe had the opportunity to respond to the report to raise any issues, concerns, or corrections prior to any finding being made, in accordance with Yeshiva's policy.  (*See id.*, Ex. B at 36, ¶ 12.)  The Complaint makes no allegation that she did so.  On May 26, 2021, Doe received a letter from Nissel, on behalf of Yeshiva, stating that, "After an extensive investigation, it has been determined that the evidence does not support a finding that

4

REDACTED violated the Policy."  (*Id.* ¶ 191 & Ex. A.)  The letter also informed her of her

appeal rights.  (*Id.*, Ex. A.)  Doe alleges that she repeatedly tried to appeal, but that defendant

Nissel somehow "rejected her efforts at appeal" after consulting defendant Andrew Lauer

(Yeshiva's General Counsel).  (*Id.* ¶¶ 196-97.)

 Finally, Doe alleges that, during and after the investigation, she repeatedly asked Yeshiva

to implement security measures to prevent her from encountering Perry on campus, such as

barring him from campus or certain areas, removing him from the basketball team, or providing

her with campus escorts.  (*Id.* ¶¶ 142-48.)  She alleges that Yeshiva denied those requests.  (*Id.*

¶¶ 145-48.)  The Amended Complaint does not allege any participation by Seyfarth in Yeshiva's

decision-making regarding these requests, the appeal process, or, for that matter, in any event

after the issuance of the investigation findings.

**C.** **Procedural History.**

 Doe filed her Complaint on June 28, 2022.  [Dkt. 3.]  On June 30, 2022, the Court issued

an order directing her to show cause why the Complaint should not be dismissed for failure to

comply with FRCP 8(a)(2).  [Dkt. 8.]  On July 12, 2022, Doe filed her Amended Complaint

[Dkt. 16], which barely reduced the length of her pleading—from 137 to 124 pages, not counting

the exhibits.  She also filed a motion to proceed under a pseudonym [Dkt. 11], which was

provisionally granted by the Court on July 14, 2022 [Dkt. 18], and will be opposed by the

Seyfarth Defendants.

 The Amended Complaint alleges fourteen claims for relief.  The first two (against

Yeshiva under Title IX) are under federal law, and the rest are under New York state or city law.

The Amended Complaint purports to allege three claims against the Seyfarth Defendants:  Count

Seven alleges the intentional infliction of emotional distress by conducting a sham investigation

that rendered a pre-ordained verdict (*id.* ¶¶ 325-32); while Counts Five and Twelve allege that the Seyfarth Defendants, as well as defendants Lauer and Nissel, aided and abetted Yeshiva's violations of the NYCHRL and NYSHRL by conducting a sham investigation designed to absolve Perry of the charge against him, and by retaliating against Doe for bringing her charges, refusing to provide her with any supportive measures, and refusing to permit her to appeal the "not responsible" determination (*id.* ¶¶ 298-313, 369-82).

**D.**     **Defendant Emily Miller's Lack of Contacts with New York.**

Miller resides in Massachusetts, where she is employed as an associate in Seyfarth's Boston office. (Declaration of Emily J. Miller dated October 17, 2022 ("Miller Decl.") ¶¶ 2-3.) She is a member of the Massachusetts and Connecticut bars. (*Id.* ¶ 1.) She has practiced law for a total of three years, following six years as a Title IX Coordinator at Harvard College in Massachusetts. (*Id.* ¶ 2.) Less than 5% of her practice has involved New York-related matters, and she not only has never visited Seyfarth's New York office, but has never even entered New York to do any work here at all. (*Id.* ¶¶ 5-6.) She does not own or possess any real estate in New York. (*Id.* ¶ 4.) She does not maintain any office, bank account, phone listing, or voter registration in New York. (*Id.*)

Miller was one of the two investigators of Doe's rape charge. She performed all work on this matter in Massachusetts from March 6 through May 25, 2021. (*Id.* ¶¶ 7-9.) That work consisted primarily of reviewing and analyzing the evidence and facts, conducting six video interviews of four witnesses (Doe twice, Perry twice, and Doe's two male friends who communicated with her on the day of and after the alleged rape), and drafting the investigative report and the investigation findings. During the interviews, which were conducted remotely, Miller remained in Massachusetts. (*Id.* ¶¶ 9-10.)

Miller was an associate when she worked on the Yeshiva investigation.  She did not ask or choose to work on the investigation, but rather was assigned to it by Kesselman.  (*Id.* ¶¶ 7-8.) She was not involved in Yeshiva's engagement of Seyfarth to perform this investigation.  (*Id.* ¶ 12.)  Miller has never engaged in marketing activities directed toward New York, or solicited any legal work involving any New York matter or client.  (*Id.* ¶ 5.)  Her compensation is not affected by the location of any client or legal matter.  (*Id.* ¶ 14.)

## ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).  The pleading of facts that are "merely consistent with a defendant's liability" fall short of the requirement of plausibility.  *Id.*  The Court must accept the non-conclusory well-pled facts as true and draw all reasonable inferences in favor of the plaintiff.  *Kiobel v. Royal Dutch Petrol. Co.*, 621 F.3d 111, 124 (2d Cir. 2018); *Parkcentral Global Hub Ltd. V. Porsche Auto. Holdings SE*, 763 F.3d 198, 202 (2d Cir. 2014). But the assumption of truthfulness does not apply to mere labels and conclusions, to formulaic recitation of a claim's elements, or to speculative allegations.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Grace Int'l Assembly of God v. Festa*, 797 Fed. Appx. 603, 604 (2d Cir. 2019).  As explained below, no claim against the Seyfarth Defendants has been pled sufficiently to survive their motion to dismiss.

## I.

## THE COURT SHOULD DISMISS THE SEVENTH CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The Court should dismiss Count Seven for intentional infliction of emotional distress ("IIED") for two independent reasons:  it is both time-barred and inadequately pled.

**A.**     **The Claim of Intentional Infliction of Emotional Distress Is Time-Barred.**

Doe filed the initial Complaint on June 28, 2022.  [Dkt. 3.]  The statute of limitations for IIED is one year, and accrues upon defendant's commission of its last injury-causing act.  *See* N.Y. CPLR § 215(3); *Ross v. Louise Wise Services, Inc.*, 8 N.Y.3d 478, 491 (2007); *Kurtz v. Hansell*, 20 Civ. 3401 (PAE), 2021 WL 1143619, at *23 (S.D.N.Y. Mar. 24, 2021) (IIED claim based on physicians' false report of suspected child abuse accrued upon date of report, and therefore was time-barred because that date was more than one year before action was filed).

On May 26, 2021, Yeshiva informed Doe that the investigators concluded that the evidence did not support a finding of a violation of the Policy.  (AC ¶ 191 & Ex. A.)  Doe does not allege that the Seyfarth Defendants committed any injury-causing act after that date.  The claim for IIED, therefore, accrued no later than May 26, 2021, which is more than one year before the Complaint was filed on June 28, 2022.  This claim therefore is time-barred.

**B.**     **The Claim of Intentional Infliction of Emotional Distress Is Not Adequately Pled.**

Even if it were not time-barred—it is—the IIED claim would still fail because Doe cannot plausibly allege one of the required elements—*i.e.*, that the Seyfarth Defendants engaged in conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 303 (1983) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)); *accord Faiaz v. Colgate U.*, 64 F. Supp. 3d 336, 363 (N.D.N.Y. 2014).

Doe alleges that there were defects in the investigation:  specifically, the alleged failure to interview certain claimed fact witnesses (none of whom are named in the Amended Complaint) that could testify to her state of mind right after the incident (AC, ¶ 25(7)); the alleged questioning of her more extensively than Perry (a mere conclusion and speculation for which no factual basis is

provided) (*id.* ¶ 173); and failure to obtain the photos and alleged rape kit from the hospital (*id.* ¶¶ 185-88).

Even if assumed to be true, the alleged imperfections in the Seyfarth Defendants' investigation do not come close to satisfying the requirement of extreme and outrageous conduct. Indeed, courts have dismissed IIED claims even when based upon alleged faults in a university investigation that are of far greater magnitude than alleged here.  *See, e.g., Faiaz*, 64 F. Supp. 3d at 363 (no IIED claim pled by expelled student accused of assaulting a female student and alleging he was detained in a basement, subjected to aggressive and lengthy interrogation without being fed, given insufficient time to prepare for his hearing and call witnesses, threatened with false criminal charges, and forced to leave the country after the university spoke to immigration authorities); *Bailey v. New York Law School*, 16 Civ. 4283 (ER), 2017 WL 6611582, at *4, 12 (S.D.N.Y. Dec. 27, 2017) (no IIED claim pled by female law student who alleged that investigation of her sexual-assault charge was flawed because a key witness was not allowed to testify, evidence impeaching the accused was not considered, and school officials lied to her, failed to aid her, and were hostile toward her).

In her pre-motion letter [Dkt. 33], Doe cited *McGrath v. Dominican College*, 672 F. Supp. 2d 477, 492-93 (S.D.N.Y. 2009), in which an IIED claim was held to be sufficiently pled.  But *McGrath* proves the Seyfarth Defendants' point as to the extreme misconduct required to sustain an IIED claim, and *supports* dismissal of the IIED claim against them.  In *McGrath*, plaintiff was an executor/mother who alleged that, after her freshman daughter was raped by three men in a dorm room while several other men watched, the college conducted no investigation and took no protective action at all, instead referring the case to a local detective employed by the college who did no meaningful investigation—all of which resulted in her daughter suffering extreme

9

emotional distress and committing suicide eight months after the rape. *McGrath*, in short, illustrates the truly extreme circumstances needed to plead IIED arising from a university investigation. By any measure, the present case does not come close.

## II.

### THE COURT SHOULD DISMISS THE FIFTH AND TWELFTH CLAIMS OF AIDING AND ABETTING SEX DISCRIMINATION UNDER THE NYSHRL AND NYCHRL

The *sine qua non* of primary violations of the NYSHRL and NYCHRL are, of course, discrimination and/or retaliation on the basis of being a member of a protected class (including gender). *See* N.Y. Exec. Law § 296(4), (7); N.Y.C. Admin. Code § 8-107(4), (7). While Doe alleges that she was discriminated and retaliated against "on the basis of sex" (AC ¶¶ 278, 293, 366, 373; *see also* ¶ 374), she does not identify a single gender-based discriminatory or retaliatory act that Yeshiva committed. The Court should therefore dismiss her 419-paragraph Amended Complaint without hesitation.

To be liable as an aider and abettor under the NYSHRL or NYCHRL, the defendant must have "actually participated in the discriminatory conduct of the primary violator," and "shared the intent or purpose of," and thus have a "community of purpose" with, the principal actor. *Mondelo v. Quinn, Emanuel, Urquhart & Sullivan, LLP*, No. 21 Civ. 02512 (CM), 2022 WL 524551, at *13-14 (S.D.N.Y. Feb. 22, 2022) (internal quotations omitted); *accord Warren v. Ultimate Fitness Group, LLC*, No. 19-CV-10315, 2021 WL 4239246, at *5 (S.D.N.Y. Sept. 17, 2021); *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020); *Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 451 (S.D.N.Y. 2018).[3]

---

[3] The same standards govern aiding-and-abetting claims under the NYSHRL and NYCHRL because the language of the two statutes is virtually identical. *McHenry*, 510 F. Supp. 3d at 68.

Doe's aiding-and-abetting claims against the Seyfarth Defendants fail—not only because she fails to plead an actionable sex-based violation by Yeshiva—but also because she cannot adequately plead that they actually participated in such a violation, or that they knew about and shared a discriminatory intent or purpose with Yeshiva. These additional deficiencies—fatal in their own right—become even clearer when Doe's allegations of discrimination are considered in the context of when they allegedly occurred: before, during, and after the Seyfarth Defendants' investigation.

## A.    Plaintiff Cannot Plead Any Aiding and Abetting of Sex Discrimination Occurring Before or After the Investigation of Her Rape Charge.

On March 4, 2021, Yeshiva informed Doe that Seyfarth would conduct an independent investigation (AC ¶ 118), and on May 26, 2021, Yeshiva informed Doe of the investigation finding. (*Id.* ¶ 191). The Seyfarth Defendants' only alleged period of activity with respect to Doe is March-May 2021 when they conducted the investigation. It is therefore impossible for her to adequately plead any aiding-and-abetting liability against the Seyfarth Defendants based on any conduct occurring either before or after the investigation.

During the period before the investigation, Doe alleges that Yeshiva conducted a very large fund-raising campaign. (*Id.* ¶¶ 17-20.) But Yeshiva did not publicly announce this campaign until December 5, 2021 (*id.* ¶ 17), which was over five months after the Seyfarth Defendants concluded their investigation. Doe does not allege that the Seyfarth Defendants knew about the campaign before it was announced, and it would not matter even if she did. There is nothing remarkable or incriminating about a university trying to raise money, no matter how large the sum.

Doe also pleads that Yeshiva's basketball team was enjoying a record winning-streak. (*Id.* ¶¶ 22-23.) Once again, Doe is relying on a totally positive, non-incriminating fact to suggest a discriminatory intent, which only underscores the weakness of her pleading.

11

In addition, Doe alleges that Yeshiva fraudulently failed to report sex crimes on or near its campus. (*Id.* ¶¶ 39-50.)  But she does not—again, for the simple reason that she cannot—allege any facts suggesting that the Seyfarth Defendants encouraged, assisted, or advised such reporting.

Finally, Doe alleges that Seyfarth (but neither Kesselman nor Miller) represented Yeshiva in cases involving sex crimes allegedly committed against high-school boys. (*Id.* ¶¶ 121-33.)  Doe alleges that these other representations made the Seyfarth Defendants conflicted investigators, and she faults all defendants for not disclosing the alleged conflict. (*Id.* ¶¶ 135, 137.)  But if such allegations could plausibly support a discrimination claim, then a university could never have its own officers, employees, or regular outside counsel investigate a rape charge.[4]

Even if true, none of these alleged pre-investigation circumstances suggests that the Seyfarth Defendants knew about or shared any *discriminatory* purpose with Yeshiva.  None involves any alleged activity by the Seyfarth Defendants involving Doe.  Indeed, aside from Seyfarth (but not Kesselman or Miller) litigating the other cases that did not involve Doe—and notably that involved defending Yeshiva against claims brought by *male* students—there  is no allegation of *any* pre-investigation activity at all by the Seyfarth Defendants.  Aiding-and-abetting liability requires the defendant's "direct, purposeful participation" in the primary violation, *Warren*, 2021 WL 4239246, at *5, and Doe falls woefully short of pleading that element as to any pre-investigation conduct.

The same is true with respect to any alleged post-investigation conduct—and for equally obvious reasons.  Doe accuses Yeshiva of failing to provide protective and remedial measures during and after the investigation (AC ¶¶ 145-47), but she cannot plead any facts suggesting that the Seyfarth Defendants, who were outside investigators, could implement such measures even if they

---

[4] Indeed, universities routinely have internally employed Title IX coordinators and investigators conduct such investigations, and the Title IX regulations allow this practice.  *See* 34 C.F.R. § 106.45(b)(1)(iii).

were needed.  *See Warren*, 2021WL 4239246, at *5 (if defendant lacks authority to take action

toward plaintiff, there can be no aiding-and-abetting claim based on failure to take remedial

measures).  Indeed, the Amended Complaint does not plead that, after the investigation process, the

Seyfarth Defendants advised or assisted Yeshiva in any way, or performed any task, involving her,

or communicated with her.  She has therefore again fallen far short of pleading the required element

of the Seyfarth Defendants' "*actual participation . . .* in the underlying conduct giving rise to the

claims."  *Id.* at *6 (emphasis in original); *see also Kalola v. IBM Corp.*, No. 13 CV 7339 (VB),

2015 WL 861718, at *11 (S.D.N.Y. Feb. 3, 2015) (dismissing aiding-and-aiding claims against

executives not alleged to be "personally involved in the discriminatory or retaliatory conduct").

**B.**     **Plaintiff Cannot Plead Any Aiding and Abetting of Sex Discrimination During, or in the Conduct of, the Investigation of Her Rape Charge.**

Doe's claim of aiding and abetting gender discrimination against the Seyfarth Defendants

depends entirely on their conduct of the investigation in March-May 2021.  But Doe cannot

plead any facts about the investigation that plausibly suggest that Yeshiva intended to

discriminate against her because of her gender, much less that Seyfarth knew about and shared

that discriminatory intent.  *See Mondelo*, 2022 WL 524551, at *13 (S.D.N.Y. Feb. 22, 2022)

(there must be a "community of purpose" between primary violator and aider and abettor);

*Warren*, 2021 WL 4239246, at *5 (same).

**1.**     **Doe Cannot Plead Facts Plausibly Suggesting That the Investigators Acted With a Discriminatory Motive.**

For starters, Doe does not plead that Yeshiva in any way asked or instructed the Seyfarth

Defendants to reach a particular result, discriminate against Doe because of her sex, or do

anything other than conduct an honest investigation.  This pleading deficiency alone is fatal to

her aiding-and-abetting claims.  *See Rahman v. Limani 51, LLC*, 20-CV-6708 (KMW), 2022 WL

3927814, at *7 (S.D.N.Y. Aug. 31, 2022) (aiding and abetting not pled against restaurant owner

because "[p]laintiff has provided no basis to infer that 'management' and/or the 'head chef' informed [him] of the alleged discriminatory conduct").

As noted above, Doe tries to create inferences based on Yeshiva's trying to raise money, having a winning basketball team, and being represented by Seyfarth in other cases.  But these facts do not plausibly suggest that Yeshiva somehow communicated a purpose to discriminate against Doe (let alone on the required basis of her gender) to the Seyfarth Defendants, and that the latter understood and shared that purpose.  Nor does it matter that Yeshiva allegedly underreported sex crimes, as there is no allegation that the Seyfarth Defendants caused, advised, or even knew about it.

Critically, Doe pleads what she *believes* is the Seyfarth Defendants' purpose in finding no violation:  to get more business from Yeshiva by covering up rapes at the university to enhance its reputation.  (AC ¶¶ 41, 131-32.)  Apart from being rank (and utterly offensive) speculation, that alleged motive is purely economic in nature and does not suggest—as is required to state a claim under the relevant statutes—a motive to discriminate against Doe because of her gender. *See Kakarla v. Penakalapati*, 551 F. Supp. 3d 70, 84 (W.D.N.Y. 2021) (granting summary judgment dismissing NYSHRL claim where defendant's motive in threatening to revoke plaintiff's visa was economic rather than discriminatory, because "[d]iscriminatory intent is a necessary element" of . . . a claim under the NYSHRL").  Indeed, proving that it is gender-neutral, the Seyfarth Defendants' alleged economic motive would be equally achieved by a finding of no violation even if the complainant were male (as the plaintiffs were in the other matters in which the Seyfarth Defendants defended Yeshiva).

Likewise, Doe's allegations, in describing Yeshiva's alleged history and motive of covering up sex crimes, are all based on gender-neutral—*i.e.,* unactionable—facts.  She alleges

that Yeshiva's reports of sex crimes "for both men and women" are false (*id.* ¶ 41); that a female student's accusation of rape in 2018 was dismissed out-of-hand (*id.* ¶ 47); that significant numbers of both female and male university students are sexually assaulted (*id.* ¶ 43); and that Seyfarth has a history of defending Yeshiva against sex-abuse claims by male plaintiffs (*id.* ¶¶ 121-26).  Doe does not allege any facts—as she must—plausibly alleging a *gender-based* discriminatory motive.

So what does Doe allege about Seyfarth's motive?  Something that, even if true, is exactly *gender-neutral*, and therefore insufficient on its face:  "Seyfarth had, and continues to have, a substantial financial stake in YU continuing to maintain a sterling reputation free of taint that would result from a legal finding that YU facilitated or covered up the sexual abuse of its students, and/or failed to adequately respond to reports or allegations of the sexual abuse of any of its students . . . ."  (*Id.* ¶ 131.)  Indeed, the desire for one's clients to "maintain a sterling reputation" could certainly be said for any law firm, but that hardly supports a plausible inference that every law firm—let along a national firm like Seyfarth—would therefore facilitate or cover up sexual abuse.

In short, Doe fails to plead any facts to plausibly suggest both that Yeshiva thought its interests and reputation would be best served by engaging in gender-based discrimination and retaliation, ***and*** that the Seyfarth Defendants knew about and shared that purpose.  That failure, like the many others that leave gaping holes in Doe's Amended Complaint, requires dismissal of her aiding-and-abetting claims.  *See Rahman*, 2022 WL 3927814, at *7 (dismissing claim against business owner where plaintiff failed to plead facts suggesting that he knew about his company's discrimination against its employee); *McHenry*, 510 F. Supp. 3d at 77 (dismissing claim where plaintiff failed to make non-conclusory allegations that defendants knew about their employer's

discrimination against plaintiff); *Mondelo*, 2022 WL 524551, at *14 ("Mondelo has not pleaded

any facts from which a trier of fact could infer that Mr. Calamari failed to intervene because he

too harbored an intent to discriminate against Mr. Mondelo because he was Hispanic."); *Morales

v. NY Presbyterian Hosp.*, 18-CV-9711 (GBD) (KHP), 2019 WL 8989858, at *13 (S.D.N.Y.

Nov. 20, 2019) ("[A] plaintiff must plead facts suggesting that the defendant displayed an intent

to discriminate and was involved in the alleged discriminatory scheme. . . .  Here, Plaintiff does

not allege any facts to suggest the University had knowledge of any discriminatory conduct on

the part of the [co-defendant hospital and its employee]."), *adopted*, 2020 WL 1150136

(S.D.N.Y. Mar. 10, 2020).

### 2.    The Alleged Deficiencies of the Investigation Do Not Support the Claims Under the NYSHRL and NYCHRL.

Unable to allege any gender-based discriminatory motive—which alone dooms her

claims against the Seyfarth Defendants—Doe tries to allege flaws in the Seyfarth Defendants'

conduct of the investigation.  But that effort fails, too.  As a gate-keeping matter, Doe does not

allege that any of those supposed deficiencies were gender-based; and for that reason alone, *none*

of them supports a claim under either the NYSHRL or NYCHRL.  Doe alleges that the Seyfarth

Defendants failed to call fact witnesses, "(including several specifically identified by Plaintiff)."

(AC ¶ 25(7).)[5]  But she does not identify any of these witnesses in her Amended Complaint (with

the limited exception of a nurse examiner, discussed below), or explain how they would have

affected the outcome of the investigation.  *See Kalola*, 2015 WL 861718, at *8 n.11, 11

---

[5] Once again, because this is a motion to dismiss, the Seyfarth Defendants must accept the allegations of the Amended Complaint as true for purposes of this motion, despite disputing these allegations.

(disagreement over selection of witnesses interviewed was insufficient to plead aiding-and-abetting claim against investigators).

She accuses the Seyfarth Defendants of questioning her "in great detail and ask[ing] many of the same questions about emotionally difficult subjects," and alleges, "[u]pon information and belief," that they did not do the same with Perry.  (*Id.* ¶ 173.)  But, yet again, she does not plead any fact (such as being present during Perry's interviews) that would make her allegation anything other than precisely the kind of pure speculation that cannot survive a motion to dismiss.  *See Whiteside v. Hover-Davis, Inc.*, 19-CV-6026 CJS, 2020 WL 979785, at *4 (W.D.N.Y. Feb. 28, 2020) ("A plaintiff cannot avoid the necessity of pleading a plausible claim supported by factual allegations merely by asserting statements 'upon information and belief' without explaining the basis for the belief."), *aff'd*, 995 F.3d 315 (2d Cir. 2021).

Finally, Doe faults the Seyfarth Defendants for not requesting her consent to interview the nurse examiner and to obtain the alleged "rape kit evidence (including photographs of bruises on her body)" at the hospital where she visited the emergency room.  (AC ¶¶ 185-88.)  But, when dealing with evidence of a highly personal or intimate nature, investigators have very good reason to rely upon the complainant to provide the evidence that she wants them to review so as not to unnecessarily invade her privacy.  And indeed, Doe acknowledges that she always was the one with access to her medical information (*see id.* ¶¶ 186-88), and she implicitly concedes that she never provided it to the investigators or obtained it before filing this action (*id.*).

In addition to their facial insufficiencies, these alleged flaws in the investigation cannot create a claim against the Seyfarth Defendants under the NYSHRL or NYCHRL, as a matter of law.  "[W]ithout more, aiding and abetting liability does not attach in this Circuit 'for failing to adequately investigate a claim of discrimination.'"  *Mondelo*, 2022 WL 524551, at *14 (quoting

*Kalola*, 2015 WL 861718, at *11); *accord Beattie v. Farnsworth Middle School*, 143 F. Supp. 2d 220, 230 (N.D.N.Y. 1998).  "Mere ineptitude and insensitivity" in response to a complaint— even if they existed here, which they do not—are insufficient to sustain a claim.  *Warren*, 2021 WL 4239246, at *6 (brackets omitted); *accord Mondelo*, 2022 WL 524551, at *14; *Beattie*, 143 F. Supp. 2d at 231 (Superintendent "may or may not have been incorrect in his findings and response, but personal liability under § 296(6) does not extend for mere factual error.").

These alleged investigation flaws are insufficient to imply an intent to discriminate against Doe because of her gender.  Any doubt about this insufficiency is removed, as noted above, (1) by Doe's inability to plead that the Yeshiva Defendants intended for the investigators to discriminate against Doe because of her sex, and communicated that intent to the Seyfarth Defendants; and (2) by Doe's pleading that the investigation finding served the purely economic, non-gender-discriminatory purpose of getting more legal business from the university (AC ¶¶ 131-32).  *See Kalola*, 2015 WL 861718, at *8 n.11 (no aiding-and-abetting claim pled against investigators where plaintiff "makes no specific allegations regarding how he was discriminated against *based on a protected characteristic* during the investigation") (emphasis added).

To date, our research has not disclosed a single case in which an attorney investigator was sued for aiding and abetting discrimination in violation of the NYSHRL and NYCHRL. And for good reason:  allowing such an aberrational suit, merely because of perceived flaws in the investigation process, would open every attorney investigator to potential liability, no matter the gender of the complainant.

### III.

### THE COURT LACKS PERSONAL JURISDICTION
### OVER DEFENDANT EMILY MILLER

The exercise of long-arm jurisdiction over an out-of-state defendant must satisfy both the New York long-arm statute and constitutional due process.  *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999).  Neither requirement is met against defendant Miller, giving the Court yet another ground for dismissing the Amended Complaint against her.

New York does not exercise long-arm jurisdiction to the full extent of the due process clause.  *Licci ex rel. Licci v. Lebanese Imperial Bank, SAL*, 673 F.3d 50, 60-61 (2d Cir. 2012).  As explained below, this Court lacks long-arm jurisdiction over Miller under any conceivable provision of New York's long arm statute, N.Y. CPLR § 302(a), because she does not do any of the following things:  transact business in New York, contract to do anything in New York, regularly do or solicit business in New York, derive substantial revenue from services rendered in New York, or derive substantial revenue from interstate or international commerce.

**A.      There Is No Long-Arm Jurisdiction Over Miller Under CPLR § 302(a)(1).**

Miller, a Massachusetts lawyer and Seyfarth associate, never contracted to supply goods or services in New York.  (Miller Decl. ¶ 12.)  To be subject to jurisdiction in New York under CPLR § 302(a)(1), therefore, she must "[t]ransact[] any business" here within the meaning of the statute.  She does not.

Under CPLR 302(a)(1), "a non-domiciliary transacts business when on *his or her own initiative* the non-domiciliary *projects himself or herself into this state* to engage in a *sustained and substantial transaction of business*."  *Paterno v. Laser Spine Institute*, 24 N.Y.3d 370, 377 (2014) (emphasis added; internal brackets and quotations omitted); *accord Bissonnette v.*

19

*Podlaski*, 138 F. Supp. 3d 616, 623 (S.D.N.Y. 2015); *Acquiline v. Capital Partners LLC*, 861

F. Supp. 2d 378, 386 (S.D.N.Y. 2012).  Defendant's activities must be "*volitional acts* by which

the non-domiciliary avails itself of the privilege of conducting activities within the forum State,

thus invoking the benefits and protections of its laws."  *Paterno*, 24 N.Y.3d at 376 (emphasis

added; internal quotations omitted).  Miller does not have anywhere near the required level of

contact with New York to have transacted business here.

Miller performed all work on the Yeshiva investigation in Massachusetts, and never

entered New York while working on this matter.  (Miller Decl. ¶ 9.)  Her work consisted of

interviewing four witnesses by video while she was in Massachusetts, and they were in New

York:  Doe (twice), Perry (twice), and two male friends of Doe who communicated with her

shortly after the incident.  (*Id.* ¶¶ 9-10.)  She had infrequent, limited communications with

Yeshiva's legal department.  Miller reviewed and analyzed evidence (all while in

Massachusetts), drafted the investigation report and findings in Massachusetts, and then, with

Kesselman, issued the final report and findings to Nissel on behalf of Seyfarth.  (*Id.* ¶ 9.)  Her

work on this matter occurred entirely from March 6 to May 25, 2021.  (*Id.* ¶ 8.)  In short, Miller

worked on a discrete, short-term project that cannot satisfy the requirement of a "sustained and

substantial transaction of business" here.  *Paterno*, 24 N.Y.3d at 377; *Parke-Bernet Galleries,*

*Inc. v. Franklyn*, 26 N.Y.2d 13, 18 (1970).

It also is "highly significant," for purpose of establishing volitional availment, whether a

defendant, "on his [or her] own initiative," created the relationship with New York.  *Parke-*

*Bernet*, 26 N.Y.2d at 18.  Miller did not do so at all.  She did not solicit or choose to work on this

matter.  Instead, as a second-year associate, she was assigned to the investigation by a partner in

the firm.  (Miller Decl. ¶¶ 2, 5, 7.)  And she never engaged in any marketing activities directed

toward Yeshiva or the New York legal market.  (*Id.* ¶ 5.)  Having not engaged in "volitional

acts" to "purposefully avail" herself of the privilege of conducting activities in New York,

*Paterno*, 24 N.Y.3d at 376-77, Miller did not transact business here, and this Court lacks

personal jurisdiction over her under CPLR § 302(a)(1).

In comparable circumstances, courts have found that non-resident attorneys did not

transact business in New York.  *See, e.g., Bank Brussels Lambert*, 171 F.3d at 787-89 (no

jurisdiction over Puerto Rico law firm accused of issuing fraudulent opinion letter for New York

financing transaction, where the firm communicated with the parties in New York, but its

lawyers performed all work in Puerto Rico and did not enter New York, and firm did not solicit

this transaction, but instead was recommended by one of its clients in the transaction, a New

York bank with whom it had a prior long-standing relationship); *Bissonnette*, 138 F. Supp. 3d at

624-25 (no jurisdiction over Indiana law firm representing author in New York transaction for

publication of book, where the firm communicated with parties in New York from Indiana, but

never entered New York or solicited the relationship); *Twine v. Levy*, 746 F. Supp. 1202, 1205-

06 (E.D.N.Y. 1990) (no jurisdiction over Washington law firm that performed all work for New

York client in Washington, communicated with that client through several phone calls and letters

into New York, and, as court-appointed counsel, did not solicit the matter or project themselves

into New York).

**B.      There Is No Long-Arm Jurisdiction Over Miller Under CPLR § 302(a)(3).**

The Court also lacks long-arm jurisdiction over Miller under CPLR § 302(a)(3)(i), which

requires that the defendant "regularly does or solicits business, or engages in any other persistent

course of conduct, or derives substantial revenue from goods used or consumed or services

rendered, in the state."

For largely the same reasons that Miller does not "transact" business in New York under CPLR § 302(a)(1), *see supra* Point IV.A, she does not regularly do or solicit business in New York.  Less than five percent of her practice concerns New York legal matters, and she never asked or chose to work on any New York matters, including the Yeshiva investigation.  (*Id.* ¶¶ 5-6.)  She has never entered New York to solicit business here.  She has never, anywhere, attempted to solicit any business here.  (*Id.* ¶¶ 5, 13.)  Miller does not engage in any regular or persistent course of conduct in New York.  (*Id.* ¶ 13.)

Miller's work on the Yeshiva investigation—an isolated project over a 2½-month period in which she never entered New York (*id.* ¶¶ 8-9)—does not qualify as regularly doing business or a persistent course of conduct in New York.  *See Ingraham v. Carroll*, 90 N.Y.2d 592, 597 (1997) ("CPLR 302(a)(3)(i) necessitates some ongoing activity *within New York State*," and therefore "it does require something more than the 'one shot' single business transaction") (citations omitted; emphasis in original).  Also, Miller is paid a salary and bonus that are not adjusted based on where her clients or matters are located.  (Miller Decl. ¶ 14.)  She therefore does not derive any revenue (let alone "substantial revenue") from services rendered in New York.  *See, e.g., Hearst Corp. v. Goldberger*, No. 96 Civ. 3620 (PKL) (AJP), 1997 WL 97097, at *15 & n.17 (S.D.N.Y. Feb. 26, 1997) (salary of law-firm associate does not satisfy requirement in CPLR 302(a)(3)(ii) of substantial revenue from interstate or international commerce).

Nor is there jurisdiction over her under CPLR 302(a)(3)(ii), which requires that she committed a tortious act outside the state that she "expects or should reasonably expect the act to have consequences in the state *and* derives substantial revenue from interstate or international commerce."  (Emphasis added.)  The second prong—substantial revenue from interstate or international commerce—serves to exclude defendants "whose business operations are of a local

character," and thus is "a 'bigness requirement' designed to assure that the defendant is

'economically big enough' to defend suit in New York." *Ingraham*, 90 N.Y.2d at 599 (citation

omitted).  Miller, an associate whose practice is focused in Massachusetts (Miller Decl. ¶¶ 1-3,

6), does not fall within the class of non-resident defendants meant to be covered by CPLR

§ 302(a)(3)(ii).  Also, as a law-firm associate, she does not derive any revenue (let alone

"substantial revenue") from interstate or international commerce.  (Miller Decl. ¶ 14.)  *Hearst*

*Corp.*, 1997 WL 97097, at *15 & n.17.  It therefore does not matter whether she expected her

work on the investigation to have consequences in New York.  There is no jurisdiction over her

under CPLR 302(a)(3)(ii).

**C.     The Exercise of Personal Jurisdiction Over Miller**
**Would Also Violate Constitutional Due Process.**

For the exercise of personal jurisdiction over a non-resident, "the constitutional

touchstone remains whether the defendant purposefully established 'minimum contacts' in the

forum state." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).  "[I]t is essential in

each case that there be some act by which the defendant purposefully avails itself of the privilege

of conducting activities within the forum State, thus invoking the benefits and protections of its

laws." *Id.* at 475 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  This requirement is

met when the defendant's contacts "proximately result from actions by defendant *himself* that

create a 'substantial connection' with the forum State," *id.* at 475 (emphasis in original), such as

where defendant "'deliberately' has engaged in significant activities within a State, or has

created 'continuing obligations' between himself and residents of the forum," *id.* at 476 (citation

omitted).

As explained above, defendant Miller did not take any action to be assigned to the

Yeshiva investigation or to otherwise connect herself to the state of New York.  Her work on the

case was at the direction of a partner.  *See Carpino v. National Store Fixtures Inc.*, 275 A.D.2d 580, 582 (3d Dep't 2000) (no personal jurisdiction over defendant that did not "pursue[] any purposeful affiliation with New York," and whose connection with New York arose from another party's decision).  Miller's work was completed within a 2½-month period and created no continuing obligation between her and Yeshiva or anyone else in New York.  The exercise of personal jurisdiction over her, therefore, would not comport with constitutional due process.

## **CONCLUSION**

For all of the above reasons, the Court should dismiss the Amended Complaint against the Seyfarth Defendants for failure to state a claim under FRCP 12(b)(6).  The Court should further dismiss the Amended Complaint against defendant Miller for lack of personal jurisdiction under FRCP 12(b)(2).

Dated:  October 17, 2022
      New York, New York

            ELMAN FREIBERG PLLC

            By:_____*/s/ Howard I. Elman*_____
               Howard I. Elman
               David L. Barres
            450 Seventh Avenue, 33rd Floor
            New York, NY 10123
            (646) 780-8100
            helman@ef-law.com
            dbarres@ef-law.com

            *Attorneys for Defendants*
            *Seyfarth Shaw, LLP, Dov Kesselman, Esq.,*
            *and Emily Miller, Esq.*