UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JANE DOE,

                        Plaintiff,

                                          22-cv-5405 (PKC)

       -against-

                                    <u>OPINION AND ORDER</u>

YESHIVA UNIVERSITY, et al.,

                        Defendants.
------------------------------------------------------------x

CASTEL, U.S.D.J.

          Plaintiff, proceeding under the pseudonym Jane Doe,[1] alleges that while she was a student at Yeshiva University ("Yeshiva" or the "University"), she was raped by a fellow Yeshiva student—pseudonymously named in the Complaint as "Perry Doe" ("Perry")—in Perry's off-campus apartment. Presently pending are two claims by Doe for discrimination and retaliation against Yeshiva under Title IX of the Educational Amendments of 1972. Title IX generally provides that students and others may not "be subjected to discrimination under any education program . . . receiving Federal financial assistance." 20 U.S.C. § 1681(a). The statute has been interpreted to provide a private remedy against an institution for deliberate indifference to student-on-student sexual harassment under certain circumstances.

          Yeshiva is the only defendant named in the two federal claims. Invoking the Court's supplemental jurisdiction,[2] twelve claims are asserted by Doe under state and city law

---

[1] The Court provisionally granted Plaintiff's request to proceed in this action under a pseudonym. (ECF 18.)

[2] The Complaint contained an allegation of diversity jurisdiction as an alternative basis for subject matter jurisdiction. In the face of Yeshiva's motion to dismiss asserting a lack of a basis for diversity jurisdiction, Doe's opposing memorandum unambiguously states: ". . . Plaintiff is no longer asserting diversity jurisdiction as an alternative ground for the Court to assert subject matter jurisdiction over this dispute." (ECF 60 at 10.) Plaintiff expressly agrees with Yeshiva that if the Court dismisses the Title IX claims against Yeshiva, it ought not exercise supplemental jurisdiction over the state law claims. (Id.)

against Yeshiva and two Yeshiva officials, Andrew "Avi" Lauer and Chaim Nissel (Lauer, Nissel and Yeshiva are collectively referred to as the "Yeshiva Defendants"), as well as the law firm Seyfarth Shaw, LLP ("Seyfarth") and one of its partners, Dov Kesselman (the "Seyfarth Defendants"). Seyfarth conducted an investigation of the incident as Yeshiva's designated investigator. Defendant Yeshiva now moves to dismiss the two federal claims for lack of subject matter jurisdiction or failure to state a claim. The Yeshiva Defendants and the Seyfarth Defendants move to dismiss the remaining state and city law claims.

For reasons to be explained, the Court concludes that it has subject matter jurisdiction over the two federal claims against Yeshiva, and that while Doe states a claim for deliberate indifference under Title IX, her claim for retaliation under Title IX fails and will be dismissed. The Court exercises supplemental jurisdiction over the twelve state and city law claims; Doe's state law claims for breach of contract, discrimination under the NYCHRL and NYSHRL, and aiding and abetting under the NYCHRL and NYSHRL survive. The other state law claims will be dismissed.

BACKGROUND

The well-pleaded facts recounted below are taken from the Amended Complaint and are assumed to be true for the purposes of this motion. In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007). (ECF 16 ("Am. Compl.").)

Plaintiff Jane Doe attended Yeshiva University as a full-time student beginning in 2018. (Am. Compl. ¶ 4.) She lived off campus and took most of her classes in 2020 and 2021 online because of the pandemic, but she utilized the campus and its library. (Id. ¶ 6.) On the night of January 24, 2021, Doe went on a first date with another Yeshiva student, Perry Doe.

(Id. ¶ 63.)  The two had communicated on social media in the preceding days, and they arranged to go for a walk.  (Id. ¶¶ 78, 80.)  During the walk, Perry bought beer and soda from a store, and he asked Doe to help him carry these items up to his apartment.  (Id. ¶ 80.)

Perry's apartment was located off campus in the neighborhood of Washington Heights.  (Id. ¶¶ 63–65.)  The Complaint alleges that the apartment was "within the geographic limits of [Yeshiva's] security perimeter, and that security guards hired by Yeshiva "regularly and routinely patrolled the area" where the apartment was located.  (Id. ¶ 64.)  Yeshiva allegedly provided shuttle service to "areas within the community in Washington Heights."  (Id. ¶ 65.)  Yeshiva is also alleged to have "paid all or some" of Perry's rent for his off campus apartment, and Perry was only allowed to live off campus with the school's permission.  (Id. ¶¶ 71, 73.)  Perry's landlord allegedly had a policy of not renting to noncitizens or persons under the age of 21 unless they were Yeshiva students.  (Id. ¶¶ 74–75.)  Perry was attending Yeshiva as a foreign student on an F-1 Visa.  (Id. ¶ 68.)

Perry was a member of the Yeshiva varsity basketball team and was therefore subject to certain policies and rules above and beyond those applicable to the general student population.  (Id. ¶ 66.)  Because he was attending the University on a visa, Perry was also subject to additional policies and rules.  (Id. ¶¶ 68, 70.)  The Complaint alleges that once in the apartment, Doe sat on Perry's bed because it was the only place to sit.  (Id. ¶ 81.)  Perry sat down next to her on the bed and began to touch and kiss her.  (Id.)  Doe repeatedly told Perry "No," and she expressed that she did not want to have any sexual contact with him.  (Id. ¶ 82.)  Perry then grabbed Doe's neck and leg to pin her down, and he raped her.  (Id. ¶¶ 83–85.)  He told her to relax and that "this will be fun."  (Id. ¶ 95.)

Doe was left with visible marks and bruises from the encounter.  (Id. ¶¶ 86–87.)
Doe returned to her apartment later that evening, where she told several of her roommates that
she had been raped by the man she had gone on the date with.  (Id. ¶ 91.)  She also texted a close
male friend of hers and told him that she had been raped.  (Id. ¶ 92.)  The next day, January 25,
2021, Doe was experiencing extreme pain, and she was persuaded by a roommate to go to the
hospital.  (Id. ¶ 96.)  She was admitted to Columbia Presbyterian Hospital, where a nurse
examiner conducted a rape kit examination and collected evidence, including taking photographs
of the bruising on Doe's neck and inner thigh; she was discharged that evening.  (Id. ¶¶ 97–99.)

In the following days, Doe missed several classes and failed to complete several
assignments, and one of her professors responded angrily about how this failure would impact
her grade.  (Id. ¶¶ 103–104.)  There is no allegation that at the time the professor knew of the
rape.  In early February 2021, Doe reached out to Sarah Asher, Yeshiva's Assistant Dean of
Students.  (Id. ¶ 105.)  She told Dean Asher that she had recently been raped by a male Yeshiva
student in his apartment and that she was having trouble with her classes in the wake of that
incident.  (Id. ¶ 106.)  Dean Asher told Doe that she would need to reach out to her professors
and explain her circumstances, which she then did; Dean Asher also spoke with professors on
Doe's behalf, including a "recalcitrant professor," and the academic issues were resolved.  (Id. ¶¶
107–08.)

On February 10, 2021, Doe informed Dean Asher of Perry's real name, and Dean
Asher told her she should make a formal Title IX sexual abuse complaint with Yeshiva's Title IX
office.  (Id. ¶¶ 109–10.)  On February 18, 2021, Doe wrote to Dean Asher that she indeed wished
to make a formal Title IX complaint.  (Id. ¶ 111.)  After several more communications, Dean
Asher told Doe that the matter would be brought to defendant Chaim Nissel, Yeshiva's Title IX

Coordinator.  (Id. ¶ 113.)  Throughout the course of the investigation, however, Doe never spoke

with Nissel in person or by telephone—their communications were solely by email.  (Id. ¶ 114.)

Doe spoke directly to Nissel for the first time in November 2021.  (Id. ¶ 150.)

On March 4, 2021, Nissel sent Doe an email stating that Yeshiva would be

conducting an investigation into her allegations that Perry engaged in a sexual assault in

violation of the University's "Non-Discrimination & Anti-Harassment Policy" (the "Policy").

(Id. ¶ 116.)  The email stated that Yeshiva had retained the law firm Seyfarth Shaw, LLP as an

independent investigator and that Dov Kesselman and a female associate had been named as the

investigators.  (Id. ¶ 118.)  The Amended Complaint alleges that this email "did not state or

suggest that Yeshiva University had dismissed Plaintiff's Title IX Complaint for any reason."

(Id. ¶ 117.)  Yeshiva has submitted a copy of the letter attached to this email alongside its motion

to dismiss.  (ECF 44-4.)  As noted in the Amended Complaint, the letter stated that it was sent in

response to a report of conduct inconsistent with Yeshiva's Non-Discrimination & Anti-

Harassment Policy.  (Id. at 2.)  The letter directed Doe to consult that policy for "information

about the process," and she was specifically directed to consult "Appendix C.I. – Formal

Resolution of Complaints Not Involving Title IX Sexual Harassment."  (Id. at 3.)  The letter did

not provide any details about the University's decision to treat Doe's complaint under the non-

Title IX provisions of the Policy.  The letter included a prohibition on contact between the two

students, a so-called "no-contact order," and stated that Perry had received the same order.  (Id.

at 2.)

As part of this investigation, Doe was interviewed by Seyfarth attorneys several

times in March 2021 regarding her rape allegations.  (Am. Compl. ¶ 172.)  Doe alleges she told

the Seyfarth investigators that she had undergone a rape examination at Columbia Presbyterian

Hospital and that a rape kit had been collected, and she provided them with her discharge papers. (Id. ¶ 185.)  The investigators allegedly never asked for her consent or authorization to obtain the rape kit evidence, including the photos of her physical injuries, or to interview the nurse examiner who conducted her rape kit examination.  (Id. ¶¶ 186–87.)

On April 29, 2021, Nissel emailed Doe that the investigation was complete and that the investigative report was available for her review.  (Id. ¶ 175.)  The Complaint alleges that Nissel required Doe to sign a non-disclosure agreement before Yeshiva would provide her with access to the investigative report.  (Id. ¶ 176.)  Yeshiva has submitted a copy of Nissel's email and a copy of this agreement.  (ECF 44-6.)  Nissel's email explained that the normal policy would be for parties to review the report in person in the presence of a University official, but due to the COVID-19 pandemic, Doe instead was permitted to review a watermarked copy of the report provided she executed a non-disclosure agreement.  (Id. at 2.)  Doe signed the non-disclosure agreement and returned it on April 29, 2021, and Yeshiva sent her an encrypted copy of the report on April 30, 2021.  (Am. Compl. ¶¶ 179, 181.)  A few days later, before she had been able to review it with an attorney or anyone else, Doe lost access to the report.  (Id. ¶¶ 183–84.)  She did not understand many of the terms used in the report, nor did she understand its impact or effect.  (Id. ¶ 182.)

In a letter to Doe dated May 26, 2021, Nissel stated that the investigation had determined that the evidence did not support a finding that Perry had violated Yeshiva's Non-Discrimination and Anti-Harassment Policy.  (Id. ¶ 191.)  The letter did not provide any explanation or summary of the evidence considered.  (Id. ¶ 192.)  The letter stated that if Doe wished to appeal, she should submit that request to Nissel, and that the request should contain a

"plain, concise, and complete written statement outlining the grounds for the appeal"; the letter directed Doe to Appendix C.I of the policy for more information.  (Id. Ex. A (ECF 16-1).)

In June 2021, plaintiff attempted to appeal the "not responsible" determination, but the Complaint alleges that "Nissel repeatedly rejected her efforts."  (Am. Compl. ¶ 197.) Yeshiva has submitted copies of an email exchange between Doe and Nissel regarding the appeal.  (ECF 44-7.)  At Doe's request, Nissel extended the June 1 appeal deadline to June 4. (Id. at 3.)  The deadline was again extended to June 7; on that day Doe wrote that the "basis to my appeal is that the investigators completely ignored the fact that I went to the hospital after the event that occurred.  I do not know why this 'minor' detail was left out but there is clear evidence of what had happened."  (Id. at 2.)  The documents submitted by Yeshiva do not include any additional response from Nissel regarding this written appeal request.

On December 5, 2021, Yeshiva announced the launch of a fundraising campaign with plans to raise over $613,000,000 over the next five years.  (Id. ¶ 17.)  This campaign had been in the "quiet phase" since 2019 and therefore had been ongoing at the time of the investigation into Doe's complaint.  (Id. ¶ 18.)  Also around the time of the investigation, the Yeshiva varsity basketball team, of which Perry was a member, was experiencing "unprecedented success" that was gaining the University positive coverage.  (Id. ¶ 22.)

PROCEDURAL HISTORY

Plaintiff filed a complaint in this action under a pseudonym on June 28, 2022. (ECF 3.)  The complaint spanned 137 pages with 82 pages of exhibits and 467 paragraphs of allegations; on June 30, 2022, the Court issued an Order to show cause why the complaint ought not be dismissed with leave to replead for failure to comply with the requirement of Rule 8(a)(2),

Fed. R. Civ. P., that a pleading contain a "short and plain statement of the claim."  (ECF 8.)  In

the Order of June 30, 2022, the Court also highlighted the complaint's failure to follow the

proper procedure for proceeding under a pseudonym.  Doe thereafter filed an amended complaint

under seal (ECF 16) and filed a motion to seal the amended complaint and proceed under a

pseudonym (ECF 11).  The Court provisionally granted the motion to proceed under a

pseudonym.  The Complaint stands at 124 pages with 62 pages of exhibits and 419 paragraphs of

allegations.

The Complaint is brought against Yeshiva University, Andrew "Avi" Lauer, Esq.,

Chaim Nissel (the "Yeshiva Defendants"), Seyfarth Shaw, LLP, and Dov Kesselman (the

"Seyfarth Defendants").[3]  It brings federal claims under Title IX for discrimination (Count One)

and retaliation (Count Two) against Yeshiva, as well twelve state or city law claims against the

Yeshiva Defendants and/or Seyfarth Defendants.

The Yeshiva Defendants move to dismiss the Title IX claims for lack of subject

matter jurisdiction and failure to state a claim, and they urge that the Court decline to exercise

supplemental jurisdiction over the remaining state law claims.  (ECF 42–43.)  The Seyfarth

Defendants also move to dismiss the city and state law claims.  (ECF 37, 40.)


DISCUSSION

I.    Overview of Title IX.

Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681-89, provides, in

relevant part, that "[n]o person in the United States shall, on the basis of sex, be excluded from

---

[3] An associate of the Seyfarth firm was also named, but Doe subsequently filed a voluntary dismissal of the claims
against her under Rule 41(a)(1)(A)(i), Fed. R. Civ. P.  (ECF 73.)

participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. . . ." 20 U.S.C. § 1681(a). "Title IX defines 'program or activity' in relevant part as 'all of the operations' of a school or covered entity, 'any part of which is extended Federal financial assistance.'" New York v. United States Department of Education, 477 F. Supp. 3d 279, 288 (S.D.N.Y. 2020) (Koeltl, J.) (footnote omitted) (quoting 20 U.S.C. § 1687). There is no claim that Yeshiva's educational programs or activities do not receive federal financial assistance.

Title IX is enforceable through an implied private right action, Cannon v. Univ. of Chicago, 441 U.S. 677 (1979), for monetary damages as well as injunctive relief, Franklin v. Gwinnett County Public Schools, 503 U.S. 60 (1992). Discrimination in the Title IX context includes sexual harassment. See Papelino v. Albany College of Pharmacy of Union University, 633 F.3d 81, 88–89 (2d Cir. 2011); see also Tubbs v. Stony Brook University, 343 F. Supp. 3d 292, 307 (S.D.N.Y. 2018) (Román, J.) (explaining that Title IX "indirectly prohibits sexual harassment" because "harassment can be a form of sex discrimination when it leads to a hostile environment, which then impedes one's access to the benefits of an educational program").

II.     The Court Has Subject Matter Jurisdiction Over Doe's Title IX Claims.

Doe invokes federal question jurisdiction on the basis of her two claims asserted under Title IX. 28 U.S.C. § 1331. Yeshiva argues that the Court lacks subject matter jurisdiction because (1) the "incident" took place off campus in a context in which Yeshiva did not exercise control, and, therefore, Title IX does not apply; (2) Doe's sole remedy would have been to bring a state law Article 78 proceeding against Yeshiva challenging its determination after investigation, N.Y. C.P.L.R. § 7803; and (3) any such Article 78 proceeding is time-barred.

9

(ECF 43).  In so arguing, Yeshiva conflates subject matter jurisdiction—the power to adjudicate

a dispute—with a purported failure to state a claim for relief under the federal statute.

       In <u>Arbaugh v. Y&H Corporation</u>, 546 U.S. 500, 516 (2006), the Supreme Court

applied a "readily administrable bright line" rule in concluding that the employee-numerosity

provision of Title VII was not jurisdictional: "when Congress does not rank a statutory limitation

on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character."

The bright line rule in <u>Arbaugh</u> has been applied to Title IX claims.  <u>See</u> <u>Glaser v. Upright</u>

<u>Citizens Brigade, LLC</u>, 377 F. Supp. 3d 387, 394 (S.D.N.Y. 2019) (Oetken, J.) (". . .Title IX

does not describe its limitations on the scope of covered entities as jurisdictional. . . .").

       Because lawmakers did not condition a district court's power to adjudicate a

dispute invoking Title IX on the situs, context, or degree of control that the institution exercised

over the alleged violation, this Court has subject matter jurisdiction to adjudicate Doe's Title IX

claims.  Yeshiva's argument also fails because Doe's Title IX claims seek to impose liability on

Yeshiva not only for the off-campus rape by Perry but also for the direct actions of Yeshiva,

including deliberate indifference in the conduct and outcome of the investigation and alleged acts

of retaliation.

III.     <u>Plaintiff States a Claim Under Title IX.</u>

    A.    <u>Standard on a Rule 12(b)(6) Motion.</u>

       Alternatively, Yeshiva moves to dismiss the two federal claims for Title IX

violations and retaliation under Rule 12(b)(6) for failure to state a claim.  To survive a motion to

dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 570 (2007)).  In assessing a complaint, courts draw all reasonable inferences in favor of the non-movant.  See In re Elevator Antitrust Litigation, 502 F.3d at 50.  Legal conclusions, however, are not entitled to any presumption of truth, and a court assessing the sufficiency of a complaint disregards them. Iqbal, 556 U.S. at 678.  Instead, the court must examine only the well-pleaded factual allegations, if any, "and then determine whether they plausibly give rise to an entitlement to relief."  Id. at 679.

"[O]n a motion to dismiss [under Rule 12(b)(6)], a court may consider 'documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.'"  Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (quoting Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993)).  Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint "relies heavily upon its terms and effect," which renders the document "integral" to the complaint.  United States ex rel. Foreman v. AECOM, 19 F.4th 85, 106 (2d Cir. 2021), cert. denied, 142 S. Ct. 2679 (2022) (quoting DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010)).  A "plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough."  Chambers, 282 F.3d at 153 (citing Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991)) (footnote omitted).  These documents must be "integral" to the complaint, known to the plaintiff, and not challenged as to their authenticity,

accuracy, or relevance.  <u>Donoghue v. Gad</u>, 2022 WL 3156181, at *3 (S.D.N.Y. Aug. 8, 2022) (Failla, J.).

Doe relies heavily upon the communications with Yeshiva concerning her investigation, including by attaching to her Complaint the May 26, 2021 letter emailed to her. (Am. Compl. Ex. A).  Yeshiva attaches to a declaration by Nissel in support of Yeshiva's motion to dismiss (ECF 44) the May 27, 2021 email sent to Doe containing the May 26 letter and the email correspondence between Nissel and Doe that is responsive to that letter (ECF 44-7).  Yeshiva also attached correspondence between Doe and Yeshiva about the investigation preceding that letter, including a March 4, 2021 email and letter stating that Yeshiva was investigating the complaint under Appendix C (ECF 44-4)).  The Court determines these were documents that were in plaintiff's possession and of which she had knowledge and are integral to the allegations of the Complaint.  They therefore may be considered by the Court in deciding defendants' motions to dismiss under Rule 12(b)(6).

> B.     The Claim Against Yeshiva Premised Upon
>        Actions Preceding and Including Perry's Assault
>        <u>Fails Under the Deliberate Indifference Standard.</u>

Count One of the Complaint is sweeping in scope and encompasses the liability of Yeshiva for the assault on Doe based on its pre- and post-assault actions.  A private action for damages against an educational institution is only available under Title IX "where the funding recipient [in this case, the University] engages in intentional conduct that violates the clear terms of the statute."  <u>Davis Next Friend LaShonda D. v. Monroe County Board of Education</u>, 526 U.S. 629, 642 (1999).  In cases of teacher-student sexual harassment, an action for damages against an institution is not premised "on principles of <u>respondeat</u> <u>superior</u> or constructive notice."  <u>Gebser v. Lago Vista Independent School District</u>, 524 U.S. 274, 285 (1998).  A funding recipient may

only be held "<u>directly</u> liable" for its own "deliberate indifference to discrimination" and "its <u>own</u> failure to act." <u>Davis</u>, 526 U.S. at 645–46 (emphasis in original).  Because an institution's Title IX liability is tethered to an institutional failure to act, in certain limited cases, Title IX funding recipients may also be liable for their deliberate indifference to "student-on-student harassment." <u>Id.</u> at 633, 647-48.

      "The deliberate indifference standard outlined by the Supreme Court in <u>Davis v. Monroe County Board of Education</u> is a narrow one." <u>Zeno v. Pine Plains Central School District</u>, 702 F.3d 655, 665 (2d Cir. 2012) (citing 526 U.S. at 644-45); <u>see</u> <u>Tubbs</u>, 343 F. Supp. 3d at 309-10 (describing a showing of deliberate indifference under Title IX as a "high bar").  In order to properly state a harassment claim against a funding recipient under Title IX, a plaintiff must plausibly allege: "(1) substantial control" by the institution over "(2) severe and discriminatory harassment," as well as "(3) actual knowledge" of and "(4) deliberate indifference" to that harassment. <u>Zeno</u>, 702 F.3d at 665 (citing <u>Davis</u>, 526 U.S. at 644-45) (footnote omitted).  "A finding of deliberate indifference depends on the adequacy of a [school's] response to the harassment," under which standard a "failure to respond, a response that 'only follows after a lengthy and unjustified delay,' and a response that 'amount[s] to deliberate indifference to discrimination' have all been found inadequate." <u>Id.</u> at 666 (citations omitted).  This deliberate indifference "must, at a minimum, 'cause [students] to undergo' harassment or 'make them liable or vulnerable' to it." <u>Davis</u>, 526 U.S. at 645.  "The school's response to sex discrimination must be 'clearly unreasonable' in light of known circumstances." <u>Papelino</u>, 633 F.3d at 89 (quoting <u>Davis</u>, 526 at 648).  The institution's response can be deliberately indifferent in either the reasonableness or timeliness of its response. <u>Hayut v. State University of New York</u>, 352 F.3d 733, 751 (2d Cir. 2003), <u>abrogation on other grounds</u>

13

recognized by Estate of King by & through King v. Annucci, 2023 WL 6122868, at *10

(N.D.N.Y. Sept. 19, 2023) (citations omitted) ("Deliberate indifference may be found both 'when

the defendant's response to known discrimination "is clearly unreasonable in light of the known

circumstances," and when remedial action only follows after "a lengthy and unjustified

delay."'").

   Applying this standard here, Count One does not plausibly state a Title IX claim

against Yeshiva for the alleged rape itself, nor for Yeshiva's pre-assault conduct.  A Title IX

sexual harassment violation requires actual knowledge of harassment and deliberate indifference

to that harassment by University officials.  See Papelino, 633 F.3d at 89 (quoting Gebser, 524

U.S. at 290) ("For an educational facility to be liable, however, the plaintiff must establish that a

school official with 'authority to address the alleged discrimination and to institute corrective

measures' had 'actual knowledge' of the discrimination and failed to adequately respond.").  The

Complaint contains no allegations of any harassing acts, including sexual misconduct or

violence, by Perry prior to the alleged rape; it thus does not allege any such acts by Perry of

which any Yeshiva official was aware.  The Complaint therefore does not adequately plead that

the rape was due to deliberate indifference by Yeshiva to known harassment, including sexual

misconduct or violence, by Perry.

   More broadly, the Complaint generally alleges that Yeshiva had a "policy" of not

complying with the sexual assault reporting requirements of the Jeanne Clery Disclosure of

Campus Security Policy and Campus Crime Statistics Act (the "Clery Act").  See 20 U.S.C. §

1092(f); (Am. Compl. ¶¶ 29–55.)  Doe argues that this policy is sufficient to make out "pre-

assault" knowledge on the part of Yeshiva of harassing acts by male students directed at female

students.  (Am. Compl. ¶¶ 221–29.)  The Complaint alleges that Yeshiva officials made a

deliberate choice to "paint[] a false and inaccurate picture of safety," and that female students at Yeshiva were "deprived of a reasonable ability or mechanism to report rapes or sexual assaults that occurred on or near" Yeshiva's campuses.  (Id. ¶¶ 224–25.)  But assuming the truth of the allegations regarding this purported policy, they do not indicate that Perry himself, or a student similarly situated to Perry—for instance, a member of the varsity athletic team—presented a clear risk to Doe or other female students.  These allegations fall far short of those upheld by the Tenth Circuit in Simpson v. University of Colorado Boulder, 500 F.3d 1170, 1180–84 (10th Cir. 2007), where many allegations of an abusive "culture" in a football recruiting program preceded an alleged incident of sexual harassment such that it was plausible there was an "obvious" risk of a Title IX violation.

Count One does not plausibly allege that Yeshiva had prior knowledge of harassment causally connected to the alleged rape, and therefore neither the rape of Doe by Perry nor other pre-assault conduct of Yeshiva is plausibly alleged to have been the result of deliberate indifference by Yeshiva.

C.    Post-Assault Actions of Yeshiva State a Title IX Claim.

The Court has already concluded that Count One does not state a claim against Yeshiva on a deliberate indifference standard as applied to the student-on-student assault itself or actions preceding the assault.  The Court now considers whether Doe's allegations of Yeshiva's actions and inactions upon being informed of the assault, taken in their entirety, state a claim for deliberate indifference under Title IX.  Doe alleges that Yeshiva is liable for its own actions taken in response to her assault "because, at all material times, high-ranking administrators and

officials of [Yeshiva] with remedial and corrective authority were deliberately indifferent to a known act of sexual abuse and/or sexual harassment."  (Am. Compl. ¶ 206.)

Courts within the Second Circuit have found that the response taken by a college or university after receiving a complaint of sexual assault may be clearly unreasonable, supporting a claim of deliberate indifference.  For example, a plaintiff plausibly alleged deliberate indifference at the motion to dismiss stage where she had "allege[d] a number of instances of misconduct" regarding the school's investigation of her assault claim "that a reasonable jury could conclude were clearly unreasonable in light of the circumstances," including that "campus police did not explain [plaintiff's] options to her or take photographs of her bruising stemming from the alleged assault."  Tubbs v. Stony Brook University, 2016 WL 8650463, at *7 (S.D.N.Y. Mar. 4, 2016) (Román, J.)  Similarly, in Doe v. Sarah Lawrence College, the student plaintiff sufficiently stated a claim for deliberate indifference where she alleged that the college had never fully advised her of her rights and options for filing a sexual assault complaint.  453 F. Supp. 3d 653, 666 (S.D.N.Y. 2020) (Halpern, J.)  Although the plaintiff and her friend were under the impression that she had submitted a formal complaint during a meeting with the school's Title IX office immediately after the assault, the school never advised her that she needed to make a formal written complaint and did not start investigating the assault until months later, when the plaintiff finally learned she needed to file such a complaint. Id.

In Doe v. Union College, the district court concluded that plaintiff had stated a plausible claim for the university's deliberate indifference to her Title IX complaint where she alleged the university's specific, "direct contravention" of its own policy for resolving sexual assault claims.  2020 WL 1063063, at *5 (N.D.N.Y. Mar. 5, 2020).  And in A.S. v. City School

District of Albany, the district court found plausible allegations of a school district's deliberate

indifference where the student plaintiff "alleged numerous inadequacies in the District's

response" to her claim of sexual harassment by another student, including that "the District

refused to investigate any conduct other than the May 2017 [harassing] texts, despite being on

notice of other problematic conduct" and that the District allegedly reneged on its promises of a

"broad investigation," instead "constrain[ing]" the outside counsel it hired to investigate to only

a limited number of the harassing texts at issue.  585 F. Supp. 3d 246, 276-77 (N.D.N.Y. 2022)

(citations omitted).  See Papelino, 633 F.3d at 90 (citations omitted) (at summary judgment

stage, evidence sufficient for a finding of deliberate indifference where plaintiff demonstrated

that "the College or its agents 'knowing[ly] refus[ed] to take any action in response' to the

behavior, such as 'investigat[ing] or put[ting] an end to the harassment,' or 'refus[ed] to take

action to bring the recipient [institution] into compliance,'" thus insufficiently investigating his

claims of quid pro quo sexual harassment by a professor); McGrath v. Dominican College of

Blauvelt, New York, 672 F. Supp. 2d 477, 488 (S.D.N.Y. 2009) (Sweet, J.) (college's failure to

take any action after a reported assault, allegedly deferring to a police investigation controlled by

an officer who was a school employee, "may prove to be actionable" under Title IX as deliberate

indifference); Mosier v. State University of New York, 2020 WL 42830, at *5-9 (E.D.N.Y. Jan.

2, 2020) (internal citations omitted) (claim of deliberate indifference sufficient to survive motion

to dismiss where plaintiff alleged university had not adequately responded to her complaint of

sexual harassment by a professor, including because plaintiff's "repeated efforts to get

information about the status of the investigation" led only to "resistance and secrecy" from the

school, and holding that discovery was necessary to determine whether the school had, in fact,

adequately responded).

17

Conversely, allegations that a university's response was "clearly unreasonable" were not sufficient where, for example, the plaintiff merely "point[ed] to many things the investigators should or could have done but failed to do," such as a more "robust" investigation of his claims, but where "a reasonable factfinder could not determine that [the university's] response was 'clearly unreasonable in light of the known circumstances.'" Doe v. Quinnipiac University, 404 F. Supp. 3d 643, 666 (D. Conn. 2019) (citation omitted).  Similarly, a plaintiff's claim was dismissed where she only alluded to, but did not explicitly confirm, her rape in her initial meeting with her advisor and where the university began to investigate after she later disclosed she was raped.  Roskin-Frazee v. Columbia University, 474 F. Supp. 3d 618, 623 (S.D.N.Y. 2019) (Daniels, J.).  See also Feibleman v. Trustees of Columbia University in City of New York, 2020 WL 3871075, at *5-6 (S.D.N.Y. July 9, 2020) (Caproni, J.) (claim dismissed where plaintiff did not "identify a single witness interview or other investigative action that [the university] should have but failed to undertake," and where his complaint did not contain "any factual allegations of how [the university's] fact-finding process could have been improved"); Doe v. Trustees of Columbia University in City of New York, 2022 WL 3666997, at *13-15 (S.D.N.Y. Aug. 25, 2022) (Ramos, J.) (claim dismissed where the university's investigation of the assault claim, consistent with its own policy, "involved reviewing all the records Doe submitted, determining which evidence was relevant to its investigation, and attaching as exhibits to its Report those documents explicitly relied upon in drafting the Investigative Report . . . .").

Here, Doe states a claim for deliberate indifference.  She alleges that the investigators neither interviewed the nurse examiner who treated Doe about one day after the assault, nor reviewed the photographs that were taken as part of the rape kit.  (Am. Compl. ¶¶

185-89.)[4]  Doe points out that she told the Seyfarth Defendants, agents of Yeshiva, "that she had undergone a rape examination at Columbia Presbyterian Hospital, and that the Hospital had collected 'rape kit' evidence from her, on January 25, 2021 (the day after her rape)" and that she "also provided Seyfarth attorneys with a copy of her discharge form from Columbia Presbyterian Hospital for January 25, 2021."  (Id. ¶¶ 185, 188).  This should have been sufficient information for Yeshiva's investigators to pursue the lead.  In the context of a bona fide investigation, it is the responsibility of an accuser to point the investigators in the direction of investigative leads, but it is not her obligation to obtain records and witness statements from third parties.  It was an investigation, not an adversarial process in which Doe had a formal burden of proof.[5]  If proven at trial, a reasonable factfinder could conclude that Yeshiva was deliberately indifferent to a key lead in the investigation: the observations of the examining nurse and the photographs of Doe's injuries taken as part of the rape kit.

Doe also alleges that she explicitly identified her roommates, with whom she discussed the rape on the night it occurred, as witnesses to be interviewed, but they were not.  (Am. Compl. ¶¶ 25(7), 91-92, 96, 218(10); see also ECF 60 at 5 n.3; ECF 40 at 3.)[6]  It suffices to

---

[4] Per Yeshiva's Policy, Seyfarth was its "designated investigator," and both Yeshiva and Seyfarth concede that Seyfarth was retained by Yeshiva to be the "independent investigator" of the assault on Yeshiva's behalf, in accordance with Yeshiva's policy.  (ECF 43 at 8-9; ECF 40 at 10.)  The Seyfarth Defendants do not dispute in their memorandum that they did not consider evidence from the hospital examination of Doe: "when dealing with evidence of a highly personal or intimate nature, investigators have very good reason to rely upon the complainant to provide the evidence that she wants them to review so as not to unnecessarily invade her privacy."  (ECF 40 at 17.)  This statement, beyond the scope of permissible matters to be considered on a Rule 12(b)(6) motion, plays no role in the Court's decision on the motion.  It suffices that the plaintiff plausibly alleges that the investigators did not examine information developed during the hospital examination.
[5] A victim-accuser has a duty to cooperatively assist the investigation.  This claim might have looked quite different if Doe had been asked for, but declined to provide, proper medical release forms.
[6] In response, the Seyfarth Defendants argue that Doe does not identify the fact witnesses other than the nurse examiner in her complaint or explain how they would have affected the investigation.  (ECF 40 at 16; but see id. at 3 (noting that Doe alleged in her complaint that she informed her roommates and a close friend about the attack immediately after it happened).)

note that this additional circumstance bolsters the claim premised on the failure to pursue the leads from the hospital examination.

Similarly, the initial dismissal of Doe's Title IX complaint without a statement of reasons and an opportunity to appeal may support the claim of deliberate indifference.  But the Court does not draw any conclusion as to whether, standing alone, it would have been sufficient. Yeshiva argues that the March 21 letter to Doe "makes it clear that Yeshiva was not investigating Plaintiff's complaint as a Title IX complaint" because it directed her to the portion of the policy dealing with "Complaints Not Involving Title IX Sexual Harassment."  (ECF 43 at 9; ECF 44-4.) But Doe was entitled, under both Yeshiva's Policy and the Title IX regulations, not just to notice that Yeshiva had dismissed her Title IX complaint, but also to a statement of the reasons for that dismissal and a chance to appeal it.  (Am. Compl. ¶ 171).

Doe's deliberate indifference claim here is unlike the claim in Doe v. Syracuse University, 2023 WL 7391653, at *2-3 (2d Cir. Nov. 8, 2023) (summary order) (affirming dismissal of a Title IX claim).  In Syracuse, the Second Circuit found that the plaintiff's post-assault deliberate indifference claim failed for several reasons; most significantly, the Court held that the university's Title IX office had not responded to the assault in a clearly unreasonable manner because the office reached out promptly to the plaintiff after the assault, the plaintiff ultimately decided not to file a formal complaint, and once she made that decision, the university independently started an investigation—circumstances that do not parallel the facts alleged by Doe.  Id. at *3.

In sum, Doe's Title IX claim is far more than a collection of conclusory allegations cataloging how the University's investigatory process could have been improved. Doe has alleged specific deficiencies in Yeshiva's response to and investigation of her Title IX

complaint, including important investigative leads that the University and its investigator did not pursue, amounting to unreasonable conduct.[7]

Doe's allegations of deliberate indifference on the part of Yeshiva in its alleged post-assault actions survive.  So much of Yeshiva's motion to dismiss Doe's Count One claim for a violation of Title IX based upon post-assault actions will be denied.  The Court need not reach any other alternative theory for sustaining Count One.

IV.   <u>Plaintiff Fails to State a Claim for Retaliation under Title IX.</u>

Plaintiff fails, however, to state a plausible claim of retaliation for filing a Title IX discrimination complaint (Count Two).  "[W]hen a funding recipient retaliates against a person <u>because</u> [s]he complains of sex discrimination, this constitutes intentional 'discrimination' 'on the basis of sex,' in violation of Title IX."  <u>Jackson v. Birmingham Board of Education</u>, 544 U.S. 167, 174 (2005).  Thus, a plaintiff may assert a Title IX claim premised upon a retaliatory action by the institution by reason of a complaint of sex discrimination under Title IX.

"As in the context of Title VII, a plaintiff claiming retaliation under Title IX must first establish a <u>prima facie</u> case by showing: (1) protected activity by the plaintiff; (2) knowledge by the defendant of the protected activity; (3) adverse school-related action; and (4) a causal connection between the protected activity and the adverse action."  <u>Papelino</u>, 633 F.3d at

---

[7] And while the Supreme Court has noted that a "failure to promulgate and publicize an effective policy and grievance procedure for sexual harassment claims," as required by Department of Education regulations, "does not establish the requisite . . . deliberate indifference" and that "the failure to promulgate a grievance procedure does not itself constitute 'discrimination' under Title IX," that is not what Doe is alleging here.  <u>Gebser</u>, 524 U.S. at 291–92. <u>See</u> <u>also</u> <u>McGrath</u>, 672 F. Supp. 2d at 489 (quoting <u>Gebser</u>, 524 U.S. at 291) (explaining that in <u>Gebser</u>, the Supreme Court "did not address failure to 'follow' procedures," but that in the instant case, the plaintiff "has alleged far more than a failure to promulgate procedures and sets forth in detail the College's actual knowledge and deliberate indifference" and had thus "adequately alleged that the College was deliberately indifferent and unreasonable in light of the known circumstances").

21

91 (citation omitted).  To establish a prima facie case of retaliation under both Title VII and Title IX, "a plaintiff must show that a reasonable [person] would have found the challenged action materially adverse, which . . . means it well might have dissuaded a reasonable [person] from making or supporting a [complaint]."  Fincher v. Depository Trust & Clearing Corporation, 604 F.3d 712, 721 (2d Cir. 2010) (quoting Burlington Northern & Santa Fe Railway Company v. White, 548 U.S. 53, 68 (2006)).

Doe's allegations fall short of plausibly pleading any school-related adverse action, however.  The treatment of her claim under Yeshiva's "non-Title IX complaints" policy rather than under Title IX, the initial reaction of one faculty member who did not know about the assault to her failure to turn in an assignment, the "slut-shaming" by a member of the basketball team, the failure to ban Perry from campus (though Doe does not allege that she ever encountered him again), and the other inactions alleged in the Complaint do not rise to the level of an adverse action within the meaning of any controlling authority.  Cf. Sarah Lawrence, 453 F. Supp. 3d at 667-68 (finding adverse school-related action supporting retaliation when school placed student on medical leave and pressured her off campus, informing her that she was too far behind in schoolwork to have any option other than suspension, four weeks after she reported a sexual assault).

Nor does Yeshiva's alleged failure to adequately investigate Doe's assault constitute an adverse action against her in retaliation for making her complaint.  The Second Circuit has held, in the Title VII context, that a failure to investigate a complaint cannot constitute an act of retaliation for bringing that particular complaint in the first place.  See Fincher, 604 F.3d at 721 ("An employee whose complaint is not investigated cannot be said to have thereby suffered a punishment for bringing that same complaint: Her situation in the wake

22

of her having made the complaint is the same as it would have been had she not brought the complaint or had the complaint been investigated but denied for good reason or for none at all."). Judge Pauley applied this Title VII holding to the Title IX context. See Williams v. Columbia University, 2012 WL 3879895, at *3 (S.D.N.Y. Aug. 28, 2012) (quoting Fincher, 604 F.3d at 721-22 n.8) (finding that failure to investigate complaint was not an adverse action under Title IX claim).

Because the Complaint does not identify any adverse school-related action taken against her by Yeshiva, Doe's retaliation claim under Title IX (Count Two) will be dismissed.

V.   Claims Over Which the Court Exercises Supplemental Jurisdiction.

Because Count One survives the motion to dismiss, this Court considers Doe's twelve state law claims, over which the Court may exercise supplemental jurisdiction. The Court concludes that Doe has stated claims against Yeshiva for breach of contract and discrimination under both the New York City Human Rights Law ("NYCHRL") and the New York State Human Rights Law ("NYSHRL"). Doe also states claims for aiding and abetting against Lauer, Nissel, Seyfarth and Kesselman under both the NYCHRL and NYSHRL. The remainder of Doe's state law claims against all defendants will be dismissed.

A.   Doe's Claim for Breach of Contract (Count Thirteen) Survives,
     But Her Claims for Intentional Infliction of Emotional Distress (Count Seven)
     and Breach of Fiduciary Duty (Count Six) Will Be Dismissed.

1.   Breach of Contract.

Doe alleges that Yeshiva's actions and inactions amounted to a breach of a contract with her as a student of the University (Count Thirteen). To make out a breach of contract claim under New York law, a plaintiff must plead "(1) the existence of an agreement,

(2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant,

and (4) damages." Milligan v. GEICO General Insurance Company, 2022 WL 433289, at *2 (2d

Cir. Feb. 14, 2022) (summary order) (quoting Harsco Corporation v. Segui, 91 F.3d 337, 348 (2d

Cir. 1996)).  New York courts have found an implied contract between a student and a university

admitting the student.  Carr v. St. John's University, New York, 17 A.D.2d 632, 633 (2nd Dep't

1962), aff'd, 12 N.Y.2d 802 (1962).  "[T]he relationship between a university and its students is

contractual in nature" in New York.  Papaspiridakos v. Education Affiliates, Inc., 2013 WL

4899136, at *3 (E.D.N.Y. Sept. 11, 2013), aff'd, 580 F. App'x 17 (2d Cir. 2014) (summary

order).

    "Under New York law, an implied contract is formed when a university accepts a

student for enrollment: if the student complies with the terms prescribed by the university and

completes the required courses, the university must award him a degree.  The terms of the

implied contract are 'contained in the university's bulletins, circulars and regulations made

available to the student.'  Implicit in the contract is the requirement that the institution 'act in

good faith in its dealing with its students.'"  Papelino, 633 F.3d at 93 (citations omitted).

    District courts applying New York law have allowed a breach of contract claim to

survive when a student plausibly alleged that her assault claim was not handled by the college in

accordance with its own internal policy.  Sarah Lawrence, 453 F.Supp.3d at 668 ("Such facts

give rise to the inference that [the college] breached its agreement to resolve Plaintiff's

allegations of sexual misconduct in a manner consistent with the terms of the Policy."); Union

College, 2020 WL 1063063 at *8 (concluding that plaintiff plausibly alleged that the university

"breached an agreement to resolve plaintiff's allegations of sexual misconduct in a manner

consistent with the terms of [its own internal] Policy").  Judge Woods has also held that, while

"general policy statement[s]," such as a statement that the university is "committed to providing

an environment free from gender-based discrimination and harassment," are not sufficient to

support a breach of contract claim, more specific promises or provisions of policies may suffice,

such as contractual language providing several days of notice to prepare for a hearing or the right

to appeal an investigation's decision or sanctions.  Nungesser v. Columbia University, 244 F.

Supp. 3d 345, 373 (S.D.N.Y. 2017).

             Doe alleges several violations of the provisions of Yeshiva's Policy that plausibly

form the basis for a breach of contract action.  First, Appendix C to the Policy, which governs

non-Title IX complaints, provides that the "Title IX Coordinator or Deputy Title X Coordinator

(or other designated investigator) will endeavor, as promptly as feasible, to interview all relevant

parties and review all evidence, including witnesses and evidence identified by the parties."

(Am. Compl. Ex. 2 at 36.)  Doe alleges that Yeshiva violated this provision of the Policy and

thus breached its contract.  (Id. ¶ 388(24), 389.)  As noted, the investigation of Doe's assault

claim allegedly did not take into account evidence or leads she specifically identified: the photos

and other evidence from her visit to the hospital immediately after the assault, as well as

interviews of the roommates with whom she discussed the assault immediately after it occurred.

(Id. ¶¶ 187, 218(10)-(13); see also ECF 40 at 3-4, 16-17.)  Doe plausibly alleges that Yeshiva's

investigators made no effort to secure this crucial evidence or pursue the leads.  And at any rate,

Appendix C mandates that "[t]he Title IX Coordinator or Deputy Title IX Coordinator (or other

designated investigator) will fully, fairly and impartially investigate the complaint. . . ."  (Am.

Compl. Ex. 2 at 35; id. ¶¶ 388(22), 389.)  The Amended Complaint plausibly alleges that

Yeshiva's "designated investigators" did not "fully" investigate Doe's complaint because they

did not obtain or consider significant pieces of potentially corroborating evidence identified by

Doe.  (Id. Ex. 2. at 35; id. ¶¶ 185-91, 196.)  At the pleading stage, this is enough to support a claim of breach of contract regarding this provision.

Doe also plausibly pleads that Yeshiva breached its policy when it did not provide Doe with written notice of its dismissal of her Title IX complaint.  Per the Policy, when Yeshiva decided not to pursue the complaint as a Title IX complaint, it was required to provide both Doe and Perry with written notice of that dismissal.  (See id. Ex. 2 at 30 ("Where a complaint is dismissed, the Title IX Coordinator or that person's designee will notify both parties simultaneously in writing of the dismissal and the reason(s) for it.  Any party may appeal the dismissal using the appeal procedures outlined in Appendix B."); see also id. ¶ 388(14).) Yeshiva asserts that the letter it sent Doe in March 2021 that advised her to refer to Appendix C of the Policy put Doe on notice of its dismissal of the Title IX claim, but the Policy mandates that the parties be notified of both the dismissal and the reasons for it.  The March 2021 letter contains no statement of reasons or rationale for the decision to treat the complaint under the non-Title IX section of the policy.  (See ECF 44-4.)

Doe has plausibly alleged a breach of contract claim and thus Yeshiva's motion to dismiss the claim (Count Thirteen) will be denied.

2.      Intentional Infliction of Emotional Distress.

Doe alleges that the conduct directed towards her by the Yeshiva Defendants amounted to the intentional infliction of emotional distress (IIED) (Count Seven).[8]  The elements of an IIED claim are: "(1) extreme and outrageous conduct, (2) intent to cause severe emotional

---

[8] Doe has withdrawn her IIED claim against the Seyfarth Defendants.  (ECF 60 at 1 n.2.)

distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." Bender v. City of New York, 78 F.3d 787, 790 (2d Cir. 1996) (citing Howell v. New York Post Company, 81 N.Y.2d 115, 121 (1993)). See also In re Sears Holdings Corporation, 2023 WL 3938982, at *1 (2d Cir. June 12, 2023) (summary order). The intent to cause severe emotional distress prong may be satisfied by a showing of the "disregard of a substantial probability of causing[] severe emotional distress." Howell, 81 N.Y.2d at 121. "[T]he 'requirements of the rule are rigorous, and difficult to satisfy.'" Id. at 122 (quoting Prosser and Keeton, Torts § 12, at 60–61 (5th ed. 1984)). "'Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Id. (quoting Murphy v. American Home Products Corporation, 58 N.Y.2d 293, 303 (1983)).

　　　　Doe alleges that the Yeshiva Defendants "conspired to cover[] up Plaintiff's rape allegations, conducted a sham investigation that ignored probative evidence that supported Plaintiff's account of the incident, and rendered a preordained 'not responsible' verdict against" Perry Doe. (Am. Compl. ¶ 328.) Despite her conclusory allegation that the defendants acted in an "extreme and outrageous" manner (id. ¶ 326), Doe fails to plausibly allege facts that satisfy the "rigorous" standard for an IIED claim. Notably, this is not an IIED claim against the perpetrator of a rape or assault but against those who conducted a severely flawed investigation of the incident. The Yeshiva Defendants are alleged to have placed their concern for the reputation of the University over their concern for the rights and needs of Doe. The deliberate indifference of the University is actionable under Title IX, but Doe has not plausibly alleged conduct by the Yeshiva Defendants that "go[es] beyond all possible bounds of decency, and [is]

regarded as atrocious, and utterly intolerable in a civilized community."  Howell, 81 N.Y.2d at

122.  For example, in Bailey, a student's IIED claim was dismissed where, among other things,

the student alleged that the school "conducted a 'helplessly flawed' investigation."  Bailey v.

New York Law School, 2017 WL 6611582, at *12-13 (S.D.N.Y. Dec. 27, 2017) (Ramos, J.),

aff'd, 2021 WL 5500078 (2d Cir. Nov. 24, 2021) (internal citation omitted).  Conversely, in

McGrath, the court found that the college's failure to conduct an impartial investigation of a

sexual assault on a college campus by referring the investigation to a police officer employed by

the college—which ultimately resulted in the assaulted student committing suicide—could

constitute extreme and outrageous conduct and denied a motion to dismiss on that basis.  672 F.

Supp. 2d at 493.

> The motion to dismiss Doe's claim for IIED against the Yeshiva Defendants
> (Count Seven) will be granted.

### 3.  Breach of Fiduciary Duty.

> Doe alleges that Yeshiva and Nissel owed her a fiduciary duty that they breached.

(Am. Compl. ¶¶ 314-24.)  Under New York law, "[t]o establish a prima facie case for breach of

fiduciary duty, a plaintiff must allege '(1) the existence of a fiduciary relationship, (2)

misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct.'"

Village of Kiryas Joel v. County of Orange, 144 A.D.3d 895, 898 (2nd Dep't 2016) (citations

omitted); Margrabe v. Sexter & Warmflash, P.C., 353 F. App'x 547, 549 (2d Cir. 2009)

(summary order).  Here, Doe alleges that Yeshiva and Nissel stood in a fiduciary relationship

with her "because it is obvious that Plaintiff relied on [Yeshiva] and Defendant Nissel and

reasonably trusted [Yeshiva] and Defendant Nissel to act reasonably, honestly, and fairly with

respect to Plaintiff's participation in [Yeshiva's] educational programs and activities, and especially with respect to her participation in her Title IX Complaint to [Yeshiva's] Title IX Office following her rape by PERRY DOE."  (Am. Compl. ¶ 316.)

Doe's claim fails for two reasons.  First, under New York law, a plaintiff may not plead a tort claim, such as breach of fiduciary duty, if it is duplicative of her breach of contract claim.  See Bayerische Landesbank, New York Branch v. Aladdin Capital Management LLC, 692 F.3d 42, 58 (2d Cir. 2012) (citation omitted) ("Under New York law, a breach of contract will not give rise to a tort claim unless a legal duty independent of the contract itself has been violated."); see also Commerzbank AG v. Bank of New York Mellon, 2017 WL 1157278, at *5 (S.D.N.Y. Mar. 21, 2017) (Daniels, J.) (dismissing fiduciary duty claim where it was "essentially the same allegation that gives rise to Plaintiff's breach of contract claim").  Here, the Court has upheld the breach of contract claim against Yeshiva, who is Nissel's employer, and a duplicative breach of fiduciary duty claim may not stand against either.[9]

Second, Doe's claim also fails because Yeshiva and Nissel owed her no fiduciary duty.  Ordinarily, "a typical student-university relationship does not, without more, establish a fiduciary relationship between student and university."  Childers v. New York & Presbyterian Hospital, 36 F. Supp. 3d 292, 306 (S.D.N.Y. 2014) (Schofield, J.) (quoting St. John's University, New York v. Bolton, 757 F.Supp.2d 144, 169 (E.D.N.Y. 2010) (emphasis in original)); see also Annabi v. New York University, 2023 WL 6393422, at *15 (S.D.N.Y. Sept. 29, 2023) (Liman, J.) (citation omitted) (dismissing fiduciary duty claim against university by former student

---

[9] See, e.g., Clarke v. TRIGO U.S., Inc., 2023 WL 6806074, at *4 (S.D.N.Y. Oct. 16, 2023) (PKC) (dismissing under New York law a fraudulent inducement claim against a corporate officer as duplicative of a breach of contract claim against the corporation); Exchange Listing, LLC v. Inspira Technologies, Ltd., 2023 WL 2403223, at *16 (S.D.N.Y. Mar. 8, 2023) (Failla, J.) (collecting cases under New York law).

because student did not "allege distinct facts that would create an independent" fiduciary duty claim separate from his breach of contract action, and noting that "[c]ourts in this circuit have held that institutes of higher education generally do not owe fiduciary duties to their students . . . ."); Union College, 2020 WL 1063063, at *7 (quoting Faiaz v. Colgate University, 64 F. Supp. 3d 336, 361 (N.D.N.Y. 2014)) (dismissing student's fiduciary duty claim against university and noting that, "[a]s a general rule, a college has no legal duty to protect students from being sexually assaulted by other students, and New York has affirmatively rejected the doctrine of in loco parentis at the college level").

   The motion of Yeshiva and Nissel to dismiss Doe's breach of fiduciary duty claim (Count Six) will be granted.

   **B.** **New York General Business Law Claims (Counts Eight and Nine) and
     Common Law Fraud Claim (Count Fourteen)**

    1. Sections 349 and 350 of New York's General Business Law.

   Doe asserts claims against Yeshiva under New York General Business Law § 349 ("GBL § 349") (Count Eight), that prohibits deceptive consumer practices, and New York General Business Law § 350 ("GBL § 350") (Count Nine), that prohibits false advertising.  Doe alleges that "[Yeshiva] made material misrepresentations to Plaintiff (and her parents), as well as every other female student at [Yeshiva], and thousands of prospective female students or applicants, by making false, deceptive, misleading, and fraudulent statements in its Security Reports as to the number and frequency of sex crimes . . . on or near [Yeshiva's] campuses. . . ." (Am. Compl. ¶ 342.)  The Amended Complaint alleges that from 2001 through 2020, Yeshiva's

Security Reports reflect no rapes and no involuntary "fondling" incidents, and these reports, it is alleged, were false.  (Id. ¶¶ 38-39.)

As will be seen, the Amended Complaint fails to plausibly allege that the statements in the Security Reports are materially misleading.  The allegations, made principally upon information and belief, rely upon speculation and supposition and do not plausibly show facts that entitle the pleader to relief.  The allegations proceed from the premise that, based upon nationwide statistics compiled for the period 1993-2013, the pleader doubts that the University had no reportable rapes or fondling incidents during the reported years 2018 to 2021.  These "Security Reports" are mandated by the Clery Act and the regulations thereunder, 34 C.F.R. 668.46.

To state a claim under either GBL § 349 or § 350, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice."  Hardy v. Olé Mexican Foods, Inc., 2023 WL 3577867, at *2 (2d Cir. May 22, 2023) (summary order) (quoting Orlander v. Staples, Inc., 802 F.3d 289, 300 (2d Cir. 2015)).

Section 349 broadly addresses "deceptive acts or practices," while section 350 focuses upon "[f]alse advertising."  Courts generally analyze section 349 and section 350 claims together, applying the same elements.  See, e.g., Orlander, 802 F.3d at 300; Hardy, 2023 WL 3577867, at *2 (quoting Orlander, 802 F.3d at 300); MacNaughton v. Young Living Essential Oils, LC, 67 F.4th 89, 96 (2d Cir. 2023) (citing Goshen v. Mutual Life Insurance Company of New York, 98 N.Y.2d 314, 324 n.1 (2002)) (describing GBL §§ 349 and 350 as "analyzed together").  This Court will do the same.

a)       Consumer-Oriented Conduct.

Doe has alleged plausibly that Yeshiva engaged in consumer-oriented conduct.  A school or university selling its "services" to prospective students constitutes "consumer-oriented conduct" sufficient to support a section 349 claim.  See Gomez-Jimenez v. New York Law School, 103 A.D.3d 13 (1st Dep't 2012) (publication of allegedly misleading post-graduate employment data by a law school "was consumer-oriented insofar as it was part and parcel of defendant's efforts to sell its services as a law school to prospective students"); Bailey v. New York Law School, 2017 WL 835190, at *8 (S.D.N.Y. Mar. 1, 2017) (Ramos, J.), aff'd, 2021 WL 5500078 (2d Cir. Nov. 24, 2021) (at motion to dismiss stage, finding allegations that school "advertised and marketed the diversity of the School and reputation of its faculty to diverse and minority applicants like [plaintiff]" sufficient to support a section 349 claim).

Doe alleges that Yeshiva sold its services by "engag[ing] in a broad-based marketing scheme, which was designed to induce Jewish students to enroll in, and complete, their post-secondary and graduate studies at [Yeshiva]," and that "[s]aid marketing scheme appealed, inter alia, to young Jewish women who lived in the New York tri-state area, as well as young Jewish women who lived in other states and abroad."  (Am. Compl. ¶¶ 339-40.)  She has thus established the first element of her claims under sections 349 and 350.

b)       Materially Misleading.

The term 'misleading,' as used in sections 349 and 350, requires that the defendant's action be "likely to mislead a reasonable consumer acting reasonably under the circumstances."  MacNaughton, 67 F.4th at 96 (quoting Cohen v. JP Morgan Chase & Co., 498 F.3d 111, 126 (2d Cir. 2007)).  Claims asserted under sections 349 and 350 are not subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, but

32

"need only meet the bare-bones notice-pleading requirements. . . ."  Pelman ex rel. Pelman v. McDonald's Corporation, 396 F.3d 508, 511 (2d Cir. 2005).  While this artful 419-paragraph Complaint with 62 pages of exhibits is hardly "bare-bones," its General Business Law claims rest solely upon speculation as to the accuracy of Yeshiva's Security Reports.

Doe has alleged "upon information and belief" that the data in Yeshiva's Security Reports are materially false and misleading.  (Am. Compl. ¶¶ 36, 39-41, 48, 53.)  Judge Ramos has noted that "[c]ourts in this Circuit look unfavorably upon conclusory pleadings made on information and belief, especially with regard to consumer fraud claims such as those under GBL § 349.  When allegations are made upon information and belief, the plaintiff must support them by offering facts upon which that belief is founded."  Brodie v. Green Spot Foods, LLC, 503 F. Supp. 3d 1, 13 (S.D.N.Y. 2020) (citations omitted).[10]

The Complaint relies upon the U.S. Department of Education website as the source of its assertion that Yeshiva has reported no rapes or fondling "that occurred on or near YU's Wilf Campus and/or Beren Campus, in [Yeshiva's] residential facilities, or in non-campus buildings."  (Am. Compl. ¶ 38.)  Per Doe's allegations, the Court has examined the U.S. Department of Education website that provides certain data for 2019 through 2020.  The website shows that in 2019 Yeshiva reported for the Wilf Campus two incidents of fondling, one aggravated assault and one domestic violence incident on public property within the campus or immediately adjacent to the campus and the Beren campus reported for 2020 one aggravated assault on adjacent property and one on campus stalking.[11]  These incidents did not occur on the

---

[10] Brodie relies upon JBCHoldings NY, LLC v. Pakter, 931 F. Supp. 2d 514, 526–527 (S.D.N.Y. 2013) (Engelmayer, J.); Marshall v. Hyundai Motor America, 51 F. Supp. 3d 451, 460 (S.D.N.Y. 2014) (Karas, J.) (citing Woods v. Maytag Co., 2010 WL 4314313, at *15–16 (E.D.N.Y. Nov. 2, 2010)); and Tinlee Enterprises, Inc. v. Aetna Casualty & Surety Company, 834 F. Supp. 605, 610 (E.D.N.Y. 1993).

[11] U.S. Department of Education, CSS: Campus Safety and Security, https://ope.ed.gov/campussafety/#/institution/details (last visited Nov. 21, 2023).  The Court was only able to access data for the years 2019 through 2021.  The

campus proper but in the reportable area around the campus.  But without parsing the reported figures too finely, it suffices to note that Yeshiva's reported figures are zero in most categories, including rapes, and extremely low in all categories.

Doe has identified the statements that underlie her claim, but the Court must consider whether she has plausibly alleged that they are false.  As support for the claim of falsity, Doe cites national data of campus-related sexual assaults analyzed by RAINN, a group engaged in anti-sexual violence advocacy, that shows that 26.4% of undergraduate women have experienced sexual violence.  (Am. Compl. ¶ 43 (citing RAINN, Campus Sexual Violence: Statistics, https://www.rainn.org/statistics/campus-sexual-violence (last visited Nov. 21, 2023).) But the same data show that "[o]nly 20% of female student victims, age 18-24, report to law enforcement."  Id.  According to RAINN, the statistics it has republished originate from a 2014 Department of Justice Study reviewing the period 1993-2013.  Id.  These interesting and important statistics simply do not speak to the accuracy of the figures reported in Yeshiva Security Reports at the time of Doe's initial enrollment and semester-by-semester reenrollment. The 1993-2013 statistics do not fully take into account the evolving salutary impact of the educational and informational programs instituted by educational institutions to reduce sexual violence that were mandated in response to the enactment of the Clery Act and revisions to the implementing regulations, effective July 1, 2015, 79 Fed. Reg. 202 62752 (Oct. 20, 2014), and the well-known "Me Too" movement.

Doe also makes the following allegation (quoted in full): "In or about 2018, a [Yeshiva] female student reported to [Yeshiva's] Title IX Office, specifically Defendant Nissel,

---

site reports that "[i]ndividual statistics for Rape, Fondling, Incest and Statutory Rape were not collected prior to the 2015 data collection.  Prior to the 2015 collection, Rape and Fondling statistics were combined under Sex offenses – Forcible, and Incest and Statutory Rape statistics were combined under Sex Offenses – Nonforcible."  Id.

that she had been raped on or near [Yeshiva's] Wilf Campus by a male [Yeshiva] student.  Upon

information and belief, [Yeshiva] and Defendant Nissel dismissed out-of-hand this rape

complainant's allegations and took no disciplinary action against the accused [Yeshiva] male

student."  (Am. Compl. ¶ 47.)  The allegation is too vague and lacking in detail to support a

plausible allegation that Yeshiva's Security Reports were materially misleading.  The incident is

alleged to have occurred "in or about 2018 . . . on or near [Yeshiva's] Wilf Campus."  (Id.)  The

implementing regulations contain definitions of locations of incidents requiring reporting,

specifically: "(A) Buildings and property that are part of the institution's campus; (B) The

institution's noncampus buildings and property; and (C) Public property within or immediately

adjacent to and accessible from the campus," as well as "areas within the patrol jurisdiction of

the campus police or the campus security department."  34 C.F.R. § 668.46 (2023) (definition of

"Clery geography").  The Department of Education advises: "Remember, location is the key

here—crimes that don't occur within your Clery Act geography are not included in your Clery

Act statistics, even if your students or employees are involved."[12]  Because "near" is too

imprecise to enable a determination of whether a reporting requirement was triggered, the

incident "in or about 2018" may or may not have been reportable.  The "[u]pon information and

belief" allegation that Nissel dismissed the allegation "out-of-hand" does not make it any more

or less likely that it was a reportable event.

Doe has not plausibly nudged her allegation that Yeshiva's Security Reports were

materially misleading "across the line from conceivable to plausible."  Twombly, 550 U.S. at

---

[12] U.S. Department of Education, The Handbook for Campus Safety and Security Reporting 2-1 (2016), https://www2.ed.gov/admins/lead/safety/handbook.pdf.

570.  Doe's claims under sections 349 (Count Eight) and 350 (Count Nine) will be dismissed.
The Court need not address whether Doe meets the third prong, i.e., causation of injury.


      2.   Fraudulent Inducement (Count Fourteen).

      The facts underlying Doe's fraud in the inducement claim against Yeshiva, Lauer
and Nissel overlap with those of her GBL §§ 349 and 350 claims against Yeshiva.  Although a
plaintiff may maintain both section 349 and 350 claims and a fraud claim based on the same
conduct, the elements of fraudulent inducement are far stricter than those governing the section
349 and 350 claims.  "In New York a plaintiff alleging fraud must show by clear and convincing
evidence that the defendant knowingly or recklessly misrepresented a material fact, intending to
induce the plaintiff's reliance, and that the plaintiff relied on the misrepresentation and suffered
damages as a result."  Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 184
(2d Cir. 2007); see also Jo Ann Homes at Bellmore, Inc. v. Dworetz, 25 N.Y.2d 112, 119 (1969).

      As a threshold matter, Doe's fraud in the inducement claim is not duplicative of
her breach of contract claim.  While Doe's breach of contract claim alleges a violation of
Yeshiva's internal policy governing the investigation of Title IX complaints, the fraud claim
focuses on alleged misrepresentations that "induce[d] female students, including Plaintiff, to
enroll in [Yeshiva] or to continue their studies there."  (Am. Compl. ¶ 410.)  Thus, the fraudulent
inducement claim addresses pre-enrollment or reenrollment representations and is not duplicative
of the breach of contract claim that addresses the investigation of her rape complaint.

      Fraud allegations must meet the heightened pleading standard of Rule 9(b), Fed.
R. Civ. P.  "[I]n order to comply with Rule 9(b), 'the complaint must: (1) specify the statements
that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the

statements were made, and (4) explain why the statements were fraudulent.'" Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006) (quoting Mills v. Polar Molecular Corporation, 12 F.3d 1170, 1175 (2d Cir. 1993)). See also United States ex rel. Ladas v. Exelis, Inc., 824 F.3d 16, 25–26 (2d Cir. 2016) (quoting O'Brien v. National Property Analysts Partners, 936 F.2d 674, 676 (2d Cir. 1991)) ("The purpose of Rule 9(b) is threefold—it is designed to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit."). "Although scienter need not be alleged with great specificity, plaintiffs are still required to plead the factual basis which gives rise to a 'strong inference' of fraudulent intent." Wexner v. First Manhattan Co., 902 F.2d 169, 172 (2d Cir. 1990) (quoting Beck v. Manufacturers Hanover Trust Company, 820 F.2d 46, 50 (2d Cir. 1987), abrogated on other grounds by United States v. Indelicato, 865 F.2d 1370, 1384 (2d Cir. 1989)).

Doe's fraud claim does not satisfy the particularity requirements of Rule 9(b). For example, it lumps multiple years of Security Reports and multiple individual actors into a single allegation made "[u]pon information and belief." (See, e.g., Am. Compl. ¶ 397 ("Upon information and belief, Defendants Nissel and Lauer were involved in implementing and/or executing [Yeshiva's] policy and/or decisions to not disclose reported sexual assaults as required by The Clery Act."); id. ¶ 409 ("The [Yeshiva] Defendants' active concealment of the truthful and accurate rape/fondling reports of sexual assault data, with the intent to deceive and defraud students and prospective students, has the same legal effect as affirmative misrepresentations of fact.").)

While there is some latitude under Rule 9(b) where facts are peculiarly within the knowledge of the opposing party, "[w]here pleading is permitted on information and belief, a

complaint must adduce specific facts supporting a strong inference of fraud or it will not satisfy

even a relaxed pleading standard." <u>Wexner</u>, 902 F.2d at 172.  There is no allegation that the

individual defendants were compensated on a bonus or commission basis depending upon the

size of enrollment, nor an allegation explaining why this not-for-profit enterprise stood more to

gain by lying on government-mandated reports than by reporting the truth.  University

administrators' hopes for success of a forthcoming capital campaign that was on the verge of

launch does not support a strong inference of fraud and does not account for the claim of a

twenty-year pattern of willful underreporting.

   The central allegation of the fraud claim, that it was inevitable that there were

unreported sexual assaults and therefore the Security Reports were both false and made with an

intent to deceive, are similar to those rejected by the Second Circuit, affirming the district court's

rejection of a plaintiff's attempt to draw a strong inference of fraud from the statistically high

frequency of approvals of medical procedures:

> We conclude that the district court correctly determined that Relators
> neither pled fraud with sufficient particularity, nor alleged facts to support
> a strong inference of fraud, to satisfy the Rule 9(b) standard.  At the
> outset, as the district court determined, the [Complaint] failed to identify
> even a single instance of a medical procedure, involving any particular
> patient on a specific date, that was fraudulent or unnecessary but that was
> nevertheless approved by [defendant]. . . . Instead, Relators more
> generally asserted that the volume of [defendant's] approvals made it
> inevitable that fraudulent claims were approved. . . . Such speculative
> allegations are insufficient to satisfy Rule 9(b).

<u>Doe 1 v. EviCore Healthcare MSI, LLC</u>, 2023 WL 2249577, at *2 (2d Cir. Feb. 28, 2023)

(footnote and internal citations omitted) (summary order).  Similarly, the premise of

Doe's sweeping fraud claims is that it is inconceivable or improbable that Yeshiva had no

sexual assault claims to report in the years prior to the rape of Doe.

Doe's fraud claim also fails because she has not alleged reasonable or justified reliance on any particularly fraudulent representation.  After alleging the falsity of all Security Reports from 2013 through 2020, Doe does not make a claim that she relied on any of them. Instead, she alleges that "[a]t all material times, Plaintiff reasonably relied upon the false impression of safety created by the Yeshiva University Defendants, as memorialized by [Yeshiva] in its false, misleading, and deceptive Campus Security Reports. . . ."  (Am. Compl. ¶ 413.)  Reliance upon a "false impression of safety . . . memorialized" in the Security Reports is not a substitute for reliance upon a specific misstatement of fact or material omission of fact. [13]

Thus, Doe's fraud in the inducement claim (Count Fourteen) will be dismissed.

C.      Claims under City and State Human Rights Laws
         (Counts Three, Four, Five, Ten, Eleven and Twelve).

Finally, Doe also alleges violations of several New York City and State anti-discrimination and anti-retaliation statutes.

1.      NYCHRL § 8-107(4) Discrimination (Count Three)

In Count Three, Doe alleges that Yeshiva violated the New York City Human Rights Law, N.Y.C. Admin Code § 8-107(4).  While the purpose of this administrative code provision is similar to that under Title IX—to prevent and remedy discrimination—New York state and federal courts have found that the NYCHRL should be construed more liberally than

---

[13] The Court need not decide whether Rule 9(b)'s particularity requirement applies to a claim of reasonable reliance, an open question in this Circuit.  See SRM Global Master Fund Limited Partnership v. Bear Sterns Companies L.L.C., 829 F.3d 173, 177 n.4 (2d Cir. 2016); Olson v. Major League Baseball, 29 F.4th 59, 76 n.9 (2d Cir. 2022) (citing SRM Global, 829 F.3d 177 n.4).  Doe's conclusory statement of reliance on the "false impression" created by eight years of reports does not pass under Rule 8(a)'s less stringent standard.

Title IX, because of the "uniquely broad and remedial purposes of the local statute."  See

Williams v. New York City Housing Authority, 61 A.D.3d 62, 79 (1st Dep't 2009); Shimanova

v. TheraCare of New York, Inc., 2017 WL 980342, at *6 (S.D.N.Y. Mar. 10, 2017) (citations

omitted) (Schofield, J.) ("The NYCHRL was amended in 2005 to clarify that federal and state

statutes 'can serve only as a floor' for NYCHRL claims, and the NYCHRL 'should "be

construed liberally for the accomplishment of the uniquely broad and remedial purposes

thereof."'  In light of the 2005 revisions, 'courts must analyze NYCHRL claims separately and

independently from any federal and state law claims, construing [its] provisions broadly in favor

of discrimination plaintiffs to the extent that such a construction is reasonably possible.'").

Courts have applied the NYCHRL to the educational context as well as to employment claims.

See Novio v. New York Academy of Art, 286 F. Supp. 3d 566, 584 (S.D.N.Y. 2017) (Sweet, J.).

Section 8-107(4) provides that it "shall be unlawful discriminatory practice for

any person who is the owner . . . proprietor, manager, superintendent, agent or employee of any

place or provider of public accommodation . . . [b]ecause of any person's actual or perceived . . .

gender,[14] . . . directly or indirectly . . . [t]o refuse, withhold from or deny to such person the full

and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages,

services, facilities or privileges of the place or provider of public accommodation."  N.Y.C.

Admin. Code § 8-107.  Finally, to address a threshold matter, the Appellate Division, First

Department has found in a separate case Yeshiva is a place of "public accommodation" and

---

[14] The definitions section of the statute, § 8-102, defines "gender" as "includ[ing] actual or perceived sex, gender identity and gender expression, including a person's actual or perceived gender-related self-image, appearance, behavior, expression or other gender-related characteristic, regardless of the sex assigned to that person at birth."

cannot take advantage of the statute's exception for private, religious corporations.[15]  The NYCHRL thus applies to Yeshiva.

Because Doe states a claim for discrimination under Title IX, she also states a claim for discrimination under the more generous standards of § 8-107(4).  See Novio, 286 F. Supp. 3d at 584 ("where the Plaintiff's [hostile environment] claims survived a motion to dismiss under Title IX or the NYSHRL, they similarly survive such a motion here").

### 2.   NYSHRL § 296(4) Discrimination (Count Eleven)

Similarly, the New York State Human Rights statute, Executive Law § 296(4), states, "It shall be an unlawful discriminatory practice for an educational institution to deny the use of its facilities to any person otherwise qualified, or to permit the harassment of any student or applicant, by reason of his . . . sex . . . ."[16]  N.Y. Exec. Law § 296(4).  The standards for analyzing Title IX claims and Exec. Law § 296 claims are "identical."  See Weinstock v. Columbia University, 224 F.3d 33, 42 n.1 (2d Cir. 2000); Novio, 286 F. Supp. 3d at 581 (quoting Weinstock, 224 F.3d at 42 n.1) (dismissing plaintiff's sex discrimination claim under Exec. Law § 296 because the "identical standard" applies and her corresponding Title IX discrimination claim was deficient).

Doe's NYCHRL discrimination claim survives because her Title IX claim of sex discrimination survives.  Id.

---

[15] Doe's Complaint argues that Yeshiva should be considered a place of public accommodation, and that it should not be able to qualify under an exception for "religious corporations" or private religious organizations in the NYCHRL statute, because it is a secular institution.  After the filing of her complaint, the First Department, on remand from an appeal to the Supreme Court of the United States, in another case held that Yeshiva is a place of public accommodation and not a religious corporation, and thus that the NYCHRL applied to it.  See YU Pride Alliance v. Yeshiva University, 211 A.D.3d 562, 563 (1st Dep't 2022).
[16] Yeshiva University qualifies as an "educational institution," per the definition in Exec. Law § 296(9).  This avoids the public accommodation question presented by the NYCHRL statute.

### 3.    NYCHRL § 8-107(7) Retaliation (Count Four)

For the same reasons that Doe's Title IX retaliation claims fail, her NYCHRL retaliation claims against Yeshiva also fail.  Section 8-107(7) provides, in relevant part, "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter . . . [or] (v) requested a reasonable accommodation under this chapter . . . ."  N.Y.C. Admin. Code § 8-107(7).

But as explained, deliberate indifference in failing to investigate a complaint of discrimination stands on its own as a potential claim of discrimination, but that same failure to investigate a complaint cannot be construed also as an independent act of retaliation for making the complaint itself.  Even viewing the City claim with a more generous lens than with the Title IX retaliation claim, the NYCHRL retaliation claim against Yeshiva will be dismissed for failure to state a claim.

### 4.    NYSHRL § 296(7) Retaliation (Count Ten)

Doe's NYSHRL § 296(7) retaliation claim against Yeshiva also fails.  The NYSHRL provides that "[i]t shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article."  Exec. Law § 296(7).

42

This statute is also analyzed using the same burden-shifting analysis as under Title IX.  See Wheeler v. Praxair Surface Technologies, Inc., 2023 WL 6282903, at *19 (S.D.N.Y. Sept. 26, 2023) (Engelmayer, J.) (citing Summa v. Hofstra University, 708 F.3d 115, 126 (2d Cir. 2013)) ("The McDonnell Douglas burden-shifting framework applies to retaliation claims under [N.Y. Exec. Law § 296(7)].").

Again, just as with her Title IX retaliation claim, Doe fails to allege a claim of retaliation because she fails to plausibly allege an adverse school-related action.  See, e.g., Schiano v. Quality Payroll Systems, Inc., 445 F.3d 597, 609 (2d Cir. 2006) ("For the same reasons that Schiano has failed to present a triable issue of fact for her federal retaliation claim [failure to establish an adverse employment action under Title VII], her state retaliation claim also fails."); Bailey v. New York Law School, 2021 WL 5500078, at *2 (2d Cir. Nov. 24, 2021), cert. denied, 142 S. Ct. 1685 (2022) (citing Weinstock, 244 F.3d at 42 n.1) ("The same standards used in a Title IX claim also apply to claims brought under the NYSHRL.  Therefore, for the reasons stated above [for her Title IX retaliation claim], Bailey also fails to establish a retaliation claim under the NYSHRL.").  The failure to investigate the claim stands or falls as an act of discrimination and the failure to investigate on facts such as these is not also an independent claim of retaliation.  The retaliation claim will be dismissed for failure to state a claim for relief.

5.   Aiding and Abetting Liability under NYCHRL § 8-107(6)
      and NYSHRL § 296(6)

Finally, Doe alleges that Lauer, Nissel, Seyfarth Shaw LLP, and Kesselman aided and abetted Yeshiva's discrimination under both the NYCHRL and NYSHRL.  The language of both statutes is identical: "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to

attempt to do so."  N.Y.C. Admin. Code § 8-107(6); Exec. Law § 296(6).  Individuals may be held liable under the NYSHRL, but they "must have 'actually participated in the conduct giving rise to the claim'" to face liability.  Malena v. Victoria's Secret Direct, LLC, 886 F. Supp. 2d 349, 367 (S.D.N.Y. 2012) (Oetken, J.) (quoting Feingold v. New York, 366 F.3d 138, 157 (2d Cir. 2004)).  "The NYCHRL's § 8–107(6) also supports claims for aiding and abetting, which are 'susceptible to the same standard as under the NYSHRL, as language of the two laws is virtually identical.'"  Id. (citation omitted).  "An individual may be held liable for aiding and abetting violations of NYCHRL . . . if he participates directly in discriminatory acts alleged by the Plaintiff.  A finding of participation in the alleged discriminatory conduct 'requires a showing of direct, purposeful participation.'"  Regan v. Benchmark Company LLC, 2012 WL 692056, at *14 (S.D.N.Y. Mar. 1, 2012) (McMahon, J.) (citations omitted).

"The aider and abettor need not have had an employer-employee or supervisory relationship with the plaintiff" under either statute.  McHenry v. Fox News Network, LLC, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020) (Engelmayer, J.); Griffin v. Sirva, Inc., 29 N.Y.3d 174, 187 (2017) (citation omitted) ("Section 296(6) extends liability to persons and entities beyond joint employers, and this provision should be construed broadly.  Section 296(6) applies to any 'person.' . . . [N]othing in the statutory language or legislative history limits the reach of this provision to employers."); Stanley v. Guardian Security Services, Inc., 800 F. Supp. 2d 550, 557 (S.D.N.Y. 2011) (Marrero, J.).

For the foregoing reasons, Doe has stated a claim for aiding and abetting liability against all four defendants under both the NYCHRL and the NYSHRL.

a.  <u>Lauer and Nissel</u>

 The Court has concluded that Doe has plausibly alleged discrimination by
Yeshiva under sections 8-107(4) and 296(4), and now considers whether she has plausibly
pleaded that Nissel and Lauer, employees of Yeshiva, aided and abetted Yeshiva's
discrimination under sections 8-107(6) and 294(6).  The Second Circuit has held that individuals
can be liable for aiding and abetting discrimination by their employer, even when their own
actions serve as the underlying basis for the employer's discrimination, despite the potential
circularity of this argument.  <u>Tomka v. Seiler Corporation</u>, 66 F.3d 1295, 1317 (2d Cir. 1995),
<u>abrogated</u> on <u>other</u> <u>grounds</u> by <u>Burlington Industries, Inc. v. Ellerth</u>, 524 U.S. 742 (1998); <u>see</u>
<u>also</u> <u>Tully-Boone v. North Shore-Long Island Jewish Hospital System</u>, 588 F. Supp. 2d 419, 427
(E.D.N.Y. 2008) (quoting <u>Perks v. Town of Huntington</u>, 96 F.Supp.2d 222, 228 (E.D.N.Y.
2000)) ("The Court is mindful that the <u>Tomka</u> interpretation of § 296(6) is not without
controversy.  Nevertheless, 'until the Second Circuit revisits the issue, <u>Tomka</u> is the law in this
circuit.'  Accordingly, [individual defendant] may be held liable for aiding and abetting allegedly
unlawful discrimination by her employer even where her actions serve as the predicate for the
employer's vicarious liability"); <u>Prince v. Madison Square Garden</u>, 427 F. Supp. 2d 372, 385
(S.D.N.Y. 2006) (Sweet, J.) (citations omitted) (explaining that, "in <u>Tomka</u>, the Second Circuit
interpreted Section 296(6) as holding individually liable those within the employment
relationship who primarily and directly perpetrated the harassment" and thus allowing aiding and
abetting claim against individual to survive).

        Doe has plausibly alleged "a showing of direct, purposeful participation" by
Nissel in Yeshiva's discrimination toward her.  Nissel, as the Title IX Coordinator, emailed Doe
throughout the process (although did not have an in-person or phone meeting with her until

November 2021), sent her the March 4, 2021 letter allegedly dismissing her Title IX claim,

forwarded her the investigation's report, informed her of the investigation's ultimate conclusion,

and corresponded with her about her desire to appeal and her complaints about the rape kit

evidence not being considered.  (Am. Compl. ¶¶ 25, 114, 116-118, 150-53, 171, 175, 191-99.)

The question is closer as to Lauer, Yeshiva's general counsel, but Doe alleges that Nissel directly

told her that he and Lauer had "coordinated [Yeshiva's] response to her formal Title IX

Complaint."  (Id. ¶ 152.)

           This case is distinguishable from McHenry, where the district court concluded

that the allegations were insufficient to establish aiding and abetting liability against an

individual human resources representative of the plaintiff's employer.  510 F. Supp. 3d at 78.

Notably, plaintiff in that case did not allege that the individual or any other employee of the

company "played any role in any investigation into [plaintiff's] grievances after the [] meeting"

she had with human resources.  Id.  But taking Doe's allegations as true, Nissel and Lauer were

involved before and after the external investigation was conducted.

           Doe has adequately pleaded aiding and abetting liability by Nissel and Lauer

under sections 8-107(6) and 294(6).


           b.  Seyfarth and Kesselman

           The Seyfarth Defendants argue that aiding and abetting liability under NYCHRL

and NYSHRL cannot attach to them because there is no controlling authority applying aiding

and abettor liability to an "attorney investigator" and because Doe has not plausibly alleged that

they had the requisite intent required of an aider or abettor.  (ECF 40 at 18.)

46

District courts applying New York law have upheld a claim of aiding and abetting liability against third-party investigators, including those outside an employment context.  See, e.g., Benzinger v. NYSARC, Inc. New York City Chapter, 385 F. Supp. 3d 224, 239-40 (S.D.N.Y. 2019) (Failla, J.) (aiding and abetting liability plausibly alleged where, in response to an incident of racial discrimination by a security guard who was an independent contractor of the business visited by the plaintiff, the plaintiff alleged that the business and the security company "cooperated in the [business's] investigation" into the discrimination and that the investigation was "conducted with [the security company's] awareness and support"—thus stating a claim that the security company "failed adequately to investigate and respond to Plaintiff's allegation" of discrimination); Dunson v. Tri-Maintenance & Contractors, Inc., 171 F. Supp. 2d 103, 116 (E.D.N.Y. 2001) (allowing an aiding and abetting liability claim against an independent contractor under section 296(6) to survive summary judgment where "[the investigators] understood that the true purpose of the investigation was to find a reason to fire [plaintiff], and that this may have initially influenced their investigation and report").  But "mere 'ineptitude and insensitivity' in response to a complaint of harassment standing alone is insufficient to support a finding of personal liability" under section 296(6).  Beattie v. Farnsworth Middle School, 143 F. Supp. 2d 220, 230 (N.D.N.Y. 1998) (citation omitted).

Seyfarth argues that, if a third-party investigator can be an aider and abettor, Doe has failed to allege that the Seyfarth Defendants acted with the requisite intent or purpose.  To establish aiding and abetting liability under these statutes, the aider and abettor must "share the intent or purpose of the principal actor," because "there can be no partnership in an act where there is no community of purpose."  Fried v. LVI Services, Inc., 2011 WL 2119748, at *7

(S.D.N.Y. May 23, 2011) (Rakoff, J.) (quoting <u>Brice v. Security Operations Systems, Inc.</u>, 2001 WL 185136, at *4 (S.D.N.Y. Feb. 26, 2001) (GEL)).

Seyfarth argues that Does alleges that it was motivated to conduct a "sham" investigation for financial reasons (its business relationship with Yeshiva) and not for a discriminatory purpose.  (<u>See</u> Am. Comp. ¶¶ 118-39; ECF 40 at 18.)  But Seyfarth parses the allegations too finely.  It is plausible that a law firm may conclude that a preordained outcome that aligns closely with the client's desires will be in its own economic self-interest.  The law firm's self-interest motivates its desire to adopt the client's goals.  A putative aider and abettor who adopts the intent or purpose of the principal actor acts with a "community of purpose" with the principal actor, regardless of its independent financial reason for doing so.

Most of the cases cited by Seyfarth in support of their argument regarding intent are distinguishable because they focus on supervisors or employers failing to remediate alleged discrimination against their employees.  <u>See</u>, <u>e.g.</u>, <u>Mondelo v. Quinn, Emanuel, Urquhart & Sullivan, LLP</u>, 2022 WL 524551, at *13 (S.D.N.Y. Feb. 22, 2022) (McMahon, J.) (aiding and abetting liability did not attach against the discriminator's supervisor because his failure to take remedial actions "does not in and of itself establish aiding and abetting liability," although the court noted that liability could theoretically attach in that context even without direct participation in the discriminatory conduct); <u>Warren v. Ultimate Fitness Group, LLC</u>, 2021 WL 4239246, at *5 (S.D.N.Y. Sept. 17, 2021) (KMK) (citation omitted) (finding that "[f]ailing to respond to others' violations of the NYSHRL does not, without more, support aiding and abetting liability," but that a supervisor may be individually liable if remedial "failures allow, or even encourage, a primary violation to continue"); <u>Rahman v. Limani 51, LLC</u>, 2022 WL 3927814, at *7–8 (S.D.N.Y. Aug. 31, 2022) (KMW) (no basis for holding the owner of a

restaurant liable for aiding and abetting under the NYCHRL and NYSHRL, not only because the owner was not "informed" of the alleged discrimination against the restaurant's waiter, but also because the complaint did not allege that he "participated in" that discriminatory conduct; plaintiff had only alleged that he had complained to "management" and the "head chef" about being treated less well than similarly situated waiters of a different race); Patrick v. Adjusters International, Inc., 2017 WL 6521251, at *6 (E.D.N.Y. Dec. 18, 2017) (citation omitted) ("efforts to remediate . . . conduct that proved to be ineffective" do not "rise to the level of 'active participation' in discrimination for which courts have previously imposed liability due to a failure to investigate").

Although the facts may look very different at the summary judgment stage or trial, Doe has plausibly alleged a claim for aiding and abetting liability as to the Seyfarth Defendants under NYCHRL and NYSHRL.  Seyfarth Shaw, LLP was the entity that conducted the allegedly discriminatory investigation, as Yeshiva's designated "independent" investigator. (See Am. Compl. ¶ 118; ECF 40 at 4.)  And as one of two Seyfarth attorneys who conducted the investigation and reviewed the evidence, including interviewing Doe herself, Doe has plausibly alleged that Kesselman was a "direct participant" in the investigation.  (Am. Compl. ¶¶ 172-73.) The motion of the Seyfarth Defendants to dismiss the aiding and abetting liability claims will be denied.

CONCLUSION

Yeshiva's motion to dismiss insofar as it alleges a post-assault deliberate indifference claim under Title IX (Count One) is DENIED, and otherwise GRANTED. Yeshiva's motion to dismiss Doe's discrimination claim under the NYCHRL § 8-107(4) (Count

Three) is DENIED.  Yeshiva's motion to dismiss Doe's discrimination claim under the NYSHRL § 296(4) (Count Eleven) is DENIED.  The Yeshiva Defendants' and Seyfarth Defendants' motions to dismiss Doe's aiding and abetting claims under the NYCHRL § 8-107(6) (Count Five) are DENIED.  The Yeshiva Defendants' and Seyfarth Defendants' motions to dismiss Doe's aiding and abetting claims under the NYSHRL § 296(6) (Count Twelve) are DENIED.  Yeshiva's motion to dismiss Doe's breach of contract claim (Count Thirteen) is DENIED.

Yeshiva's motion to dismiss Doe's retaliation claim under Title IX (Count Two) is GRANTED.  Yeshiva's motion to dismiss Doe's retaliation claim under the NYCHRL § 8-107(7) (Count Four) is GRANTED.  The Yeshiva Defendants' motion to dismiss Doe's breach of fiduciary duty claim under Title IX (Count Six) is GRANTED.  The Yeshiva Defendants' motions to dismiss Doe's claim of IIED (Count Seven) is GRANTED.  Yeshiva's motion to dismiss Doe's GBL §§ 349 and 350 claims (Counts Eight and Nine) is GRANTED.  Yeshiva's motion to dismiss Doe's retaliation claim under NYSHRL § 296(7) (Count Ten) is GRANTED.  The Yeshiva Defendants' motion to dismiss Doe's fraud claim (Count Fourteen) is GRANTED.

The motions for oral argument are DENIED as moot.  The Clerk is respectfully directed to terminate the motions (ECF 37, 42).

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated:  New York, New York
        November 28, 2023

50