*Kevin T. Mulhearn, P.C.*    *Danielle C. Lesser, Esq.*    *Howard Elman, Esq.*
*60 Dutch Hill Road, Suite 6B*    *Morrison Cohen LLP*    *Elman Freiberg PLLC*
*Orangeburg, New York 10962*    *909 Third Avenue*    *450 Seventh Avenue*
*(845) 222-8092*    *27th Floor*    *33rd Floor*
*kmulhearn@ktmlaw.net*    *New York, NY 10022*    *New York, NY 10123*
    *dlesser@morrisoncohen.com*    *HElman@ef-law.com*

_____

**VIA PACER**

March 14, 2024

Hon. P. Kevin Castel
United States District Judge
U.S. District Court, Southern District of New York
500 Pearl Street, Room 2260
New York, New York 10007

Re:    ***Jane Doe v. Yeshiva University, et al.***
        **Case No.: 22-cv-05405 (PKC)**

Dear Judge Castel:

    Pursuant to the Court's Second Initial Pretrial Conference Order, dated December 1, 2023 (Dkt. No. 93), we write jointly to advise the Court as to various threshold issues.   The Court has scheduled a virtual initial pretrial conference on March 21, 2024 at 12:00 p.m. EST.

    **(1)**    **Brief Description of the Case:**

        **Plaintiff's Factual and Legal Bases for Her Claims:**

    Plaintiff, "Jane Doe" (a pseudonym), alleges that in 2021, after she was raped by a fellow Yeshiva University ("YU") student—a member of YU's basketball team.  She made a formal Title IX complaint to YU administrators. Plaintiff asserts a post-assault Title IX claim against YU based on an allegedly deficient investigation of her rape complaint. Plaintiff alleges that YU (through several high-level administrators) and its hired investigators, Seyfarth Shaw LLP ("Seyfarth") and Dov Kesselman, Esq. ("Kesselman"), were deliberately indifferent to her complaint, discriminated against her on the basis of her gender, and conducted a sham investigation with a pre-determined "not-liable" outcome.

    Plaintiff alleges that: (1) YU initially dismissed her formal Title IX complaint without providing her with the mandated statement of reasons for the dismissal (in violation of both Title IX and YU's own policy); (2) YU's investigators failed to interview the nurse examiner who treated Plaintiff at Columbia Presbyterian Hospital the day after her rape; (3) YU's investigators failed to examine or review photographs that were taken as part of her rape examination which depicted bruises (on her neck and thigh) that were inflicted by her assailant during his forceful rape of Plaintiff; (4) YU's investigators failed to ask Plaintiff to provide a HIPAA authorization to permit them to examine her medical records (including the above-described photographs) and

interview her nurse examiner; (5) YU's investigators failed to interview Plaintiff's available-as-witnesses roommates about Plaintiff's rape allegations, even though Plaintiff specifically identified these roommates and notified the Seyfarth investigators that she told these roommates about her rape the very evening it occurred; and (6) YU, which consistently and repeatedly ignored Plaintiff's pleas to examine the above-described photographs, failed to provide Plaintiff with a fair opportunity to appeal its "not-liable" determination in its disciplinary proceeding against her rapist.

The Court has determined that Plaintiff has plausibly alleged claims against YU for violation of Title IX (post-assault only), breach of contract—based upon YU's failure to comply with various contractual and policy provisions, and gender-based discrimination in violation of New York State Human Rights Law ("NYSHRL") § 296(4) and New York City Human Rights Law ("NYCHRL") § 8-107(6).

The Court has also determined that Plaintiff has asserted plausible claims against YU's investigators, Seyfarth and Kesselman, and YU's administrators, Chaim Nissel ("Nissel") (YU's Title IX Coordinator) and Andrew Lauer, Esq. ("Lauer") (YU's General Counsel), for aiding and abetting YU's violations of the NYSHRL and NYCHRL.   Plaintiff has alleged that each of these individuals directly and purposefully participated in YU's discriminatory acts against her.

Indeed, as the Court has noted, Seyfarth was the entity that conducted the alleged discriminatory investigation and Kesselman was one of two attorneys who conducted the investigation and reviewed the evidence, including the interviews of all witnesses and the complainant (Plaintiff) and respondent themselves.

Plaintiff respectfully submits that the Seyfarth Defendants and YU will be hard-pressed to provide a reasonable explanation to any judge or jury as to why they consciously chose to not pursue "important leads" in the investigation: the observations of the examining nurse, the photographs of Plaintiff's injuries which were taken as part of her rape examination, and the testimony of Plaintiff's identified roommate witnesses (who should have testified about Plaintiff's demeanor and emotional state just minutes after she returned home after her rape). Defendants' inexplicable failure to pursue some of the "best evidence" in the case supports Plaintiff's claim that the Defendants conducted a sham investigation with a pre-determined "not liable" outcome. Plaintiff intends to establish that Defendants' failure to conduct a bona fide investigation of her rape complaint was motivated in large part by their desire to protect the reputation of YU's basketball team, which was a centerpiece of YU's then-recently launched $613 Million fundraising campaign.

As to the YU Defendants, Defendant Nissel, during a November 2021 conversation with Plaintiff and several of her friends, specifically told Plaintiff that he had coordinated YU's response to Plaintiff's rape complaint in conjunction with YU's General Counsel (Mr. Lauer). These YU Defendants, not the Seyfarth Defendants, upon information and belief, were also directly responsible for initially dismissing Plaintiff's Title IX complaint without the requisite statement of reasons.

Finally, Plaintiff asserts that: (1) based upon the documents submitted by YU in support of its motion to dismiss, there is no reasonable question that she made a formal Title IX complaint to YU; (2) based upon the recent amendments to Title IX, Plaintiff had the right to proceed under

Title IX, even though her rape occurred in an off-campus apartment; and (3) her rape "investigation" was controlled and/or dictated in substantial part by the YU Defendants, not just the Seyfarth Defendants.

**<u>Defendants' Factual and Legal Bases for Their Defenses:</u>**

**<u>The Yeshiva University Defendants:</u>**

The remaining causes of action against the Yeshiva Defendants are for: (1) discrimination in violation of Title IX, NYCHRL § 8-107(4), and NYSHRL § 296(4) against Yeshiva University ("Yeshiva"); (2) breach of contract against Yeshiva; and (3) aiding and abetting discrimination under NYCHRL § 8-107(6) and NYSHRL § 296(6) against the individual Yeshiva Defendants, Andrew "Avi" Lauer and Chaim Nissel.

At the core of Plaintiff's allegations against the YU Defendants is that YU (in part through Lauer and Nissel, but also through its independent investigator, Defendant Seyfarth Shaw LLP ("Seyfarth")), was deliberately indifferent in its response to Plaintiff's claim that she had been raped by another YU student, "Perry Doe."   Each of Plaintiff's claims centers around three major factual allegations allegedly demonstrating that the YU Defendants were deliberately indifferent: (1) YU's independent investigator, Seyfarth, did not obtain the "rape kit" administered to Plaintiff at the hospital where she sought treatment following the alleged rape; (2) Seyfarth did not interview Plaintiff's roommates as part of their investigation; and (3) YU's alleged decision to "dismiss" her Title IX complaint, and instead investigate the alleged rape under its policies applicable to non-Title IX complaints, without providing Plaintiff with the requisite notice and explanation of the "dismissal."

As a threshold matter, the Yeshiva University Defendants maintain that Title IX was not applicable to Plaintiff's claim because her alleged assault occurred in an off-campus apartment in no way connected to the school other than it being rented by a student.   Nor was the context, a date, in any way, part of a YU program or activity.   Further, it is in dispute whether Plaintiff ever formally made a Title IX complaint. Accordingly, YU's alleged failures in connection with its "dismissal" of Plaintiff's Title IX complaint are disputed, and, as this Court noted in its decision on Defendants' Motion to Dismiss (Dkt. No. 92), there is an issue as to whether "standing alone" this initial dismissal would amount to actionable deliberate indifference.   Plaintiff's remaining allegations in support of her claim of deliberate indifference occurred as part of the independent investigation conducted by Seyfarth without input from YU.

Plaintiff's breach of contract claim, which alleges a breach of YU's Non-Discrimination and Anti-Harassment Policy & Complaint Procedures, also centers around YU's alleged failure to notify Plaintiff of its alleged initial dismissal of her Title IX complaint and an explanation of the reasons why it was dismissed.   Similarly, YU believes that no formal Title IX Complaint was made, and Plaintiff was kept apprised of the process under which her complaint would be investigated and the progress of that investigation up until, and even after, she received the results of that investigation.

Lastly, the claim that the individual defendants, Lauer (YU's General Counsel) and Nissel (YU's Title IX Officer) aided and abetted in the discrimination against Plaintiff, requires Plaintiff to demonstrate that Lauer and Nissel directly and purposefully participated in the discrimination.

As General Counsel, Lauer had little to no direct involvement in the investigation of Plaintiff's complaint other than to select Seyfarth as the independent investigator. At most, his involvement in the school's Title IX policies is at a higher level of policy-making, and this Court has already dismissed the portion of Plaintiff's Title IX complaint relating to any of YU's pre-assault conduct.

As to Nissel, while he did communicate with Plaintiff before and after the investigation, and was responsible for communicating the results of the investigation and advising Plaintiff as to her ability to appeal, there is no evidence that he had any discriminatory intention towards Plaintiff and, to the contrary, was caring and supportive, as were other YU employees. Plaintiff was also provided with ample security measures, even being provided with her own key to a separate entrance of one of the buildings by the athletic staff so she would not have to encounter the basketball team on her way to her own athletic practices.   The YU Defendants acted reasonably and without discriminatory intent at all times.

### The Seyfarth Shaw LLP Defendants:

The remaining claims against the Seyfarth Defendants are for aiding and abetting an allegedly gender-biased investigation of Plaintiff's rape charge in violation of NYSHRL § 296(6) and NYCHRL § 1-107(6).   At the request of YU, and without YU ever suggesting any preferred outcome, the Seyfarth Defendants conducted a thorough, proper, and unbiased investigation of Plaintiff's report of Sexual Assault—Rape under Yeshiva's Non-Discrimination and Anti-Harassment Policy, and, following its investigation, reported that the evidence was insufficient to establish a violation under the preponderance-of-the-evidence standard.   Seyfarth's investigation included multiple interviews of Plaintiff and Respondent, interviews of additional witnesses, review of documents, audio recordings, correspondence between Plaintiff, Respondent, and others, the records provided by Plaintiff of her hospital visit, pictures provided by Plaintiff, and other materials.   Seyfarth's investigation resulted in a detailed and thorough 35-page, single-spaced report reviewing the evidence.

Plaintiff alleges that Seyfarth's finding was gender-biased primarily because the Seyfarth Defendants did not obtain the "rape kit" from her emergency room visit, and because they allegedly did not interview material fact witnesses identified by her.   In fact, Plaintiff told the investigators that, because the emergency-room doctor was male and she was uncomfortable, and because it was late and she wanted to go home, she declined an evidence-collection kit ("rape kit") and therefore one was never made. Furthermore, Plaintiff failed to affirmatively identify witnesses and provide documents at the investigators' request, and did so only after repeated requests made by Seyfarth to fully investigate her report.   Plaintiff expressed her discomfort and concern for confidentiality with respect to other people knowing about the details of her complaint.   The Seyfarth Defendants interviewed or attempted to interview all of the material witnesses that were identified by her.   During her interviews, Plaintiff admitted to not remembering material details of the incident; made inconsistent statements; and made statements that raised questions about the details of her report, including but not limited to her inviting the accused, one day after the incident, to visit her apartment, and later stating that she did not want him to get in trouble and did "not wish any bad on [the accused] and would not want him to miss out or have his time at YU not be as pleasant due to the situation." Seyfarth's finding was based on all of the evidence and in accordance with the standard of proof under YU's policy.   Plaintiff's claim of gender discrimination by the Seyfarth Defendants, therefore, is absolutely devoid of merit.

**(2)**     __Contemplated Motions:__

Plaintiff's motion to proceed under a pseudonym has been fully briefed (Dkt. Nos. 11, 53, 61, 72, 83, and 84) as of December 20, 2022, and is still pending.

Plaintiff does not intend to make any other motions to the Court at this time.   With the Court's permission, she reserves the right to file any appropriate motions, including for summary judgment on the issue of liability, after the completion of discovery.

Defendants contemplate a motion under FRCP 35 to compel Plaintiff to submit to a medical examination by a forensic psychiatrist.   Defendants anticipate that they will move for summary judgment after the close of fact discovery.

**(3)**     __Prospect of Settlement:__

Plaintiff tendered a settlement demand to Defendants several weeks ago.   Defendants are considering a counteroffer.   All parties have expressed an interest in settlement, but the prospects of settlement are presently uncertain.

**(4)**     __Additional Items:__

Plaintiff and Defendants have agreed on the language of the proposed Protective Order (**attached hereto**)—which includes the language mandated by Your Honor's Individual Practice Rules—and the parties respectfully request that the Court endorse such Protective Order.

Moreover, the parties have agreed upon the terms of a Case Management Order ("CMO") (**attached hereto**) and hereby forward such proposed CMO to the Court for its review and eventual endorsement.   We will also email a copy of this proposed CMO to the Court's Deputy Clerk on the morning of March 21, 2024.

Thank you for your attention to this matter.   We look forward to discussing this case with Your Honor during our initial conference on March 21, 2024.

Respectfully submitted,

| | | |
|---|---|---|
| *Kevin T. Mulhearn, P.C.* | *Morrison Cohen LLP* | *Elman Freiberg PLLC* |
| *Kevin T. Mulhearn /S* | *Danielle C. Lesser /S* | *Howard Elman /S* |
| ———————————— | ———————————— | ———————————— |
| BY: Kevin T. Mulhearn | BY: Danielle C. Lesser | BY: Howard Elman |
| 60 Dutch Hill Road, Suite 6B | 909 Third Avenue | 450 Seventh Avenue |
| Orangeburg, New York 10962 | 27th Floor | 33rd Floor |
| (845) 222-8092 | New York, NY 10022 | New York, NY 10123 |
| kmulhearn@ktmlaw.net | | |
| | | |
| *Attorneys for Plaintiff* | *Attorneys for the Yeshiva University Defendants* | *Attorneys for the Seyfarth Defendants* |